IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERSUS TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 04-1231 (SLR) |
| | ) | |
| RADIANSE, INC. | ) | **CONFIDENTIAL** |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |

## OPENING BRIEF IN SUPPORT OF RADIANSE'S CONSOLIDATED MOTION TO DISMISS FOR LACK OF STANDING

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT &
   TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6600
kkeller@ycst.com

Of Counsel:

Sibley P. Reppert
William A. Scofield, Jr.
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

*Attorneys for Defendant, Radianse, Inc.*

Dated:  June 24, 2005

## TABLE OF CONTENTS

PAGE

NATURE AND STAGE OF THE PROCEEDING ................................................................. 1

SUMMARY OF THE ARGUMENT ............................................................................... 2

STATEMENT OF THE FACTS ................................................................................... 3

A. Versus's License Agreement ................................................................. 3

B. The Radianse Indoor Positioning System ................................................ 6

C. The Radianse License Agreement ........................................................... 8

ARGUMENT ...................................................................................................... 9

A. Versus Lacks Standing Because Versus Does Not Possess "All Substantial Rights" Under the Patents ................................................................. 9

  1. Versus Is an Exclusive Licensee For Only a Portion of the Patent Terms .... 9

  2. The Right to Sue Provision In The Versus License Agreement Does Not Provide Versus With Standing to Sue For Infringement ........................ 12

B. Versus Lacks Standing Because the Versus License Is Exclusive Only as to a Defined and Limited Field of Use, and Radianse's IPS Is Outside That Field of Use ................................................................................ 13

  1. Versus Does Not Have Standing to Sue Radianse Unless Versus is an Exclusive Licensee and Radianse is Operating Within the Area of Exclusivity Stated in Versus's License .......................................... 13

  2. Versus Possesses Exclusive Rights Under the '195 and '791 Patents Only Within the Infrared Field of Use .......................................... 13

  3. Radianse's Indoor Positioning Systems is Not Within Versus' Exclusive Field of Use, Because it Constitutes a Non-Infrared Technology Based Product .......................................................................... 16

C. This is Motion Ripe for Decision ........................................................ 17

CONCLUSION ................................................................................................... 18

REDCTED -- PUBLIC VERSION, filed June 29, 2005

## TABLE OF AUTHORITIES

PAGE

### Cases

Amgen, Inc. v. Chugia Pharmaceutical Co., Ltd.,
  808 F.Supp. 894, (D. Mass. 1992), aff'd sub nom; Ortho Pharmaceutical
  Corp. v. Genetics Institute, Inc., 52 F.3d 1026 (Fed. Cir. 1995), cert. denied
  516 U.S. 907 (1995) .................................................................................................. 13

Independent Wireless Tel. Co. v. Radio Corp. of America,
  269 U.S. 459 (1926) .............................................................................................. 9, 12

Mentor H/S, Inc. v. Medical Device Alliance, Inc.,
  240 F.3d 1016 (Fed. Cir. 2001) .................................................................................. 12

Moore U.S.A., Inc. v. Standard Register Co.,
  60 F.Supp. 2d 104 (W.D.N.Y., 1999) .................................................................... 10, 11

Ortho Pharm. Corp. v. Genetics Institute, Inc.,
  56 F.3d 1026 (Fed. Cir. 1995) ......................................................................... 10, 12, 13

Prima Tech II, L.L.C. v. A-Roo Co.,
  222 F.3d 1372 (Fed. Cir. 2000) ................................................................... 9, 10, 11, 12

Rite-Hite Corp. v. Kelley Co.,
  56 F.3d 1538 (Fed. Cir. 1995) ...................................................................................... 9

Syngenta Seeds, Inc. v. Monsanto Company,
  No. Civ.04-228-SLR (D.Del. March 18, 2005) ....................................................... 10, 11

Textile Productions, Inc. v. Mead Corporation,
  134 F.3d 1481 (Fed. Cir. 1998) ............................................................................... 9, 10

Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,
  994 F.2d 870 (Fed. Cir. 1991) .................................................................................... 11

### Statutes

35 U.S.C. § 100(d) ............................................................................................................. 9

35 U.S.C. § 261 ............................................................................................................... 12

35 U.S.C. § 281 ........................................................................................................... 9, 12

### Other Authorities

8 D.Chisum, Patents § 21.03[2][c] at 21-483 (2003) ....................................................... 13

REDCTED -- PUBLIC VERSION, filed June 29, 2005

## NATURE AND STAGE OF THE PROCEEDING

Versus commenced this action by filing a complaint alleging that Radianse infringes four patents, including the United States Patents 5,572,195 (the "'195 patent") and RE36,791 (the "'791 patent"). (Complaint, ¶¶ 7-14). The Complaint alleges that, "Versus is the exclusive licensee of the '195 and '791 Patents, with the right to bring suit thereon." (Complaint, ¶13). The owner of the '195 and '791 patents, Freshloc Technologies, Inc. ("Freshloc"), is not a party to this action, and has never asserted a claim against Radianse for infringement of the patents.

In its Complaint, Versus alleges that, "Radianse markets and sells an Indoor Positioning System (IPS) product, known as the Radianse Indoor Positioning Solution (the "Radianse IPS Product"), for the healthcare environment which combines radio frequency (RF) and infrared (IR) transmissions with receivers to present real-time location data." (Complaint, ¶6).

On March 25, 2005, Versus moved to amend its initial Complaint to add Freshloc as an involuntary plaintiff pursuant to Rule 15 of the Federal Rules of Civil Procedure.

On April 7, 2005, Versus provided Radianse a copy of its license agreement and associated exhibits.

On April 13, 2005, Radianse responded to Versus' motion by asserting that the motion was improperly brought under Rule 15, and could not be brought under Rule 19, absent additional facts that had not been established.

On April 15, 2005, by agreement of the parties, Versus filed a Stipulation Withdrawing Motion for Leave and Opposition Brief Regarding Proposed Amendment to Complaint with leave to re-file.

On April 22, 2005, Freshloc granted a separate license under the '195 and '791 patents to Radianse.

On May 12, 2005, Radianse filed a motion to dismiss or for partial summary judgment for lack of standing as to the '195 and '791 patents, on the ground that Versus' license under the patents is "exclusive" only for a limited field, and that Radianse's accused indoor positioning systems do not fall within that limited field.

On June 12, 2005, Radianse filed a second motion to dismiss for lack of standing on the grounds that Versus' license is "exclusive" only for a limited ten-year period, and, therefore, Versus does not possess "all substantial rights" to the patents and cannot maintain this action on its own without the patent owner.

By e-mail correspondence dated June 14, 2005, attached hereto in Tab 4, Versus' counsel informed Radianse that Versus does not intend to seek to add Freshloc as a party to this action.

Pursuant to Judge Robinson's request, the present motion consolidates Radianse's previously-filed motions to dismiss for lack of standing into a single motion to dismiss, and is intended to replace the two previously-filed motions.

## SUMMARY OF THE ARGUMENT

Versus purports to sue for infringement of both U.S. Patent No. 5,572,195 (the " '195 patent") and U.S. Reissue Patent No. 36,791 (the " '791 Patent")[1] as the exclusive licensee of those patents (Complaint, ¶ 13).  However, Versus' claims for infringement of U.S. should be dismissed on two separate grounds, as discussed in detail below, because Versus lacks standing to bring those claims under its license agreement, and this Court therefore lacks jurisdiction.

First, Versus lacks standing to sue Radianse for infringement of the '195 and '791 Patents without joining the patent owner, Freshloc, because Versus does not possess all substantial rights to those patents.  Versus' "exclusive license" from Freshloc is only for a limited field consisting of "IR only", and is expressly limited to a ten-year period.  Thereafter, on January 31, 2007, the

- 2 -

"exclusive" Versus' license expires automatically and irrevocably, years before the end of the term of the patents.   Not only does Freshloc presently continue to hold rights in the patents outside the limited field licensed to Versus, but Freshloc will also recover rights within the field exclusively licensed to Versus upon the expiration of Versus' ten year term.  Freshloc has recently granted Radianse a non-exclusive license under the '195 and '791 patents for all fields of use, including a license, effective when  the Versus "exclusive" license for the limited "IR only" field of use expires on January 31, 2007, for the "IR Only" field of use. These facts demonstrate clearly that Versus does not possess "all substantial rights" under the patents.

Second, Versus does not have standing to sue Radianse, because Radianse's accused Indoor Positioning System  ("IPS") is outside the area of exclusivity stated in Versus's license. Versus possesses exclusive rights under the '195 and '791 patents only within the infrared ("IR") field of use.  The accused Radianse IPS is not within Versus' exclusive field of use, because it uses radio frequency ("RF") transmissions rather than IR radiation to identify objects, and because it requires RF rather than IR to locate objects.

### STATEMENT OF FACTS[2]

**A.**   **Versus's License Agreement**

1.   Versus entered into a license agreement effective as of January 31, 1997, with Precision Tracking FM, Inc. ("PTFM") and Alan C. Heller ("Heller"), by which PTFM and Heller licensed certain technology to Versus.  ("Versus License Agreement," attached hereto in Tab 2; Response to Plaintiff's Request for Admission No. 1).

---

[1] The '195 and '791 patents are appended to the Complaint as Appendices B and C, respectively.
[2] The facts recited herein are taken from Plaintiff's Responses to Defendant's First Set of Requests for Admission (attached hereto in Tab 1), and the Affidavits of Paul Tessier and Michael Dempsey filed herewith in support of the present motion.

2.      Under the Versus License Agreement, Versus is a licensee of the '195 and '791 patents.  (Plaintiff's Response to Radianse's Request for Admission No. 2).

3.      Subsequent to the execution of the Versus License Agreement, title to the '195 and '791 patents was assigned by PTFM to Freshloc Technologies, Inc. ("Freshloc").  (Plaintiff's Response to Radianse's Request for Admission No. 4).

4.      The '195 and '791 patents are currently owned by Freshloc.  (Plaintiff's Response to Radianse's Request for Admission No. 4).

5.      In this action, Versus purports to bring suit against Radianse for infringement of the '195 and '791 patents pursuant to the provisions of the Versus License Agreement.  (Complaint, ¶13).

6.      The Versus License Agreement recites that, "

**REDACTED**

"  (Versus License Agreement, Recitals, at 1).

7.      The Versus License Agreement includes a "Grant of License" provision that states, "

**REDACTED**

."  (Versus License Agreement, Section 1(a), at 1-2).

REDCTED -- PUBLIC VERSION, filed June 29, 2005

8.    The Versus License Agreement states that, "

**REDACTED**

' (Versus License Agreement, Section 1(b), at 2).

9.    The Versus License agreement also states that,

**REDACTED**

(Versus License Agreement, Section 1(c), at 2).

10.    Under the Versus License Agreement, Versus' exclusive license for a limited and defined field terminates automatically and irrevocably ten years after the effective date of the Agreement, i.e., on January 31, 2007. The Agreement contains no provision requiring either party to take any action in order for termination to take place. In addition, it does not contain any provision under which the term of Versus' exclusive license can be extended beyond January 31, 2007. (Versus License Agreement, Section 1(b), at 2).

11.    The '195 patent expires on August 1, 2014, and the '791 patent expires on May 4, 2010.

12.    The Versus License Agreement will terminate prior to the expiration of the '195 and '791 Patents. (Versus License Agreement, Section 1(b), at 2).

- 5 -

**B.**     <u>The Radianse Indoor Positioning System</u>

13.     Radianse manufactures and sells the Radianse Indoor Positioning System ("IPS"). (Affidavit of Paul Tessier, ¶ 3).

14.     The Radianse IPS accurately and continuously tracks the location of assets or people in virtually any indoor environment.  The Radianse IPS is based on a proprietary technique developed by Radianse to (a) identify and (b) determine the location of objects indoors.  Both of these functions are essential to the operation of the Radianse IPS.  The Radianse IPS is comprised of four parts – a small, inexpensive, battery-powered transmitter called an ID Tag, a receiving unit called a Receiver, a wired or wireless network, and application software.  (Affidavit of Paul Tessier, ¶ 5).

15.     ID Tags are small devices that transmit unique identification codes and status information by means of radio frequency ("RF") transmissions.   These ID tags are worn by individuals or attached to assets to be tracked.  (Affidavit of Paul Tessier, ¶ 6).

16.     Signals from the ID Tags are received by Receivers.  Receivers are placed at various locations around a facility and connect directly to the facility's network.  Receivers process the signals received from the ID Tags and then send the data to a computer running Radianse software.  (Affidavit of Paul Tessier, ¶ 7).

17.     The Radianse software contains a proprietary algorithm to identify and determine the location of ID Tags, which it then makes available through a web interface, sends to existing customer databases/applications, or sends on to other value-added applications via XML. (Affidavit of Paul Tessier, ¶ 8).

18.     In the Radianse IPS, ID Tags are identified by signals that are transmitted in the form of RF packets that are sent as     REDACTED     The RF message format

for the transmissions from ID Tags in the Radianse IPS is described in Appendices A and B to the Tessier Affidavit.  In particular, each RF packet includes REDACTED REDACTED (Affidavit of Paul Tessier, ¶ 9).

19.    In addition to providing unique identification information for the ID Tag, the RF signal transmitted by the ID Tag in the Radianse IPS constitutes the primary information used by the Radianse IPS software to determine the location of the ID Tag.  (Affidavit of Paul Tessier, ¶ 10).

20.    The ID Tags in the Radianse IPS do not transmit identification information by means of infrared ("IR") frequencies.  (Affidavit of Paul Tessier, ¶ 11).

21.    The Radianse IPS does not determine the identification of ID Tags by means of IR transmissions.  (Affidavit of Paul Tessier, ¶ 12).

22.    The RF transmissions from ID Tags in the Radianse IPS are followed by the transmission of a short IR signature in standard industry format that does not contain identification information and that is not unique to Radianse.  The IR signal can only be received if a valid RF packet is received.  The IR signal has no relevance or meaning by itself. (Affidavit of Paul Tessier, ¶ 13).

23.    The IR signal transmitted by the ID Tags in the Radianse IPS does not provide information to identify the ID Tag.  (Affidavit of Paul Tessier, ¶ 14).

24.    The RF transmissions from ID Tags in the Radianse IPS provide the primary means by which the locations of the ID Tags are calculated by Radianse.  The IR signals transmitted by the Radianse ID Tags provide supplementary location information.  (Affidavit of Paul Tessier, ¶ 15).

- 7 -

25.     The Radianse IPS requires the RF signal to both identify and locate ID Tags, but does not require the IR signal either to identify or locate ID Tags.  (Affidavit of Paul Tessier, ¶ 16).

**C.     The Radianse License Agreement**

26.     On April 22, 2005, Radianse entered into a Patent License Agreement with the patent owner, Freshloc (the "Radianse License Agreement", attached hereto in Tab 3). (Affidavit of Michael Dempsey).

27.     The Radianse License Agreement recites that, "


## REDACTED


"

28.     The Radianse License Agreement recites that, "


## REDACTED


" (Radianse License Agreement, at 1).

29.     The Radianse License Agreement provides at Sections 1 and 2 as follows:


## REDACTED

# REDACTED

## ARGUMENT

**A.** **Versus Lacks Standing Because Versus Does Not Possess "All Substantial Rights" Under the Patents**

> **1.** **Versus Is An Exclusive Licensee For Only A Portion Of The Patent Terms**

In a patent action, the question of standing is a jurisdictional one. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995). Standing in a patent infringement case is derived from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." See 35 U.S.C. § 281 (1994); *Syngenta Seeds, Inc. v. Monsanto Company*, No. Civ.04-228-SLR (D.Del. March 18, 2005).

Only a patentee may bring an action for patent infringement. *Textile Productions, Inc. v. Mead Corporation*, 134 F.3d 1481, 1484 (Fed. Cir. 1998). A "patentee" is defined by the patent statute as the party to whom the patent issued, or any successors in title to the patentee. 35 U.S.C. § 100(d). The general rule articulated by the Supreme Court in *Independent Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459, 473 (1926), is that the patentee should be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee. *See Prima Tek II, LL.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). The Federal Circuit recognizes an exception to this general rule: "where the patentee makes an assignment of all substantial rights under the patent, the assignee may be deemed the effective 'patentee' under 35 U.S.C. § 281 and thus may have standing to maintain an infringement suit in his own name." *Id.*

In determining whether a license agreement has conveyed "all substantial rights" in a patent, the courts ascertain the intention of the parties and examine the substance of what was granted. *Prima Tek II*, 222 F.3d at 1378. Implicit in this analysis is an evaluation of the rights retained by the grantor. *Id.* "The use of the word 'exclusive' is not controlling; what matters is the substance of the arrangement." *Textile Productions*, 134 F.3d at 1484 (citing *Ortho Pharm. Corp. v. Genetics Institute, Inc.*, 56 F.3d 1026, 1032 (Fed. Cir. 1995)).

Under the reasoning of the Federal Circuit in *Prima Tek II*, a license agreement that vests the patent owner with a contingent reversionary right in the licensed patents, such as the right of the patentee to obtain all rights if it chooses not to renew the license, must be distinguished from a situation – like that in the present case – where the license agreement specifies a non-contingent, or "hard," termination date beyond which the license cannot be renewed. *Prima Tek II*, 222 F.3d at 1378. In the case of a contingent license termination provision such as that in *Prima Tek II,* it is possible that the licensee may continue to enjoy his licensed rights for the full life of the patent, and thus may be held to have "all substantial rights" to the patent.[3] Where, on the other hand, the exclusive license terminates before the end of the patent term, it is <u>impossible</u> for the licensee to possess "all substantial rights" under the patent, one of which is the right to enforce the patent for its full term.

The district court in *Moore U.S.A., Inc. v. Standard Register Co.*, 60 F.Supp. 2d 104 (W.D.N.Y., 1999) confronted facts that are similar to those in the present suit. The license agreement in *Moore* granted an "exclusive license," namely, a "sole and exclusive license in the United States to use, sell, offer for sale, make and import anything within the scope of the '128 patent," including the right to sue for infringement, that was limited to a set term, *i.e.*, only for

---

[3] This Court addressed a similar contingent termination provision in *Syngenta Seeds, Inc. v. Monsanto Company*, o. Civ.04-228-SLR (D.Del. March 18, 2005).

"five years and not for the life of the patent." *Id.* The district court held that where there is a specified or "hard" termination date for the exclusive license, the exclusive licensee acquired less than "all substantial rights" in the patent, and did not have standing to sue for infringement without the patent owner. *Id.* at 110. The *Moore* Court distinguished the potential reversionary interest in *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 994 F.2d 870 (Fed. Cir. 1991), because it was triggered only in the case of bankruptcy, which might never occur. *Id.*

In deciding *Prima Tek II,* the Federal Circuit made it clear that the facts in *Prima Tek II* (involving a renewable license) must be distinguished from the "hard termination" case of *Moore*:

> Significantly, the agreement does not specify a "hard" termination date beyond which the license cannot be renewed, cf. *Moore U.S.A. Inc. v. Standard Register Co.,* 60 F.Supp. 2d 104, 109-10...(W.D.N.Y. 1999) (infringement suit brought by exclusive licensee for finite term of five years required joinder of patentee), and we express no opinion as to the effect of such a provision on a licensee's standing to sue.

222 F.3d at 1378. Consequently, *Prima Tek II* does not support the position that Versus possesses all substantial rights under the patents and need not join Freshloc. To the contrary, this case falls under the fact pattern of *Moore,* because the Versus license agreement contains a "hard" termination date, after which Versus will become only a non-exclusive licensee in a limited field.

Versus does not possess "all substantial rights" in the '195 and '791 patents and thus, without joining the patent owner, lacks standing to bring the present action. *Syngenta Seeds, Inc. v. Monsanto Company,* No. Civ.04-228-SLR (D.Del. March 18, 2005). This conclusion is underscored by the fact that the patent owner, Freshloc, has granted a license to Radianse, including a license commencing January 31, 2007, for the same field as the Versus exclusive license which will expire. How can Versus have "all substantial rights" under the patents, if the

- 11 -

patentee has retained rights and has licensed those rights to Radianse under the same patents? Clearly, the answer is that Versus does not possess all substantial rights, and lacks standing to maintain this action.   Consequently, this Court lacks jurisdiction.

### 2.    The Right to Sue Provision in the Versus License Agreement Does Not Provide Versus with Standing to Sue for Infringement

The right to sue provision in the Versus License Agreement does not confer standing on Versus, because standing depends on the plaintiff's proprietary interest in the patent, not a contractual arrangement.  Standing to bring suit under 35 U.S.C. §§ 261 and 281 of the Patent Act may not be given by contract, for only a patentee or successors have the authority to sue for infringement.  *See Ortho*, 52 F.3d 1034 ("we conclude that the right to sue clause has no effect upon this case…a contract cannot change the statutory requirement for the suit to be brought by the 'patentee'").  Similarly, as the *Prima Tek II* Court explained, "[s]tanding to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties who may sue and who may be bound by judgments. . . A contract cannot change the statutory requirement for suit to be brought by the 'patentee.'"  *Prima Tek,* 222 F.3d at 1381.  "[T]he issue of whether an exclusive licensee has sufficient rights in a patent to bring suit in its own name is jurisdictional . . .."  *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001).  "The presence of the owner of the patent as a party is indispensable . . . to give jurisdiction under the patent laws . . .."  *Id.*, quoting *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. at 468.

**B.    Versus Lacks Standing Because the Versus License Is Exclusive Only as to a Defined and Limited Field of Use, and Radianse's IPS Is Outside That Field of Use**

**1.    Versus Does Not Have Standing to Sue Radianse Unless Versus is an Exclusive Licensee and Radianse is Operating Within the Area of Exclusivity Stated in Versus's License**

An exclusive licensee only possesses standing to sue for infringement against a party operating without authority in the stated area of exclusivity. *Amgen, Inc. v. Chugia Pharmaceutical Co., Ltd.*, 808 F.Supp. 894, 899 (D. Mass. 1992), *aff'd sub nom; Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026 (Fed. Cir. 1995), *cert. denied* 516 U.S. 907 (1995); 8 D.Chisum, *Patents* § 21.03[2][c] at 21-483 (2003) ("An exclusive licensee generally has standing to sue for infringement against anyone operating without authority in the stated area of exclusivity.")

For the reasons discussed below, Versus lacks standing to maintain the present action against Radianse for infringement of the '195 and '791 patents, because the Versus License Agreement grants Versus an exclusive license only for a limited field of use, and Radianse is not operating within that stated area of exclusivity.

**2.    Versus Possesses Exclusive Rights Under the '195 and '791 Patents Only Within the Infrared Field of Use**

The subject matter of the Versus License Agreement is "*i*    REDACTED REDACTED." as set forth in Recital A thereto. Recital A refers specifically to "REDACTED REDACTED" Similarly, Recital B recites PTFM's desire to withdraw from its "REDACTED," and transfer and license its "REDACTED" and "REDACTED" in order for PTFM to exploit its "REDACTED." Recital B further recites Versus' desire to acquire, "REDACTED

- 13 -

**REDACTED**

."

In Section 1(a), The Versus License Agreement grants to Versus an "exclusive" license under PTFM's patents to make products which "

**REDACTED**

."  Section 1(c) defines the scope of this "exclusive" license with the following language:

**REDACTED**

When Sections 1(a) and 1(c) are read together, it is evident that the "exclusive" license to Versus is limited to the field of "IR only"

The first sentence of Section 1(c) addresses "   **REDACTED** ;" that "   **REDACTED** "which it defines as " **REDACTED** ." It therefore requires an analysis of the " **REDACTED** " for which the technology is " **REDACTED** The second sentence of Section 1(c) excludes from Versus' "exclusive" license the use (" **REDACTED** ") of "Dual Use Technology" for " **REDACTED** ." In other words,

**REDACTED**

63582.1001

**REDACTED**

Taking as an example the application of *identifying an object in an indoor positioning system*, the identification of the object is by means of a "tag" or transmitting device placed on the object to be located.  The transmitter could accomplish this result by transmitting an identification code using either RF or IR.  Consequently, the application of locating the tag involves " **REDACTED** ."  Under Section 1(c),

**REDACTED**

**REDACTED** .  This same conclusion applies even if the product also uses IR to accomplish some other application, such as *locating* the object that was identified by means of RF.  If a product uses RF for an application that could also be accomplished by use of IR, it necessarily exploits **REDACTED** ." and is outside Versus's field of exclusivity.[4]

Taking the analysis to a further level, an "application" could also be performed by the use of both IR and RF transmissions.  For example, in the Radiance system, the tag is *located* by means of the transmission of an RF signal followed by the transmission of an IR signal from the transmitter on the "tag" placed on the object to be located.  In this situation, Section 1(c) likewise provides that

**REDACTED**

---

[4] Versus's licensor, the patentee of the '195 and '791 patents, corroborates this conclusion, as stated in the recital of the Radiance License Agreement that, "Radianse's Indoor Positioning Systems would not presently require a license by Freshloc under the '791 Patent or the '195 Patent for use of infrared frequencies or infrared technology, assuming that Radianse's infrared transmissions do not transmit identification information."  As stated in the Tessier

63582.1001

REDACTED                                      '. This is particularly

the case with a product that is        REDACTED        , as with the Radianse tag, where

the RF signal is <u>required</u> to locate the tag and the IR signal is merely a <u>supplementary</u> signal that

does not locate the tag if the RF signal is blocked.

Section 1(c) makes it clear that PTFM reserved its rights within the field of use of REDACTED

REDACTED . Versus lacks exclusivity – and standing to sue – for infringement of the

licensed patents by products that use RF to accomplish " REDACTED ." applications

such as identifying and locating a tag.

3.    <u>Radianse's Indoor Positioning System is Not Within Versus'
      Exclusive Field of Use, Because it Uses</u> REDACTED  <u>and
      Constitutes a</u> REDACTED

To accomplish the application of *identifying* persons or objects, Radianse's IPS employs

small transmitters placed on them ("ID Tags") that transmit a unique identifier for each ID Tag

by means of radio frequency ("RF") transmissions. (Tessier Affidavit, ¶ 5). Each ID Tag

transmits a RF packet that        REDACTED        comprise the unique

identification of the ID tag. (Id, ¶ 8). The Radianse IPS <u>does not</u> employ infrared transmissions

or infrared technology to identify ID Tags. (Id., ¶¶ 11, 12). Consequently, Radianse is not

operating within Versus's "stated area of exclusivity," and Versus lacks standing to sue

Radianse.

In addition to falling outside Versus's exclusive field of use in the manner in which it

transmits object *identification* information, Radianse likewise falls outside Versus's exclusive

license by its use of "Dual Use Technology" to *locate* objects being tracked. The signal

transmitted by the Radianse ID Tags consists of the above-described REDACTED signal followed

Affidavit, Radianse's indoor positioning system does not use IR to transmit identification information. That
application is accomplished by means of an RF transmission.

- 16 -

by an IR signature in standard industry format. The IR signature does not contain identification information and is not unique to Radianse. The IR signal can only be received if a valid RF packet is received, and has no meaning or relevance by itself. (Id., ¶ 13). The Radianse IPS requires the RF signal to locate the ID Tag, but does not require the IR signal (Tessier Affidavit, ¶ 16). The IR signal provides location information supplementing information obtained by means of the RF signal. Radianse's use of both RF and IR for the purpose of locating ID Tags constitutes the ' REDACTED ," and the Radianse product is a " REDACTED REDACTED because it relies on the use of RF to locate the ID Tag. For purposes of locating the ID Tag, Radianse's IPS thus constitutes a " REDACTED REDACTED " employing " REDACTED ' that falls outside of Versus' exclusive license of the '195 and '791 patents.

## C.    This Motion is Ripe for Decision

The first ground here advanced for dismissal of this action as to the patents licensed by Versus, namely that Versus does not possess all substantial rights under its license agreement, does not raise a fact issue requiring any further discovery. There is no dispute as to the content of the Versus License Agreement or the Radianse License Agreement.

Likewise, Versus has had an adequate opportunity for discovery regarding the manner of operation of the Radianse IPS that forms Radianse's second ground for moving to dismiss. Radianse has produced full documentation regarding its IPS, and Versus has completed its inspection of Radianse's IPS at Radianse's facility. To the extent that Radianse's second ground for the present motion involves the way Radianse employs IR and RF to accomplish "Dual Use Technology" applications, there is no genuine issue regarding those facts. Consequently, this motion is ripe for decision at the present time.

- 17 -

Finally, it is in the interest of both the parties and the Court that the crucial issue of jurisdiction be decided now.

## CONCLUSION

Radianse requests that the Court dismiss this action for lack of jurisdiction as to Versus' complaint for infringement of the '195 and '791 patents, because (1) Versus does not hold all substantial rights to those licensed patents and (2) the license under which Versus sues is exclusive only as to a defined limited field of use, and Radianse's indoor positioning systems do not fall within that limited field. Therefore, Versus lacks standing to sue Radianse as to those patents, and this Court lacks jurisdiction.

Respectfully submitted,

RADIANSE, INC.
By its attorneys,

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT &
   TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6672

Of Counsel:

Sibley P. Reppert
William A. Scofield, Jr.
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

Dated:  June 24, 2005

REDCTED -- PUBLIC VERSION, filed June 29, 2005

# EXHIBIT 1

3|3⁵

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERSUS TECHNOLOGY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.  04-1231  (SLR) |
| | ) |
| RADIANSE, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

### PLAINTIFF'S RESPONSES TO DEFENDANT'S
### FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff, Versus Technology, Inc. ("Versus"), issues the following Responses to Defendant, Radianse, Inc.'s ("Radianse"), First Set of Interrogatories.

### REQUEST NO.1

Versus, PTFM, and Alan C. Heller entered into an agreement effective as of January 31, 1997, by which PTFM licensed certain of its technology to Versus (the "PTFM Agreement"). A copy of the PTFM Agreement is attached hereto as Exhibit A

### RESPONSE

Admitted.

### REQUEST NO.2

Under the PTFM Agreement, Versus is a licensee of U.S. Patents No. 5,572,195 (the "'195 patent") and U.S. Reissue Patent No. 36,791 (the "'791 patent").

### RESPONSE

Admitted that Versus is the exclusive licensee of U.S. Patent No. 5,572,195 and U.S.

1

Reissue Patent No. 36,791. Otherwise denied.

## REQUEST NO.3

Subsequent to the execution of the PTFM Agreement, title to the '195 and the '791 patents was assigned by PTFM to Freshloc.

## RESPONSE

Admitted.

## REQUEST NO.4

The '195 and '791 patents are owned by Freshloc.

## RESPONSE

Admitted.

DATED: March 25, 2005

By:  s/ James M. Lennon
George Pazuniak (DE #478)
Gerard M. O'Rourke (DE #3265)
James M. Lennon (DE #4570)
**CONNOLLY, BOVE, LODGE & HUTZ LLP**
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899
Telephone:  (302) 658-914

*Attorneys for plaintiff, Versus Technology, Inc.*

## CERTIFICATE OF SERVICE

I, James M. Lennon, hereby certify that on this 25th day of March, 2005, 1 caused a true and correct copy of the foregoing to be served upon the persons indicated below in the manner so indicated:

**Via Hand-Delivery and E-Mail (jingersoll(S),ycst.com):**
Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6672

**Via E-Mail (spr(%lahive.com):**
Sibley P. Reppert
William A. Scofield, Jr.
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784

Attorneys for Defendant, Radianse, Inc.


   _s/ James M. Lennon_____
   James M. Lennon (DE #4570)

383401

1

**REDCTED -- PUBLIC VERSION, filed June 29, 2005**

# EXHIBIT 2

REDCTED -- PUBLIC VERSION, filed June 29, 2005

# REDACTED

**REDCTED -- PUBLIC VERSION, filed June 29, 2005**

# EXHIBIT 3

# REDACTED

**REDCTED -- PUBLIC VERSION, filed June 29, 2005**

# EXHIBIT 4

**REDCTED -- PUBLIC VERSION, filed June 29, 2005**

| | |
|---|---|
| **From:** | "George Pazuniak" <GPazuniak@cblh.com> |
| **To:** | "Sibley Reppert" <spr@lahive.com> |
| **Date:** | 6/14/0512:04PM |
| **Subject:** | RE: Motion to add involuntary plaintiff |

Dear Sib,

In view of the current changed circumstances, we will not add Freshloc.

George

—Original Message—
From: Sibley Reppert [mailto:spr@lahive.com]
Sent: Tuesday, June 14, 2005 12:00 PM
To: George Pazuniak; James M. Lennon
Subject: Motion to add involuntary plaintiff

George and Jim:

Please let me know whether you are going to move under Rule 19 to add Freshloc as an involuntary plaintiff.   I got the impression from your most recent filing (opposing our motion to dismiss) that you are not going to do so.

Thanks,

Sib

CC:          "James M. Lennon" <JLennon@cblh.com>

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on June 24, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> George Pazuniak , Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> PO Box 2207
> Wilmington, DE 19899

I further certify that on June 24, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen L. Keller*

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Defendant