IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERSUS TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 04-1231 (SLR) |
| v. | ) | |
| | ) | PUBLICLY FILED |
| RADIANSE, INC., | ) | REDACTED VERSION |
| | ) | |
| Defendant. | ) | |
| | ) | |

## VERSUS'S OPPOSITION TO RADIANSE'S CONSOLIDATED MOTION TO DISMISS FOR LACK OF STANDING

Plaintiff Versus Technology, Inc. ("Versus") submits this brief in opposition to the consolidated motion filed by Defendant Radianse, Inc. ("Radianse") to dismiss, for lack of standing, Versus's infringement claims with respect to U.S. Patents 5,572,195 ("'195 patent") and RE 36,791 ("'791 patent"). (D.I. 78).

## I.    NATURE AND STAGE OF THE PROCEEDING

On September 3, 2004, Versus filed a Complaint against Radianse alleging infringement of four patents owned by or exclusively licensed to Versus. (D.I. 1).

After previously filing separate motions (D.I. 55 and 74 (withdrawn)), Radianse now submits a consolidated motion to dismiss two of the four patents in suit, arguing that Versus lacks standing to sue Radianse for infringement despite Versus's possession of an exclusive license to these two patents. (D.I. 78).

## II.    SUMMARY OF THE ARGUMENT

Radianse's paper is a disguised summary judgment motion, which does not meet the requisites of such a summary disposition.  The motion to dismiss should be denied, because:

- Versus is an exclusive licensee of the '195 and '791 patents until January 31, 2007, and, therefore, has standing to sue for their infringement;

- Radianse admits that Versus's exclusive rights extend to products that use infrared technology.  (D.I. 79). (Radianse Opening Brief ("Rad. Br."), p. 14).

- Radianse admittedly uses infrared technology, and, thus, is within the ambit of Versus's exclusionary rights.  (Rad. Br., p. 16-17).

Radianse relies on non-persuasive authority to support its proposition that a "hard termination date" in a patent license, prior to the expiration of the licensed patent, deprives the licensee of an independent right to sue.  Under circumstances vesting even fewer and more transient rights in the licensee than the case at bar, the Federal Circuit specifically declined to adopt the rationale of the case cited by Radianse.  In fact, the Federal Circuit has applied a rationale contrary to Radianse's cited authority.

Additionally, Radianse's arguments regarding whether its products are within the scope of the exclusive license make no sense.  Radianse asserts that it uses radio frequency in addition to infrared as part of its locating system.  That is irrelevant, however, because the addition of radio frequency does not diminish at all the admitted fact that Radianse still uses infrared technology within the scope of the patent claims licensed to Versus.  Moreover, Versus's exclusive rights in the patents include the right to exclude any products that include infrared technology, regardless of any additionally technology the product may also use.

Radianse's other argument appears to be that it does not infringe the patent claims. But, the well-pleaded allegations of the Complaint charge Radianse with patent infringement, and that is sufficient to withstand a motion to dismiss. Versus can not, and need not, address the specific issues of whether Radianse's location system and method infringe the '195 and '791 patents, because it has not completed its discovery of Radianse. Infringement will be determined in the same manner as any other patent infringement case, on the basis of the court's claim interpretation and the facts. Radianse has not stated any basis for summary determination that it does not infringe those claims.

## III.    STATEMENT OF THE FACTS

### The PTFM License to Versus

PTFM is the legal owner of the '195 and '791 patents. PTFM granted to Versus an exclusive license under those patents, for the period from January 31, 1997 through January 31, 2007,

> to make, use, and sell articles or products which employ, practice, or make use of any or all intellectual property or proprietary rights to intellectual property, or any related ancillary rights of PTFM or its affiliates applicable to products, articles, or devices *which make use of infrared frequencies or infrared technology, including, without implied limitation, all: issued or applied for patents*. . . . . (hereinafter the "Licensed Rights" and/or "Assigned Rights").

("PTFM License") (D.I. 79, Ex. 2, pp. 1-2) (*emphasis added*).

The PTFM License identifies the patents that are included within the exclusive license in "Exhibit C." Included among the patents listed in Exhibit C are the '195 patent and the reissued '791 patent's predecessor, U.S. Patent No. 5,119,104 (issued June 2, 1992). (Exhibit A).

The PTFM License also specifically acknowledges that Versus has the "right to sub-

license," and the right to enforce the exclusively licensed patents, with Versus retaining any

awards, settlements or damages which may be recovered as a result:

> *Versus, at its own expense, shall have the right and power (but not the obligation) to institute and prosecute or settle suits in its own name,* or, if required by law, jointly with PTFM, *for infringement of any patent legally or beneficially owned by PTFM* or the other parties to this Agreement *which is*    .
> *included as part of the Licensed Rights and/or Assigned Rights under this Agreement.* PTFM will give Versus such reasonable assistance and cooperation in connection therewith as Versus may reasonably request. *Versus shall be entitled to retain any awards, settlements or damages which may be recovered as a result of any such suits*.

(D.I. 79, Ex. 2, p. 6) (*emphasis added*).

The above provisions demonstrate a clear intent by PTFM to exclusively license or assign

to Versus all its rights with respect to any product that uses, at least, infrared technology,

including the exclusive right to assert the '195 and '791 patents against those products.

Section 1(c) of the PTFM License reserved back to PTFM a right to exploit certain

technology, termed Dual Use Technology, for PTFM's non-infrared products. (D.I. 79, Ex. 2, p.

2). This provision provided PTFM the right to continue to pursue its radio-frequency ("RF")

product lines, but does not limit Versus's exclusive rights to any device or method that uses

infrared. (Gaisser Decl., ¶ 7). (Exhibit B).

**The Freschloc License to Radianse**

REDACTED

**Radianse Admits Using Infrared**

Radianse concedes in its brief that its locating system uses infrared technology.  (Rad. Br., p. 7).  Radianse also admits in its interrogatory responses that it utilizes coded infrared signaling to identify location transmissions.  (Exhibit C, p. 7)

REDACTED

REDACTED

REDACTED                                    REDACTED

## IV.    ARGUMENT

**A.    The Law Recognizes an Exclusive Licensee's Independent Right to Sue**

**1.  This Court's Prior Precedent Supports Versus' Independent Right to Sue**

As this Court has previously established, standing in a patent infringement actions is derived from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1994); *see also Syngenta Seeds, Inc. v. Monsanto Co.*, No. Civ.04-228-SLR, 2005 WL 984362, at *2 (D.Del. March 18, 2005). (Exhibit D).  In *Syngenta*, this Court explained the application of standing requirements to the context of a licensed patent as follows:

> The term "patentee" comprises not only the patentee to whom the patent was issued but also the successors in title to the patentee.  An exclusive licensee may bring suit in its own name if the exclusive licensee holds all substantial rights in the patent.  A grant of all substantial rights in a patent amounts to an assignment-- that is, a transfer of title in the patent-- which confers constitutional standing on the assignee to sue another for patent infringement in its own name.

*Id.* at *2 (*quotations and citations omitted*). "The title of the agreement at issue, which uses the term 'license' rather than the term 'assignment,' is not determinative of the nature of the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination." *Id.* at *2 (*citations omitted*).

In *Syngenta* this Court further explained that the retention of a reversionary right by the patent licensor, resulting from a license term shorter than the term of the underlying patent, does not deprive the licensee of standing to sue. *Syngenta* at *3 ("According to the Federal Circuit, 'that fact alone does not deprive the licensee of standing to maintain a patent infringement suit in its own name.'") (citing *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1378 (Fed.Cir.2000).

*Syngenta* also recognized that an unlimited right to sublicense is an indication of the transfer of all substantial rights. *Id.* at *4 ("Given that [licensee] has an unlimited right to sublease the patent rights, the restriction on [licensee's] right to assign the entirety of the patent rights is not a severe limitation.") (*citations omitted*).

Additionally, in *Syngenta*, this Court refused to hold that a licensor's retention of title could be construed as a substantial right that would deny standing to a licensee. *Id.* at *4.

## 2. Federal Circuit Precedent Supports Versus' Independent Right to Sue

The Federal Circuit has emphasized that, "[t]he general principle . . . requiring that a patent owner be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee having fewer than all substantial rights is prudential rather than constitutional." *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1348 (Fed.Cir. 2001) (*citing Prima Tek II*, 222 F.3d at 1377). A true exclusive licensee's standing to sue alone was recently explained by the Federal Circuit in *Fieldturf, Inc. v.*

*Southwest Recreational Industries, Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004), as follows:

> To bring an action for patent infringement, a party must be either the patentee, a successor in title to the patentee, or an exclusive licensee of the patent at issue. A purported exclusive licensee must show that he possesses "'all substantial rights' in the patent." Lacking all substantial rights, he may bring suit against "third parties only as a co-plaintiff with the patentee" or a successor in title to the patentee.

(Internal citations omitted). More recently, the Federal Circuit explained the policy

considerations underlying this rule as follows:

> [T]he policy concerns motivating the need for a patent owner to be joined in an infringement suit with its licensee -- [are] principally, from the standpoint of an accused infringer, avoidance of multiple lawsuits and liabilities, and, from the standpoint of the patentee, ensuring that its patent is not invalidated or held unenforceable without its participation.

Federal Circuit in *Evident Corp. v. Church & Dwight Co., Inc.*, 399 F.3d 1310, 1314 (Fed.Cir.

2005). *See also Prima Tek II*, , 222 F.3d at 1381 ("[O]ne of the underlying policies of the rule of

Independent Wireless is to prevent duplicative litigation against a single accused infringer.").

The prudential and policy considerations here favor the recognition of an independent

right to sue, because:

(1) The exclusivity of Versus's licensed rights means that Radianse cannot be liable to the

current title owner of the patent, Freschloc, for any acts of infringement that occur before those

rights revert back to Freshloc, and Radianse will not be liable to Versus for any acts of

infringement that occur after the reversion;

(2) Freshloc's predecessor, PTFM, manifested its intention to grant Versus all substantial

rights in the exclusively licensed patents by vesting in Versus an absolute right to sue without the

approval of, or participation by, PTFM[1];

---

[1] Radianse argues that the license provision conferring an independent and unchecked right to sue on the patents in Versus is not dispositive; however Radianse cannot argue that this conferral manifests the licensor's intent to confer

(3) Freshloc, has declined an invitation to join in this litigation; and

(4) Freshloc's president, Alan C. Heller, also the primary inventor of the '195 and '791 patents, has already provided documents and deposition testimony to support the validity and enforceability of these patents.[2]

In this case, Versus clearly has all the rights in the licensed patents, including specifically the right to sue, and, therefore, would normally have the right to sue alone. Freshloc, currently possesses no rights in the licensed patents, except the reversionary right. It can not be contested that Versus would have the right to sue alone, absent the reversionary interest.

### 3. The Reversionary Interest Does Not Preclude Versus's Rights as Exclusive Licensee

None of the authorities from the Federal Circuit cited by Radianse is on point. They merely state that an exclusive licensee may sue for patent infringement without joining the title owner of the patents, if the exclusive licensee has "all substantial rights" under the patent. In this case, Versus does have all the rights under the patents in issue, and these rights remain exclusive until they expire (become non-exclusive) in January 2007. Thus, the only issue is whether that expiration of exclusivity or reversion of exclusivity to the title owner in the future negates Versus's present right to sue.

The only case on this actual point cited by Radianse is the district court opinion in *Moore U.S.A. Inc. v. Standard Register Co.*, 60 F. Supp. 2d 104, 109-10 (W.D.N.Y. 1999), which, on the particular facts, held that a "hard termination date" for an exclusive license meant that the

---

all substantial rights in the licensed patents to Versus for the period of exclusivity. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875-76 (Fed.Cir.1991).

[2] In *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1373 (Fed.Cir. 2001), the Federal Circuit recognized that the collection of discovery by defendants from the licensor was a factor that weighed against dismissal. ("we are not persuaded by defendants arguments that we should dismiss this case for lack of jurisdiction, . . . [where] the defendants did conduct discovery on [the licensor's] principals. . . .").

exclusive licensee did not have "all the substantial rights" and had to join the title owner of the

patent. However, the *Moore U.S.A.* case was later specifically considered by the Federal Circuit

in *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372 (Fed. Cir. 2000). The Court refused to

adopt its reasoning, but stated that "we express no opinion as to the effect of such a [hard

termination] provision on a licensee's standing to sue."

Thus, whether Versus needs to join Freshloc in this case because of the "hard

termination" date for its exclusive license, even though Versus could otherwise maintain the case

without Freshloc, is one of first impression. The underlying legal principles set forth in other

cases and logic dictate, however, that Versus has the right to sue without joining Freshloc in this

case.

First, the law generally is that a termination or other clause in an exclusive license does

not limit the licensee's right to sue alone. Thus, in *Prima Tek II, L.L.C.*, the Federal Circuit

summarized the background of the case in relevant part as follows:

> The patents are owned by Southpac . . . . In 1995, Southpac entered into a license
> agreement with Prima Tek I. . ., granting to Prima Tek I the exclusive, worldwide
> right to make, use and sell the products and processes covered by the patents . . . .
> The agreement contained a termination clause whereby the license automatically
> terminated at the end of an initial two-year term, or at the end of each year
> thereafter, unless Southpac notified Prima Tek I at least 30 days in advance of its
> intent to renew the agreement for an additional year. The agreement also included
> an enforcement clause providing that Prima Tek I "shall have the sole and
> exclusive right to sue third parties for infringement . . . and to collect damages for
> past infringements."

*Prima Tek II, L.L.C. v. A-Roo Co., supra*, 222 F.3d at 1374. The defendant had argued that the

Plaintiff did not have standing to sue as an exclusive licensee, because "the agreement is limited

in duration and expires automatically unless Southpac opts to renew it." *Prima Tek II, L.L.C. v.*

*A-Roo Co., supra*, 222 F.3d at 1378. Thus, the exclusive license required that the licensor

annually agree to its extension, or, otherwise, the patent rights reverted to the title holder of the

patent.

       The Federal Circuit rejected the argument that the time limitation on the exclusive license

– the requirement of annual extensions of the exclusive license – negated the exclusive licensee's

right to sue alone.  The Court specifically held that:

> While it is true that the agreement is temporally limited to an initial two-year
> period followed by successive, renewable one-year periods, that fact alone does
> not deprive the licensee of standing to maintain a patent infringement suit in its
> own name. * * *
> In *Vaupel [Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.S.*, 944 F.2d
> 870, 870-75 (Fed. Cir. 1991)*]*, we applied the Supreme Court's reasoning in
> *Waterman [Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891)] to a license
> agreement in which the patent owner retained a reversionary right in the patent.
> The agreement in question contained a termination clause whereby the license
> would terminate automatically if the licensee filed for bankruptcy or stopped
> production of the patented product. *See Vaupel*, 944 F.2d at 874.  We held that
> the termination clause was "entirely consistent with an assignment" and therefore
> did not preclude the licensee from having standing to sue in its own name. *Id.* at
> 875 (citing *Waterman*, 138 U.S. at 256).

*Prima Tek, II, L.L.C. v. A-Roo Co.*, 222 F.3d at 1378.

       To be sure, as noted above, the Court went on to note that the case did not present a "hard

termination" as in the *Moore U.S.A.* case, and left that issue open.  However, fundamentally there

is no distinction between an exclusive license that has a "hard termination" date, and an

exclusive license that must be affirmatively renewed to avoid termination.  For the period from

January 1997 through January 2007, the title owner has no rights to the technology exclusively

licensed to Versus, and has only a reversionary interest after January 2007.

       *Moore U.S.A.* is not persuasive.  First, the case was decided before the Federal Circuit's

*Prima Tek II* decision, and the district court's limited analysis of the issue is not consistent with

*Prima Tek II.*  Second, the court's analysis consisted of the simple and unsupported sentence that

"complete relief cannot be afforded because there is a substantial risk that [Defendant] could incur obligations after 2002 to [the patent owner] as well as to Moore North America." *Moore U.S.A. Inc., supra*, 60 F. Supp. 2d at 109. This rationale is fundamentally inconsistent with *Prima Tek II*, because, under that rationale, the Defendant in *Prima Tek II* also "could incur obligations" in the future. The *Moore U.S.A.* Court's assertion is also plainly wrong because, a "hard termination" date for an exclusive license otherwise transferring all substantial rights in a patent does NOT permit any inconsistent or additional obligations:

- If the court determines that the patents were licensed or not infringed, claim preclusion principles will preclude the Defendants from being again charged with the same infringement.

- If the patents are determined to be invalid or unenforceable, the patents are "dead" and can not be revived in another lawsuit.

- On the other hand, if the court finds that the patents are infringed, and that Defendants have not established any defense, the Defendants have no right to continue practicing the patented inventions.

After January 2007, Radianse purports to be licensed to practice the patented inventions. Nowhere is there any opportunity for any inconsistent or multiple liabilities. It is noteworthy that Radianse has not pointed to any scenario by which Radianse could ever be subjected to any multiple or inconsistent actions.

Versus has the right to bring this action alone, because it is the exclusive licensee of the patents in issue with all substantial rights under the patents.

**B.    Radianse Misinterprets Versus's Rights**

### 1. Radianse's Motion Fails, Because it is Based on a Fundamental Misinterpretation of the PTFM License

Radianse concedes that Versus is an exclusive licensee of the patents in suit. Radianse

also does not dispute that an exclusive licensee for a limited field of use[3] has standing to sue for

infringement against any party operating without authority in the field of use.[4]  (Rad. Br., p. 13

(citing *Amgen, Inc. v. Chugia Pharmaceutical Co., Ltd.,* 808 F.Supp. 894, 899 (D. Mass. 1992);

*Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.,* 52 F.3d 1026 (Fed. Cir. 1995); and

8 D.Chisum, *Patents* § 21.03[2][c] at 21-483 (2003)).

Nevertheless, Radianse argues that Versus does not have standing to assert the patents in

this case because allegedly Versus' exclusive license is "only for a limited field of use," that of

infrared technology.  (Rad. Br., p. 13).  Radianse first misconstrues that PTFM License, then

attempts to prove that, although it "uses infrared technology," that it actually uses radio

frequency, rather than infrared, to determine location. Radianse's argument misinterprets the

plain language of the PTFM License and Versus's exclusive rights.  Thus, its factual arguments

about its locating system are irrelevant.

The PTFM License assigned to Versus all of PTFM's rights with respect to, *inter alia,*

"products which employ, practice or make use of any or all intellectual property . . . applicable to

products . . . which make use of infrared technology, including, without implied limitation, all:

---

[3] Versus does not concede that its license is for a limited field of use.  Rather, it is apparent from the PTFM License that Versus was vested exclusive rights in the entirety of the licensed patents, excepting PTFM's right to continue operating in a limited, non-infrared, field of use.  The license therefore granted Versus the right to exclude all but PTFM from even the non-infrared technology applications, such as RF; however, the Court need not address this full scope of the licensed rights in order to find that Versus has standing in this case.

[4] It is generally recognized that a geographic or field of use restriction in an otherwise exclusive license does not impair a licensee's independent right to sue. *Brunswick Corp. v. United States,* 22 Cl.Ct. 278, 282-83 (1991).

issued or applied for patents . . . ." (D.I. 79, Ex. 2, p. 2). This includes the exclusive right to assert the '195 and '791 patents against those products. So long as a product employs IR, the fact that it also uses RF is irrelevant. It is within the scope of Versus's exclusive grant.

Radianse's absurd construction that Versus cannot enforce its patents against any product that uses RF finds no support in the PTFM License or anywhere else. There is no "IR-only" limitation anywhere in Versus's grant. The term "IR-only" is a Radianse invention. Indeed, Radianse's argument directly contradicts the "Dual Use Technology" provision in section 1(c) of the PTFM License. This provision expressly states "the Licensed Rights and Assigned Rights may include certain software, hardware, patents and trade secrets that can be used in both infrared and non-infrared based applications. (hereinafter "Dual Use Technology")." While this provision goes on to reserve a right for PTFM to continue to exploit its non-infrared products, there is no expressed or implicit "IR only" restriction here or anywhere else in the PTFM License.

Thus, Radianse's motion fails, because it is based on a fundamental misinterpretation of the PTFM License.

## 2. Radianse Distorts § 1(c) of the PTFM License

Radianse's related argument that its products are somehow protected by the "Dual Use Technology" language of the exclusive license to Versus is equally absurd. (Rad. Br., p.16).

The PTFM License at section 1(c) states as follows:

The parties acknowledge and agree that the Licensed Rights and Assigned Rights may include certain software, hardware, patents and trade secrets that can be used in both infrared and non-infrared based applications. (hereinafter "Dual Use Technology"). The parties acknowledge and agree that, subject to the covenants of PTFM and Heller not to compete with Versus, any license or transfer of PTFM's rights in the Dual Use Technology hereunder shall not impair its rights to exploitation of Dual Use Technology for non-infrared technology based products.

(D.I. 79, Ex. 2, p. 2).

Section 1(c) simply permits PTFM to continue to exploit RF-only products, even where such products are otherwise within the exclusive rights granted to Versus. For example, software for locating tags may be used with IR, RF or some combination of both or more signals – i.e., it has dual uses. Section 1(c) makes clear that PTFM may continue to use the software for its RF-only products. Nothing in that language removes Versus's exclusivity over any "products . . . which make use of infrared frequencies or infrared technology." Products which "make use" of IR, by definition, are infrared-based and are plainly within Versus's exclusivity and are not within PTFM's limited reservation of rights to exploit RF-only technology. (Gaisser Decl., ¶ 7).

The only reason Versus consented to allow PTFM to continue to exploit its RF-only products is because RF-only locating technology is so limited in terms of application and function that RF-only technology cannot legitimately compete with infrared locating technology. (Gaisser Decl., ¶ 9). In any event, Versus did not, and would not, enter into an exclusive license for infrared technology products that could be circumvented by the addition of non-infrared technology, such as RF, to those products. (Gaisser Decl., ¶ 10).

### 3. Radianse's Motion Defies the Scheduling Order

Even if Radianse were correct in its misconstruction of Versus's rights under the PTFM License – and Radianse is wrong as a matter of law – its motion to dismiss still requires that the Court construe the patent claims[5] as argued by Radianse and that the Court accept Radianse's allegations as to how Radianse's system functions. As such, Radianse's motion defies the scheduling order to which the parties agreed and the Court entered, and which provides careful

---

[5] Radianse argues that it operates "outside Versus' exclusive field of use" by describing the manner in which its products transmit "identification" information that is "unique" in order to locate objects. These are among the claim

structures of presenting claim construction issues and motions for summary judgment.

Versus disagrees with the claim constructions on which Radianse's motion is premised.

REDACTED

REDACTED

In addition, Radianse attempts to construe the licensed patent rights to require an IR transmission with a signature that is in some form other than "standard industry format." (Rad. Br., p. 17). There is no such limitation in the claims.

REDACTED

REDACTED

terms that Radianse proposes to require construction. There is NO mention of these terms in the PTFM License.

REDACTED

Finally, any locating system must validate a tag's transmission so that it can be distinguished from background noise. *Id.* at ¶ 14. For example, an IR transmission from a locator tag must be distinguished from the transmissions of a television remote control. *Id.* Validation includes the step of "identifying" a tag transmission so that it can be confirmed that the transmission is from a recognized tag within the locating system. *Id.*

REDACTED

Even if Radianse correctly construed the claims, its Motion requires that the Court adopt the allegations of Paul Tessier's Affidavit. Radianse asserts that this does not prejudice Versus because "Versus has had an adequate opportunity for discovery regarding the manner of operation of the Radianse IPS." (Rad. Br., p. 17). This assertion is astounding in light of the fact that the vast majority of Radianse's production occurred more than seven weeks after the date set for completion of document production in the Court's Amended Scheduling Order (D.I. 34). In fact, Radianse proposed that the depositions of Radianse personnel, such as Mr. Tessier[6], occur later than the depositions to be taken by Radianse, "to give yourselves time to review our docs." (Exhibit E).

Discovery is ongoing until August 23, 2005, and Radianse's nearly two month delay in

---

[6] Mr. Tesssier's deposition is currently scheduled for July 20, 2005.

document production has forced the delay of most depositions until the final weeks of discovery. These facts notwithstanding, Versus should not now be forced to address what is essentially a summary judgment motion of non-infringement.  Unlike Radianse, Versus prefers not to burden the Court with details better suited for later scheduled proceedings.

### 4. Radianse's Reliance on its Paid License and Witness Is Preposterous

REDACTED

REDACTED

---

[7]  The PTFM License states:

> Versus . . . shall have the right and power . . . to institute and prosecute or settle suits  . . . for infringement of any patent legally or beneficially owned by PTFM . . . . PTFM will give Versus such reasonable assistance and cooperation in connection therewith as Versus may reasonably request.

REDACTED

**V.      CONCLUSION**

In view of the foregoing analysis of the facts and law, Versus respectfully request that the

Court deny Radianse's consolidated motion to dismiss.

Respectfully Submitted,

DATED: July 11, 2005                                  s/ James M. Lennon
                                                                     George Pazuniak (DE #478)
                                                                     James M. Lennon (DE #4570)
                                                                     **CONNOLLY, BOVE, LODGE & HUTZ**
                                                                     1007 North Orange Street
                                                                     P.O. Box 2207
                                                                     Wilmington, DE  19899
                                                                     Telephone:  (302) 658-9141
                                                                     *Attorney for Plaintiff, Versus Technology, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2005, I electronically filed this VERSUS'S OPPOSITION TO RADIANSE'S CONSOLIDATED MOTION TO DISMISS FOR LACK OF STANDING with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following, who is also **SERVED BY HAND** on this date:

Josy W. Ingersoll (#1088)
jingersoll@ycst.com
YOUNG CONAWAY STARGATT
& TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
*Counsel for Defendant, Radianse, Inc.*

I hereby certify that on this date, I electronically mailed the documents to the following non-registered participants:

Sibley P. Reppert
spr@lahive.com
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400
*Co-Counsel for Defendant, Radianse, Inc.*

DATE: July 11, 2005            s/ James M. Lennon
                               James M. Lennon (#4570)
                               **CONNOLLY BOVE LODGE & HUTZ, LLP**
                               The Nemours Building
                               1007 North Orange Street
                               P.O. Box 2207
                               Wilmington, DE 19899
                               (302) 888-6271
404839                         *Attorney for Plaintiff, Versus Technology, Inc.*