IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **VERSUS TECHNOLOGY, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 04-1231 (SLR) |
| v. ) | |
| ) | |
| **RADIANSE, INC.,** ) | |
| ) | |
| Defendant. ) | |

**VERSUS'S ANSWER TO
RADIANSE'S CLAIM CONSTRUCTION BRIEF**

Plaintiff, Versus, Inc. ("Versus") submits this answering brief in response to Defendant Radianse, Inc.'s ("Radianse") Opening Claim Construction Brief. (D.I. 109).

**I.     INTRODUCTION**

Claim construction briefing is an opportunity to aid the Court in understanding and resolving disputed claim terms by identifying record support for each party's proposed constructions. The "Support for Proposed Construction" column in Radianse's brief fails to identify, let alone explain, the required support in the intrinsic or extrinsic record for many of the critical constructions proposed by Radianse. The "overview" of "Radianse's accused systems" is similarly unpurposed. Presumably the information on Radianse's system was submitted to show how a person of ordinary skill in the art would interpret a particular claim term. If anything, the descriptions of Radianse's system support Versus's proposed constructions. Finally, Radianse improperly relies on selective testimony on the subjective intent of certain inventors to support its claims construction. *Voice Technologies Group, Inc. v. VM Systems, Inc.,* 164 F.3d 605, 615-16 (Fed. Cir. 1999) ("[n]o inquiry as to the subjective intent of the applicant…is appropriate or even possible in the context of a patent infringement suit.").

## II. THE '314 PATENT

The primary support for Radianse's proposed constructions are generalized statements of a secondary inventor of the '314 patent, Wayne Duncan, whom did not draft the patent claims. (Deposition of Wayne Duncan ("Duncan"), 25:10-13, attached hereto as Exhibit 3). Radianse argues that, because Mr. Duncan did not disagree with its proposed constructions, they must be correct. Mr. Duncan testified after reviewing Radianse's proposed constructions for less than five minutes of a one hour deposition – and having never seen Radianse's proposed constructions previously. Absent from Radianse's citations to the Duncan deposition are Mr. Duncan explanations that he lacked experience and confidence in his ability to construe the claims.[1] Radianse also fails to note that Mr. Duncan testified that alternative constructions may also be correct. (Duncan, 37:23-38:3). Finally, Radianse fails to identify the testimony from Mr. Duncan that entirely contradicts Radianse's proposed constructions, *i.e.*, that the '314 patent could embrace a system that uses a combination of IR and RF technology.[2] (Duncan, 38:22-39:9).

### A. "light based signal"

Radianse offers two definitions for a "light based signal." The first is "a signal transmitted by means of infrared radiation." (D.I. 109, p.8). The second is simply "an infrared signal." (D.I. 109, p.10). Presumably, Radianse asserts both of these definitions with the hope that claim 1 will be

---

[1] It is surprising, to say the least, that Radianse would choose to Rely on the testimony of Mr. Duncan when Mr. Duncan testified, *inter alia*, that: he had no experience reading, drafting, reviewing or analyzing patents (Duncan, 36:16-19); he had never heard the terms "claim construction" or "claim limitation" before (Duncan, 37:11-16); and he did not feel confident that he knew the legal scope of the claims of the '314 patent (Duncan, 37:17-20).

[2] During his deposition, Mr. Duncan was asked, "If a system had all of the elements of all of the claims of that patent, but used additional technology as well, -- do you know whether that additional technology would remove the product or technology from being within the scope of that patent?" Mr. Duncan answered, "I don't think so. We could use RF the same way, encoded the same way as the IR and do the same thing for RF as we do for IR." (Duncan, 38:22-39:9).

limited to 'infrared and only infrared.'[3] Such a construction is contrary to the law, plain meaning, the art, inventor testimony and Radianse's own use of the term. First, as explained in Versus's opening brief, Radianse's construction is contrary to the doctrine of claim differentiation because claim 2, which depends from claim 1, is "directed to the system of claim 1, wherein said light based signals are infra-red radiation based signal [sic]." (D.I. 112, p.3). Second, as explained in Versus's opening brief, Radianse ignores the word "based" in this claim term, which indicates that the signal may include other "constituents" in addition to the light component. (D.I. 112, p. 4). Third, as explained in Versus's opening brief, Radianse conceded in prior arguments to this Court that, even where a patent only describes a light component (*e.g.*, IR), non-light components (*e.g.*, RF) may be inherently included as well. (D.I. 112, pp.13-14) (D.I. 79, 13-16).

Finally, people of ordinary skill in the art of wireless indoor locating, including Radianse's own technicians, identify and refer to multimedia transmitters by the light component even where those transmitters radiate non-light components as well. Radianse itself introduces, *inter alia*, an affidavit and supporting information in the appendix to its opening brief which detail the operation and function of its locating system. (D.I. 110). Because these documents were filed by Radianse in support of its proposed claim constructions, Radianse must concede that they bear on Versus's proposed constructions as well.

Notably, a term identified in support of the affidavit of Paul Tessier, "LightPak" (sometimes spelled "LitePak"), indicates that a "light based signal" may actually refer to a signal that transmits more than just light. (D.I. 110, Ex. I, p.6). In addition, the term "LightPak" is

---

[3] Radianse does not even recognize that "visible light" could be within the scope of a "light based signal" although Radianse does concede this with respect to its proposed construction for "line-of-sight signal" in the '139 patent. (D.I. 109, p.35).

used in countless Radianse documents to describe Radianse's combined IR and RF transmitter.[4] These documents are relevant to what a person of ordinary skill in the art of wireless indoor tracking would understand a "*light* based signal" to mean.

By naming its transmitter "LightPak," Radianse demonstrates that it is acceptable in the industry to refer only to the light component to describe a device that uses multiple forms of electromagnetic energy.[5]

People of ordinary skill in the art also sometimes refer to a combined light (*e.g.*, IR) and non-light (*e.g.*, RF) transmission emanating from a combined light/non-light (*e.g.*, IR/RF) transmitter as *one single signal*, as demonstrated by documents and testimony from Radianse's chief software engineer and 30(b)(6) deposition designee for technical topics, Kim Donovan. In her deposition, Ms. Donovan was asked, "[D]o you sometimes refer to the IR and RF together as *one transmission*?" Her answer was "Yeah. You can." (Ex. 2, Excerpt of Donovan Dep., 64:23-65:2).[6]

---

[4] Radianse documents showing the use of the name "Lightpak" to refer to a combined IR and RF transmitter include: an Installation and User Guide (R010829-32), a product testing report to the FCC (R010833-38), software code (e.g., R011585-12036), product test scripts (e.g., R010751-98), its original website (VER001400-09), promotional brochures (e.g., R013717-26), engineering design drawings for its transmitters (e.g., R018700-03; R018721-22; R018793-94), recent invoices (e.g., R018998-01), business plans (e.g., R019683-704), its private placement memoranda (e.g., R019711-741), specification documentation (e.g., R011427-68; 11492-513), and Radianse's grant application to the NIH (R028147-86). (Highlighted excerpts from these documents are included in Exhibit 1 hereto).

[5] This name also demonstrates that the IR light component of a combined IR/RF transmitter is a sufficiently fundamental ingredient to a combination IR/RF transmission scheme to warrant naming the transmitter after the IR light component.

[6] This testimony is supported by various descriptions in Radianse's technical documents, including, for example, the Software Architecture Document authored by Ms. Donovan, which refers to the combined IR and RF transmission from a transmitter as "a signal" and "an IR and RF transmission". (Ex. 2, R011280). ("Q: And then that next sentence, "when the security system is activated A signal is transmitted immediately"? A: Uh-huh. Q: That "A signal" refers to the combination IR and RF transmission; is that correct? A: Yes." Donovan Dep., 65:3-9).

Radianse's technical documentation and testimony thus demonstrate that people of ordinary skill in the art would not construe "a light based signals" so narrowly that it could only mean infrared signals.

### B.   "representative of"

Radianse offers no explanation or support for its interpretation of the term "representative of."  Radianse's proposed construction, "*containing*," is clearly a narrower construction of "*representative of*" than plain meaning would otherwise suggest.  Rather than offering record support for such a construction, Radianse asks the Court to import limitations from the specification regarding the use of distinctive signals by infrared radiation. For the reasons explained above (regarding why claim scope is broader than just IR only) and the reasons explained in Versus's opening brief (D.I. 112, p.4-6), "representative of" should not be narrowed to Radianse's proposed construction.

### C.   35 U.S.C. § 112, ¶ 6

For the reasons explained in Versus's opening brief, claims 1 and 9 of the '314 patent are not governed by 35 U.S.C. § 112, ¶ 6.  (D.I. 112, p.6-12).  Additionally, Radianse fails to offer any support for its proposed construction of the alleged "step-plus-function" steps of *converting*, *recording* and *determining* in claim 9.  Nor does Radianse explain, for either claim, why the components of the allegedly corresponding structures identified by Radianse are all necessary to achieve the particular functions recited by Radianse.

## III.   THE '195 PATENT

### A.   "infrared transmitters"

Radianse attempts to narrow the entire construction of the '195 patent such that it may only embrace infrared technology.  Radianse argues that term "infrared transmitters" must be transmitters that can only transmit "using" or "in the form of" infrared radiation.  Radianse also seeks to narrow

5

the constructions with respect to the term "code"[7] coming from an infrared transmitter, so that it can only be in the form of infrared. As explained in Verus's opening brief, Radianse gave a contrary, broader construction to the patent and these specific terms when arguing the meaning of the "Dual Use" provision of the license under which Versus asserts the '195 patent ("the PTFM License"). (D.I. 112, p.13). In its brief, Radianse asserted that "Dual Use" applications under the PTFM License (including the '195 patent), inherently cover applications where the identifying code is transmitted by IR or RF, or a combination of both. (D.I. 79, p.13-16). In fact, Radianse claims to be presently licensed in the non-IR-Only field the '195 patent. (D.I. 79, Ex. 3).

Radianse reliance on the testimony of an inventor to support its construction is likewise unavailing. In this instance, the testimony of Alan C. Heller is not only uninformative, but has suspect credibility. Mr. Heller granted an exclusive license to Versus for the '195 and '791 patents, and that exclusive license is still in effect. Despite this fact, Mr. Heller purportedly grants to Radianse, after this litigation began and knowing of the litigation, a non-exclusive license under the same patents. Mr. Heller was in essence paid by Radianse to construe the claims in their favor. This is nothing more than "creative reconstruction of an invention by an interested person[]." *Markman*, 52 F.3d at 985.

Radianse's construction does not consider the fact that the '195 patent specification equates the term "infrared transmitters" with the generic term "TAGs" from the '791 patent. ('195 patent, col. 1, lines 15-18). Notably, the word "infrared" is never even used in the '791 patent.

Radianse's constructions are also in want of precision. In one instance, Radianse asserts that "infrared transmitters that transmit identifying codes are transmitters that transmit codes *using* infrared." (D.I. 109, p.17). In another instance, Radianse asserts that "transmitted identifying codes

---

[7] Radianse proposes a similarly narrow construction for the term "unique identifying codes from infrared transmitters" in claim 13.

6

are identifying codes transmitted *by means of* infrared signals." The differences are probably unintentional, but nonetheless suggest a lack of rigor in Radianse's analysis of the claim terms and its proposed constructions. In any event, to the extent that Radianse intends for these constructions to suggest that the code must be transmitted only by means of infrared, Radianse's proposed constructions are contrary to its prior positions and the intrinsic record.

Finally, as demonstrated by Radianse's "LightPak" designation, which transmits both IR and RF radiation, a wireless transmitter badge may be named for, or refer to, one electromagnetic component even though the transmitter radiates more than one type of electromagnetic wave.

For the reasons explained above and those stated in Versus's opening brief (D.I. 112, p.12-14), "infrared transmitters" should not be given the narrow construction proposed by Radianse.

### B.     *"variable based protocol"*

Radianse uses over one hundred words to define this term, but fails to explain how these words define a "variable based protocol" or what constitutes the record support for its proposed construction.

### C.     *"object identifier variables"*

Radianse fails to explain why variable "length" should be incorporated into the definition of the "object identifier variables." While there is one reference to "variable-length data" ('195 patent, 9:55) – which Radianse does not even cite – Radianse offers no explanation for why this specific reference should generally define this term.

### D.     *"infrared transmitters"*

For the same reasons articulated above with respect to the term "infrared transmitters," the term "infrared sensors" should not be given a narrow construction such that the sensors must receive only infrared signals.

7

### E.    *35 U.S.C. § 112, ¶ 6*

For the reasons explained in Versus's opening brief, claim 1 of the '195 patent is not governed by 35 U.S.C. § 112, ¶ 6. (D.I. 112, p.15). Additionally, Radianse does not explain why the components of the allegedly corresponding structures identified by Radianse are all necessary to achieve the particular functions recited by Radianse.

## IV.   THE '791 PATENT

### A.    *"assigned area"*

Radianse inserts into its definitions for "assigned area" and "area detection" the requirement that the only one receiver may detect any given signal. While the prosecution history reveals that the low resolution embodiments embraced by the asserted claims are generally directed to spacing receivers by their detection range and preventing overlap, there is no support in the record for the proposition that any overlap between receivers will remove a system from the scope of the claims. The following statement from the specification quoted by Radianse demonstrates this point:

> If ***all*** receivers received transmissions from the same broad area, for example (as could occur in certain types of radio-location systems), the limitation would not be met.

(D.I. 110, Ex. F, at 8). Essentially, Radianse argues that the above reference to "*all*" by the applicant should be replaced by "*more than one*." (D.I. 109, p. 27).

### B.    *"responsive"*

Contrary to Radianse's assertions, the term "responsive to the receipt of a TAG transmission" found in claims 39, 48 and 66 of the '791 patent does not need construction. If a construction is made, however, it should not be so limited as to exclude responses sent on a scheduled interval rather than immediately. In essence Radianse would like a construction where the responsive nature of the communication is based on the immediacy of the response rather than on the content of the response. Such a construction is nowhere supported by the intrinsic record and stands contrary to the plain

8

meaning of the word "response." An answering letter sent through the U.S. Postal Service cannot be deemed **non- responsive** merely because the U.S. Postal service picks up and delivers letters on a schedule. The detection packet of the '791 packet, like an answering letter, is deemed "responsive" based on the *content* of the message sent from the receiver or controller. The content of the packet informs the system as to whether a valid TAG transmission was received. Such a message is responsive regardless of whether the message is *immediately* generated upon the receipt of a TAG transmission.[8]

## V.  THE '139 PATENT

### A.  *"including"*

Radianse offers no support, intrinsic or extrinsic, for why "including" should be narrowed to mean "containing," and Radians ignores the fact that specification appears to equate including with associating, as explained in Versus's opening brief. (D.I. 112, p.18-21)

### B.  *"substantially simultaneously"*

Radianse and Mr. Heller both misconstrue "substantially simultaneously" to mean "at the same time."[9] First, as explained in Versus's opening brief, the prosecution history reveals that this term was added merely to overcome a rejection as to art where a different transmission media is used depending on whether the user was on-sight or off-sight. (D.I. 112, p.21-22; Ex. E, p.VER009201). Second, the proposed definition fails to take into consideration the fact that the applicant equates

---

[8] The use of the term "responsive to" is similar to the use of the term "response to" used elsewhere in the '791 patent. For example, a limitation in claim 55 states as follows:
>…enabling the transmit circuitry to transmit information periodically at second selected intervals in response to detecting lack of motion….

('791 patent, col. 69, lines 45-47). The response here is the action of using a second (slower) transmission interval. The term (response) is therefore directed to what is done (slowing down) rather than when it is done (a periodic ongoing activity).

[9] This proposed construction fails to recognize the plain meaning or given any recognition to the first word of this term, "substantially," which qualifies simultaneously such that "substantially simultaneously" cannot mean the same thing as "simultaneously."

9

signals transmitted "substantially simultaneous" with the modulation of "different signals simultaneously or **staggered**." Id. (*emphasis added*).

### C.    "in response to"

Similar to its proposed construction of the term "responsive" in the '791 patent, Radianse proposes a definition ("triggered by") that implies an immediacy requirement. As explained above, it is the *content* rather than the *timing* of a communication that makes it a "response." There is no support for a construction of "in response to" that does not cover a response sent on a scheduled interval.

### VI.    CONCLUSION

Versus respectfully requests that the Court construe the asserted claims of the Versus Patents consistently with the definitions proffered by Versus.

                                                                          **CONNOLLY BOVE LODGE & HUTZ LLP**

                                                                          /s/ James M. Lennon
                                                                          George Pazuniak (DE #478)
                                                                          James M. Lennon (DE #4570)
                                                                          The Nemours Building
                                                                          1007 North Orange Street
                                                                          Wilmington, DE 19801
                                                                          (302) 658-9149

Dated:  November 18, 2005                           *Attorneys for Plaintiff*
                                                                         *Versus Technology, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2005, I electronically filed the foregoing **VERSUS'S ANSWER TO RADIANSE'S CLAIM CONSTRUCTION BRIEF** with the Clerk of the Court using CM/ECF, and served copies of the same, on this date, on the following individuals in the manner indicated:

**By Hand, CM/ECF Notification and E-mail:**
Josy W. Ingersoll (#1088)
jingersoll@ycst.com
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
*Counsel for Defendant, Radianse, Inc.*

**By E-mail:**
Sibley P. Reppert
spr@lahive.com
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400
*Co-Counsel for Defendant, Radianse, Inc.*

Dated: November 18, 2005               /s/ James M. Lennon
                                       James M. Lennon (DE #4570)

428960_1