## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

**VERSUS TECHNOLOGY, INC.,**          )
                                      )
       **Plaintiff,**          )
                                      )
    **v.**                            )   **Civil Action No.  04-1231 (SLR)**
                                      )
**RADIANSE, INC.,**                   )
                                      )
       **Defendant.**          )
_____)


## VERSUS'S BRIEF IN OPPOSITION TO
## RADIANSE'S MOTION FOR SUMMARY JUDGMENT


CONNOLLY BOVE LODGE & HUTZ LLP

George Pazuniak (DE #478)
James M. Lennon (DE #4570)
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
(302) 658-9149

Dated: December 16, 2005          *Attorneys for Plaintiff*
                                  *Versus Technology, Inc.*

Table of Contents

Page

I.      NATURE AND STAGE OF THE PROCEEDINGS.......................................................1

II.     SUMMARY OF ARGUMENT ................................................................................1

III.    STATEMENT OF DISPUTED FACTS....................................................................3

IV.     ARGUMENT .........................................................................................................5

        A.      RELEVANT LEGAL STANDARS .........................................................5

                1.      Competent Evidence for Summary Judgment ...........................5

                2.      Corroboration Required for Assertions of Prior Invention........5

                3.      Means-Plus-Function Claims ....................................................6

        B.      RADIANSE FAILS TO MEET ITS BURDEN FOR SUMMARY
                JUDGMENT REGARDING THE VALIDITY OF THE '195 AND '791
                PATENTS ...................................................................................................7

                1.      The '791 Patent .........................................................................8

                2.      The '195 Patent .........................................................................9

        C.      RADIANSE FAILS TO MEET ITS BURDEN FOR SUMMARY
                JUDGMENT OF NON-INFRINGEMENT .......................................... 11

                1.      The '314 Patent ....................................................................... 11

                2.      The '195 Patent ....................................................................... 15

                3.      The '791 Patent ....................................................................... 17

                4.      The '139 Patent ....................................................................... 19

V.      CONCLUSION........................................................................................................ 19

Table of Authorities

Page

CASES

Adickes v. S.H. Kress & Co.,
    398 U.S. 144 (1970)) ----------------------------------------------------------------- 5

Al-Site Corp. v. VSI International Inc.,
    174 F.3d 1308 (Fed. Cir. 1999) ---------------------------------------------------- 6

CIVIX-DDI, LLC v. Microsoft Corp.,
    84 F. Supp. 2d 1132 (D. Colo. 2000)-------------------------------------------- 7

Cole v. Kimberly-Clark Corp.,
    102 F.3d 524 (Fed. Cir. 1996) ----------------------------------------------------- 6

Envirco Corp. v. Clestra Cleanroom, Inc.,
    209 F.3d 1360 (Fed. Cir. 2000) --------------------------------------------------- 6

Fowle v. C & C Cola, a Div. of ITT-Continental Baking Co., 868 F.2d 59,
    (3rd Cir. 1989)------------------------------------------------------------------------- 5

Gemstar-TV Guide Intern., Inc. v. Int'l Trade Com'n,
    383 F.3d 1352 (Fed. Cir. 2004)---------------------------------------------------- 7

Golight, Inc. v. Wal-Mart Stores, Inc.,
    355 F.3d 1327 (Fed. Cir. 2004)---------------------------------------------------- 7

Greenberg v. Ethicon Endo-Surgery, Inc.,
    91 F.3d 1580 (Fed. Cir. 1996) ----------------------------------------------------- 6

Invitrogen Corp. v. Clontech Laboratories, Inc.,
    429 F.3d 1052 (Fed. Cir. 2005) ------------------------------------------------- 5, 9

Medico v. Time, Inc., 643 F.2d 134, 135
    (3rd Cir. 1981)------------------------------------------------------------------------ 8

N.I. Petroleum Ventures Corp. v. GLeS, Inc., 333 F.Supp.2d 251, 262, n. 21
    (D. Del. 2004) ------------------------------------------------------------------------ 5

O.I. Corp. v. Tekmar Co., Inc.,
    115 F.3d 1576 (Fed. Cir. 1997) --------------------------------------------------- 7

Phillips v. AWH Corp., 415 F.3d 1303, 1311 ------------------------------------------ 6

Seal-Flex, Inc. v. Athletic Track and Court Construction,
    172 F.3d 836 (Fed. Cir. 1999) ------------------------------------------------ 6, 7, 12

Wenger Mfg., Inc. v. Coating Machinery Systems, Inc.,
    239 F.3d 1225 (Fed. Cir. 2001)---------------------------------------------------- 7

STATUTES

35 U.S.C. § 112 ¶ 6 ------------------------------------------------------------------------ 6, 7

## I.    NATURE AND STAGE OF THE PROCEEDINGS.

This case is an action for patent infringement brought by Plaintiff Versus Technology, Inc. ("Versus") against Defendant Radianse Inc. ("Radianse"). Versus asserts that Radianse's indoor positioning system (IPS) products infringe four patents owned or exclusively licensed to Versus. The Versus patents in suit are U.S Patent Nos. 5,027,314 ("the '314 patent"); 5,572,195 ("the '195 patent"); 6,154,139 ("the '139 patent"); and Re. 36,791 ("the '791 patent") (collectively "the Versus patents"). The Versus patents are generally directed to indoor asset and personnel location and tracking systems and methods using wireless transmitters. Radianse contends that each of the Versus patents are invalid and not infringed.

Plaintiff Versus Technology, Inc. ("Versus"), submits this brief in opposition to the Motion for Summary Judgment ("Motion") of Non-Infringement and Invalidity filed by Defendant Radianse Inc. ("Radianse"). (D.I. 117). Many of the issues raised in Radianse's Motion have previously been briefed by the parties in their respective opening and answering claim construction briefs. (D.I. 109, 111, 112, 115 and 116). For the reasons set forth below, Versus respectfully requests that the Court deny Radianse's Motion.

## II.    SUMMARY OF ARGUMENT

Radianse's non-infringement theories are all predicated on the Court's adoption of its proposed claim constructions. These issues can summarized as follows: (1) whether certain claims require the transmission of a unique identification code within a particular media type; (2) whether, and how, 35 U.S.C. § 112, ¶ 6 should be applied to certain claims; (3) whether the asserted claims of the '791 preclude any overlap in the detection area of a receiver and whether Radianse receivers are configured to avoid such overlap; (4) whether a "responsive" communication precludes a communication that is sent on a scheduled interval.

Radianse's primary theory of non-infringement hinges, almost entirely, on the Court

reading a limitation into each of the asserted claims that a unique identification code must be transmitted in the form of infrared light.  However, as pointed out in Versus' briefing on claim construction, this requirement is lacking in all of the asserted claims.  Additionally, the Radianse IPS so combines the radio frequency ("RF") and infrared ("IR") components of its transmission scheme that this issue (*i.e.*, whether a unique identification code is transmitted in the form of the RF component or the IR component) is irrelevant.  Even if this requirement were found, Radianse's combined RF plus IR signal transmission performs that same function, in the same way, to achieve the same result as the signal transmission referenced in each of the asserted claims.  Thus, when the claims are properly construed, Radianse's first theory of non-infringement fails and its Motion should be denied.

In its second theory of non-infringement, Radianse misapplies 35 U.S.C. § 112, ¶ 6 to certain of the asserted claims, particularly where there is sufficient corresponding structure within each claim for the functional language put at issue by Radianse.  Even if this provision applied, Radianse fails to identify the appropriate corresponding structure necessary to carry out each claimed function.  Therefore, this argument also fails and Radianse's Motion should be denied.

Radianse next argues that, under the '791 patent, any overlap in the detection area of a receiver is outside the scope of the asserted claims.  Radianse's claim construction theory is fatally flawed.  Nonetheless, Radianse does configure its receivers to minimize or eliminate overlapping signal reporting, particularly with respect to the placement of its receiver assemblies to avoid duplicative IR signal reporting.

Finally, Radianse asserts that its receivers are not "responsive to the receipt of a tag transmission," as required by the asserted claim of the '791 patent.  This theory is predicated on

the unsupportable presumption that the term "responsive" must mean "immediately responsive." However, even if there were an immediacy component to this term, the detection of signals and the generating of signal detection packets occur instantaneously in the processors within the Radianse receiver assemblies. As such, Radianse's proposed claim construction should be rejected and, therefore, its motion for non-infringement must fail.

With respect to Radianse's invalidity arguments, which pertain to two of the four patents in suit, these arguments must fail as a matter of law. Radianse's arguments are without credible or sufficient evidentiary support under Third Circuit law. Even if Radianse's assertions were deemed competent to support its motion, they remain deficient because: (1) as to the '791 patent, Radianse fails to identify at least one critical limitation missing from the Levinson patent and fails to demonstrate that the Welch patent is prior art; (2) as to the '195 patent, Radianse fails to identify at least one critical limitation missing from the Greenspun, Hopper, Conrad, and Chaco patents; and (3) Radianse's obviousness assertions rely on unauthenticated and unverified documents that also fail to suggest a motivation to combine any of the allegedly prior art references.

For all of these reasons, Radianse's Motion should be denied in its entirety.

## III. STATEMENT OF DISPUTED FACTS.

In the interest of brevity, Versus does not address each of Radianse's [65?] statement of alleged facts in the body of this brief. For the Court's reference, a point by point response to each of Radianse' numbered statements of fact is included in as Exhibit A of this brief. However, by way of example, Versus provides a rebuttal to at least the following facts which Radianse asserts "there is no genuine issue":

- Versus disputes Radianse's assertion that its IR signature does not constitute an "identification code." Radianse's IR signature allows the Radianse system to

distinguish it from infrared signals transmitted from sources other than Radianse ID tags.  (D.I. 123, EX. A, Statement of Disputed Facts ("S.F.") ¶ 3).

- Versus disputes Radianse's assertion that the IR transmissions from a Radianse ID tag does not include the unique identification code sent by its corresponding RF transmission.  Because of the precise temporal associations imposed by the Radianse IPS between its IR and RF signals, each IR transmission from a Radianse ID tag is understood to include the corresponding RF transmission's unique ID.  (D.I. 123, EX. A, S.F. ¶ 3).

- Versus disputes Radianse's assertion that it's IPS does not perform the same function of transmitting a unique identification code in the same way to achieve the same result as the relevant limitations of the Versus patents.  The Radianse ID tag performs the same function (transmitting a signal representative of an identifying code unique to the transmitter), in the same way (by a single ID tag transmitter), to achieve the same result (detection of the unique signal by one or more receivers).  (D.I. 123, EX. A, S.F. ¶ 4).

- Versus disputes Radianse's assertion that its receivers are deployed with overlapping areas of signal reception.  There is generally no overlap in the IR reception range for the Radianse IR sensors.  (D.I. 123, EX. A, S.F. ¶ 16).  Additionally, Radianse receiver assemblies may be so "tuned," and the Radianse location resolver so programmed, as to allow for the reporting of an RF signal by only one receiver.  *Id.*

- Versus disputes Radianse's assertion that its receivers do not provide output resulting from or triggered by the receipt of a tag transmission.  (D.I. 123, EX. A, S.F. ¶ 19).

- Versus disputes Radianse's assertion that that its does not have or use: (1) an external device controller; (2) converters; (3) a validation circuit; (4) detection packets; and/or (5) limited and extended area receivers.  (D.I. 123, EX. A, S.F. ¶¶ 26- 28, 31-34).

## IV.    ARGUMENT

### A.    RELEVANT LEGAL STANDARS

#### 1.    Competent Evidence for Summary Judgment

Fed. R. Civ. P. 56(e) articulates the form of affidavits that may be considered in support or opposition to a motion for summary judgment.  The rule provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. **Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith**….

(Emphasis added).

Under the law of the Third Circuit, unsworn expert reports do not constitute competent evidence under Rule 56(e) and, therefore, are not properly considered in connection with a motion for summary judgment.  *Fowle v. C & C Cola, a Div. of ITT-Continental Baking Co.*, 868 F.2d 59, (3rd Cir. 1989) (where "[t]he substance of [the] report was not sworn to by the alleged expert…the purported expert's report is not competent to be considered on a motion for summary judgment.") (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)).  Furthermore, this Court has held that statements by individuals who did not testify, have not submitted sworn affidavits or have not been deposed, are inadmissible hearsay.  *N.I. Petroleum Ventures Corp. v. GLeS, Inc.*, 333 F. Supp. 2d 251, 262, n.21 (D. Del. 2004).

#### 2.    Corroboration Required for Assertions of Prior Invention

Any theory of patent invalidity based on an alleged prior invention by another under 35 U.S.C. §102(g) requires objective corroboration of the alleged prior inventor's assertions. *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052 (Fed. Cir. 2005) ("[B]ecause of the danger in post-hoc rationales by an inventor claiming priority, the court requires objective evidence to corroborate an inventor's testimony concerning his understanding of the invention.");

s*ee also, In re Jolley*, 308 F.3d 1317, 1321 (DATE) ("Because conception is a mental act, 'it must be proven by evidence showing what the inventor has disclosed to others and what that disclosure means to one of ordinary skill in the art.'") (*citations omitted*).

### 3.    Means-Plus-Function Claims

"Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311 (Fed. Cir. 2005) (*holding* "the term "baffles" is not means-plus-function language that invokes 35 U.S.C. § 112, paragraph 6."). Under Federal Circuit precedent regarding means-plus-function claims, it is well established that the mere recitation of a mechanism "in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6)." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) ("detent mechanism" defined in functional terms was not intended to invoke 35 U.S.C. § 112 ¶ 6). 35 U.S.C. § 112 ¶ 6 "does not apply when the claim limitation itself recites sufficient acts for performing the specified function." *Seal-Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 849 (Fed. Cir. 1999). [1]

Under 35 U.S.C. § 112 ¶ 6, proper construction requires the Court to "identify the claimed function and then to determine the structure in the specification that corresponds to that function." *Frank's Casing*, 389 F.3d at 1376 (Fed. Cir. 2004); *Gemstar-TV Guide Intern., Inc. v. Int'l Trade*

---

[1] *See also, Envirco Corp. v. Clestra Cleanroom*, Inc., 209 F.3d 1360 (Fed. Cir. 2000) (holding "second baffle means" does not invoke 35 U.S.C. § 112 ¶ 6 because the word "baffle" itself imparts structure and the claim further recites the structure of the baffle); *Al-Site Corp. v. VSI International Inc.*, 174 F.3d 1308, 1318 (Fed. Cir. 1999) (while the claim elements "eyeglass hanger member" and "eyeglass contacting member" include a function, these claim elements were not held to invoke 35 U.S.C. § 112 ¶ 6 because the claims themselves contain sufficient structural limitations for performing those functions); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996) ("perforation means for tearing" held not to invoke 35 U.S.C. § 112 ¶ 6 because the claim already describes the structure supporting the tearing function (*i.e.*, the perforation)).

*Com'n*, 383 F.3d 1352, 1361 (Fed. Cir. 2004) ("The written description must be examined to determine the structure that corresponds to and performs that function."). "[A] court may not import functional limitations that are not recited in the claim, or structural limitations from the written description that are unnecessary to perform the claimed function." *Wenger Mfg., Inc. v. Coating Machinery Systems, Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001); *see also, Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1334 (Fed. Cir. 2004).

The same principles regarding means-plus-function analysis apply to claims alleged to be written in "step-plus-function" language. *O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997) ("[S]ection 112, ¶ 6, is implicated only when means plus function without definite structure are present, and that is similarly true with respect to steps, that the paragraph is implicated only when steps plus function without acts are present."). It has also been suggested by the Federal Circuit that "step-plus-function" construction is presumptively not invoked where the claim uses the term "step of" rather than "step for". *Seal-Flex*, 172 F.3d at 849-50 (Rader, J. concurring) ("the phrase "step for" in a method claim raises a presumption that § 112, ¶ 6 applies. This presumption gives legal effect to the commonly understood meanings of "of" - introducing specific materials, structure or acts - and "for" - introducing a function… the term "step" alone and the phrase "steps of" tend to show that § 112, ¶ 6 does not govern that limitation."); *see also, CIVIX-DDI, LLC v. Microsoft Corp.*, 84 F. Supp. 2d 1132, 1149 (D. Colo. 2000).

## B. RADIANSE FAILS TO MEET ITS BURDEN FOR SUMMARY JUDGMENT REGARDING THE VALIDITY OF THE '195 AND '791 PATENTS

Radianse's invalidity assertions are supported only by the unsworn, unauthenticated and uncorroborated statements provided in the report of its expert, Nathaniel M. Sims. Under the law of the Third Circuit, where "[t]he substance of [the] report was not sworn to by the alleged expert…the purported expert's report is not competent to be considered on a motion for summary

judgment." *Fowle*, 868 F.2d at 59. Because Radianse offers no competent evidence to support its motion for summary judgment on invalidity, Radianse's motion is insufficient as a matter of law, and should be denied on this basis alone.

Additionally, the two non-public documents relied upon and attached to Dr. Sim's expert report were never produced during discovery and lack the authentication required under Rule 56(e). (D.I. 123, EX. A, S.F. ¶¶ 52, 53.). The documents are therefore insufficient to support Radianse's motion regarding invalidity. *Medico v. Time, Inc.*, 643 F.2d 134, 135 (3rd Cir. 1981) (denying summary judgment where movant "the affidavit [movant] had advanced to authenticate the documents was not based on the personal knowledge of the affiant, as required by Rule 56(e).")

### 1.    The '791 Patent

Even if Radianse's "evidence" regarding the validity of the '791 patent were competent to be considered on its motion, Dr. Sims' conclusions regarding anticipation are wrong. Contrary to Dr. Sims' opinion, the Levinson patent does not anticipate every element of claims 25 and 48 of the '791 patent. For example, Levinson does not disclose a "data communications controller…for providing a corresponding area detection packet" as claimed in claim 25. (D.I. 123, EX. A, S.F. ¶ 39). Additionally, Levinson does not disclose an object location system that transmits at "selected intervals," as required by the asserted claims. Rather, the system disclosed in Levinson requires a separate "user activation" for each and every transmission of a signal from the user's transmitter. *Id.* Finally, neither Radianse nor Dr. Sims suggest that the LAN limitation of claim 66 is anywhere disclosed by Levinson.

Dr. Sims also improperly relies solely on his memory regarding of his own research and alleged inventions in the field of indoor positioning technologies, which he claims to have

developed prior to the '791 patent in his uncorroborated, unsworn, unverified, and unauthenticated expert report. (D.I. 123, EX. A, S.F. ¶ 40). Without corroboration, the earliest possible priority date for Dr. Sims' work is the August 20, 1992 filing date of the Welch patent (U.S. Patent Number 5,319,363) of which Dr. Sims is a named co-inventor. (D.I. 123, EX. A, S.F. ¶ 41). *Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052, (Fed. Cir. 2005) ("[B]ecause of the danger in post-hoc rationales by an inventor claiming priority, the court requires objective evidence to corroborate an inventor's testimony concerning his understanding of the invention."). Because the '791 patent predates the Welch patent, Welch cannot anticipate any element or claim of the '791 patent. (D.I. 123, EX. A, S.F. ¶ 41).

For these reasons, Radianse's motion for summary judgment of invalidity as to claims 39 and 48 and 66 of the '791 patent should be denied.

### 2.    The '195 Patent

Similarly, Dr. Sims' conclusions regarding anticipation and obviousness are incorrect. First, Dr. Sims is wrong to suggest that SNMP is in any way relevant to the construction of the asserted claims of the '195 patent or the application of the Radianse IPS thereto. (D.I. 123, EX. A, S.F. ¶ 43). Dr. Sims is also wrong to assert that either the Greenspun, Hopper, Conrad or Chaco patents anticipate every element of claims 1 and 13 of the '195 patent. For example, none of these patents disclose an object location and tracking system using a variable based protocol that implements object identifier variables. (D.I. 123, EX. A, S.F. ¶¶ 45, 47, 49 and 50). In fact, Conrad was considered by the U.S. Patent Office during the prosecution of the '195 patent and allowed after the examiner removed a rejection following the applicant's successful argument that "a variable based protocol that implements object identifier variables" was ***not*** inherent in Conrad. (D.I. 123, EX. A, S.F. ¶ 49).

Dr. Sims' obviousness conclusions are likewise unavailing. Dr. Sims relies on

unauthenticated and unverified documents to support his obviousness theory regarding the '195 patent which at least creates an issue of fact for trial. (D.I. 123, EX. A, S.F. ¶¶ 52-53). In particular, Dr. Sims relies on an unauthenticated document marked draft that was purportedly generated by the inventor's company, PTFM. Notably, neither Radianse nor Dr. Sims allege that this reference discloses the use of variable based protocol that implements object identifier variables. (D.I. 123, EX. A, S.F. ¶ 52). In addition, Dr. Sims relies on an unauthenticated and unproduced document that only discloses an "Access/Hub" and provides no suggestion as to whether or how this device could be used with an object location and tracking system. (D.I. 123, EX. A, S.F. ¶ 53). Even if the "Access/Hub" document inherently disclosed the use of a variable based protocol that implements object identifier variables, there is no suggestion or motivation in the "Access/Hub" document to combine such a protocol with the tracking system disclosed in the PTFM draft document. (*Id*).

Finally, even if SNMP were in any way relevant to the asserted claims of the '195 patent and even if Dr. Sims' earlier work alleged to be disclosed in the Welch patent could be relied upon to demonstrate anticipation or obviousness, the Welch patent does not disclose the use of the standard SNMP networking protocol that implements object identifier variables. (D.I. 123, EX. A, S.F. ¶ 56). Instead, the Welch patent discloses that "[t]he operation of repeater 14 is managed by a repeater CPU (central processing unit) 15 which implements network supervisory functions (NSF) 17, including, for example, simple network management protocol (SNMP) capabilities." *Id*. Welch does not disclose the use of such a protocol by the "links" or "transceivers" (receivers/sensors) as they communicate to their respective "multiport repeaters" (network) in the disclosed system, as is claimed in the '195 patent. *Id*. In addition, Welch provides no suggestion or motivation to combine the knowledge of *infrared* tracking systems

with the disclosures in the Welch patent.  (*Id*).

For these reasons, Radianse's motion for summary judgment of invalidity as to claims 1, 13 and 18 of the '195 patent should be denied.[2]

## C.  RADIANSE FAILS TO MEET ITS BURDEN FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Under the legal standards cited above, Radianse's motion for summary judgment of non-infringement should be denied, because Radianse has failed to meet its burden.  First, Radianse fails to demonstrate that no genuine issue of material fact exists as to whether the Radianse IPS infringes the asserted claims, literally or under the doctrine of equivalents.  Second, Radianse fails to demonstrate that no genuine issue of material fact exists as to whether the asserted claims of the '791 and '195 patents are invalid by clear and convincing evidence.

### 1.    The '314 Patent

Radianse's theory of non-infringement hinges on the application of 35 U.S.C. § 112, ¶ 6, to claims 1 and 9 of the '314 patent and related matters of claim construction.  These arguments are the subject of the parties' claim construction briefs.  (D.I. 109, 112, 115 and 116).

Claim 1 of the '314 patent does not contain "means plus function" limitations.  As explained in Versus's opening claim construction brief, claim 1 of the '314 patent recites sufficient structure to avoid the application of 35 U.S.C. § 112, ¶ 6.  (D.I. 112, pp. 6-11).  For example, the "transmission means" of claim 1 is preceded and followed in the claim by numerous references to a "transmitter."  The recitation of this transmitter structure is sufficient to remove any "means-plus-function" presumption for this limitation.[3]  Similarly, the "processor

---

[2] Notably, neither Radianse nor Dr. Sims address claim 18 in their validity analysis of the '195 patent.
[3] *See, e.g., Globespanvirata, Inc. v. Texas Instrument, Inc.*, 2005 WL 984346, *13 (D.N.J. April 7, 2005) ("The Court concludes that "transmitter means" and "receiver means" recite sufficient structure and therefore are not governed by § 112, ¶ 6. The presumption arises that § 112, ¶ 6 is applicable because the terms employ the word "means." However, the presumption is rebutted

means" of claim 1 relates sufficient structure -- particularly to one of ordinary skill in the art -- to remove any "means-plus-function" presumption.  (D.I. 123, EX. A, S.F. ¶ 20).  Further, as explained in Versus's Opening Claim Construction Brief, the allegedly "corresponding" structures identified by Radianse do not "correspond" and include far more structure than necessary to achieve the claimed functions.  (D.I. 112, pp. 7-8, 11; D.I. 123, EX. A, S.F. ¶ 20).

Radianse also asserts that claim 9 of the '314 patent includes "step-plus-function" limitations.  This argument is equally unavailing.  First, the statute should be presumed inapplicable because the claim recites "steps of" rather than "steps for."  *Seal-Flex*, 172 F.3d at 849-50.  Second, the claim itself recites the corresponding acts of "converting," "recording," and "determining" that would otherwise be sought from the specification.  *O.I. Corp.*, 115 F.3d at 1583. Even if the "structures" and "acts" proposed by Radianse were read into these claims, Radianse's infringement analysis of the claimed "functions" fails.

Radianse also argues that the function of the "transmission means" limitation is "transmitting a light based signal representative of an identifying code unique to the transmitter." Radianse then argues that its IPS does not perform this function because it "employs tags that transmit the unique tag ID by means of radio frequency (RF)."  (D.I. 118, p.14).  There are three critical errors in Radianse's analysis.  First, Radianse fails to consider that the radio frequency (RF) component of its ID tag transmission may be considered by this Court as part of a "light-based signal" as proposed by Versus.[4]  (D.I. 112, pp. 3-4 ("the signal may include other

_____

because the terms convey sufficient structure, namely a "transmitter" and a "receiver." These structures are constantly referenced throughout the specification and figures.")

[4] As explained in Versus's Answer to Radianse's Claim Construction Brief, Radianse's reliance on the testimony of co-inventor Wayne Duncan for an alternative construction is misplaced because, *inter alia*, it is at best contradictory.  (D.I. 115, p. 2).

"constituents" in addition to the light component."); *see also,* D.I. 115, pp. 2-5).    Second, Radianse fails to consider that the term "representative of" may be construed by this Court to mean "associated with."  (D.I. 112, pp. 4-6; D.I. 115, p. 5).  Under either construction, the claim would apply to the RF and IR components of the Radianse ID tag transmission as a whole. Radianse cannot deny that, when combined, its RF plus IR signal performs the above recited function.  The following figures illustrate how Radianse's ID tag transmission is simply a merger of its RF and IR signals, sequentially.



FIGURE 1.  A graphical depiction of the merged RF and IR signal from a Radianse ID tag.



FIGURE 2.  Measurement of the RF and IR components of a Radianse ID tag transmission.

Third, Radianse fails to consider that, under the doctrine of equivalents, the combined RF plus IR transmission from the Radianse ID tag performs the same function, in the same way, to achieve the same result.  The IR (*i.e.,* "light") component of the Radianse ID tags must follow, within microseconds, the RF component of the Radianse ID tags.  (D.I. 123, EX. A, S.F. ¶ 12).

The Radianse receivers only process the IR component if it is received with an RF component. *Id.* In this way, the IR and RF components of the Radianse ID tag transmission function as one single signal that is equivalent to the "light based signal" recited in claims 1 and 9 of the '314 patent. Outside of distinguishing RF from "light based," Radianse does not dispute that its IPS performs the same function (transmitting a signal representative of an identifying code unique to the transmitter), in the same way (by a single transmitter), to achieve the same result (detection of the unique signal by a receiver) as the recited function.[5] (D.I. 123, EX. A, S.F. ¶ 4).

The following addresses, point by point in the same degree of detail, each of the remaining non-infringement arguments raised by Radianse with respect to the '314 patent:

- Radianse receiver assemblies have a converter to convert a light-based signal to an electrical signal. (D.I. 123, EX. A, S.F. ¶ 27).

- Radianse receiver assemblies have a validation circuit as claimed. (D.I. 123, EX. A, S.F. ¶ 28).

- Radianse's IPS has the claimed "processor means" set forth in claim 1 of the '314 patent. (D.I. 123, EX. A, S.F. ¶ 20).

- Radianse's processors perform the three claimed functions attributed by claim 1 to the "processor means." (D.I. 123, EX. A, S.F. ¶ 20).

- Radianse's processors "comprise scanning means for scanning said receivers," and Radianse's processors perform the recited "scanning" function. (D.I. 123, EX. A, S.F. ¶ 21).

- Radianse's IPS has the claimed "accumulating means," and performs the associated function of accumulating a badge count and maintaining a record of the number of times a receiver receives a signal from an ID tag. (D.I. 123, EX. A, S.F. ¶¶ 22-24).

---

[5] Radianse argues that its use of RF is distinguishable from the use of IR or other light-based signals because RF is alleged to use less batter life than IR. Yet Radianse admits that its ID tags transmit RF plus IR, not RF only. Additionally, Radianse admits that the transmission of IR is not considered a concern in terms of conserving battery life and that it is not aware of any study done with respect to any battery life savings regarding IR transmissions. S.F. ¶ 5. Radianse also fails to address the cost and diminished utility factors due to regulations and complications associated with RF transmissions that do not exist for IR transmissions. *Id.*

- Whether Radianse receivers transmit data packets to the Radianse server on a schedule is irrelevant to any element of any asserted claim of the '314 patent.

For these reasons, Radianse's motion for summary judgment of non-infringement as to claims 1 and 9 of the '314 patent should be denied.

## 2.    The '195 Patent

Radianse infringes the '195 patent.  Radianse is wrong to assert that its IPS does not use "infrared transmitters that transmit identifying codes" (claim 1) or infrared sensors "adapted to receive unique identifying codes from infrared transmitters" (claims 13, 18).  (D.I. 118, p. 17).  There are disputed issues of fact regarding at least the following: (1) whether Radianse's ID tag transmitter, which transmits RF plus IR, constitutes, or is equivalent to, the claimed IR transmitter; (2) the construction of the claimed communications protocol and the true operation of Radianse's communications protocol; and (3) whether and to what extent 35 U.S.C. § 112, ¶6 applies to the asserted claims of the '195 patent.

First, as explained above with respect to the '314 patent, Radianse's ID tags transmit, nearly simultaneous, IR and RF components that function as one single signal that contains identifying codes.  However, even when the IR component is examined in isolation, the "signature" characteristics of this component constitute an identifying code sufficient to distinguish the ID tag from a non-Radianse transmitter.  (D.I. 123, EX. A, S.F. ¶ 3).  Note that claim 1 of the '195 patent does not require that the identifying code be "unique."

Second, Radianse uses a "variable-based protocol that implements object identifier variables." Radianse attempts to distinguish the operation of its IPS from this element by construing this element to mean the specific SNMP protocol.  As explained in Versus's claim construction briefs, this construction will not stand.  (D.I. 112, pp. 14-15; D.I. 115, p. 7). Radianse is also wrong to say that its receivers communicate with the server using a fixed

protocol.  During a permitted inspection of the Radianse IPS at Radianse's headquarters, the data packets communicated over the network from a Radianse receiver were observed by Versus to vary in length. (D.I. 123, EX. A, S.F. ¶ 25).  The data packets were also observed to contain object identifiers.  *Id.*

Third, Radianse again misapplies 35 U.S.C. § 112, ¶ 6.  Claim 1 of the '195 patent does not contain a "means plus function" limitation. Radianse's IPS performs the claimed function of "sending and receiving messages over said computer network in a variable-based protocol that implements object identifier variables."  Even if 35 U.S.C. § 112, ¶ 6 were applied to this claim, the structures identified by Radianse do not correspond to the recited function of "sending and receiving messages over said computer network in a variable-based protocol that implements object identifier variables."  Radianse's proposed construction of "object identifier variable" to include over one hundred words regarding a "management information base" is unreasonable and without support.  Radianse's attempt to correlate the claimed protocol to the SNMP protocol example in the specification, which is separately claimed in dependent claim 2, is unsupported, unsupportable, contrary to common sense and contrary to the doctrine of claim differentiation.

The following addresses, point by point in the same degree of detail, each of the remaining non-infringement arguments raised by Radianse with respect to the '195 patent:

- The Radianse IPS has a "plurality of sensors for receiving transmitted identifying codes from infrared transmitters."  (D.I. 123, EX. A, S.F. ¶ 3).

- The Radianse IPS has the "interface circuitry" claimed in claim 1 of the '195. The use of concentrators or collectors is irrelevant to the claims of the '195 patent.  (D.I. 123, EX. A, S.F. ¶¶ 29-31).

- With respect to claim 13, the Radianse IPS employs a "transmissions from infrared transmitters containing a unique identifying code." (D.I. 123, EX. A, S.F. ¶ 3).

- The Radianse IPS provides "object identifier variables in the interface circuitry,

said object identifier variables adapted for being communicated over the computer network in a variable-based.  (D.I. 123, EX. A, S.F. ¶ 25).

- With respect to claim 18 of the '195 patent, the Radianse IPS uses an external device controller as required by claim 18.  (D.I. 123, EX. A, S.F. ¶ 26).

For these reasons, Radianse's motion for summary judgment of non-infringement as to claims 1, 13 and 18 of the '195 patent should be denied.

### 3.    The '791 Patent

Radianse's theory of non-infringement under the '791 patent hinges on the Court adopting its construction of the term "area detection."  In particular, Radianse asserts that the "area detection" elements of the asserted claims of the '791 patent require that there be no more than one receiver receiving any given transmitter signal.  Radianse misconstrues this claim term based upon a flawed reading of the prosecution history.  In essence, Radianse suggests that any overlap in the coverage area of its receivers will take its configuration outside the scope of these claims.  As explained in Versus's claim construction briefs, the specification and prosecution history indicate that it is possible for an ID tag transmission to be received by more than one receiver and still be within the scope of these claims.  (D.I. 112, pp. 16-18; D.I. 115, p. 8).

Even if the Court construes "area detection" to preclude any overlapping detection areas in the receiver configuration, the Radianse IPS sometimes functions within the scope of the asserted claims of the '791 patent as to the RF components and always as to the IR components. Radianse sometimes configures its system so that weaker overlapping RF signals are ignored thus allowing the stronger RF signal to be reported to the system by only one receiver.  (D.I. 123, EX. A, S.F. ¶ 16).  In addition, by only placing one receiver assembly in each room, Radianse configures its system so that the IR signal component from its ID tags is always received by only one receiver assembly.  (D.I. 123, EX. A, S.F. ¶ 17-18; *see also* Figure 1).



FIGURE 2.  An illustration of the IR and RF detection ranges of a Radianse receiver; formerly at Radianse's website (www.radianse.com) and produced at R013126.  (D.I. 123, EX. F).

Thus, the Radianse IPS configures its receiver assemblies to receive tag transmissions from "an assigned area of a pre-determined size," as required by all asserted claims of the '791 patent.

Radianse also attempts to avoid literal infringement based on an erroneous construction of the term "response."  Radianse argues that its IPS receivers do not include a "data communications controller responsive to the receipt of a tag transmission," because its receivers do not provide output resulting from or triggered by the receipt of a tag transmission.  Radianse essentially argues that its receivers are not "responsive" because they send data packets on a regular schedule.  As explained in Versus's claim construction briefs, its is the content not the timing of the data packet transmission that makes the communication responsive.  (D.I. 115, pp. 8-9).  However, even if there were an immediacy component to this term, the detection of signals and the generating of signal detection packets occur instantaneously in the processors

within the Radianse receiver assemblies. (D.I. 123, EX. A, S.F. ¶ 19).

For these reasons, Radianse's motion for summary judgment of non-infringement as to claims 39, 48 and 66 of the '791 patent should be denied.

### 4.    The '139 Patent

Radianse's theory of non-infringement under the '139 patent again hinges on disputed theories of claim construction and by dismissing disputed facts. First, as explained above, the nature of the association between the IR component and its corresponding RF component in the Radianse IPS transmission scheme constitutes the transmission of one "substantially line-of-site signal including a unique tag ID," as claimed. (D.I. 123, EX. A, S.F. ¶ 3). Even if the asserted claims of the '139 patent are construed to require that the signal must transmit a unique ID code in the form of infrared radiation, the Radianse IPS would still infringe under the doctrine of equivalents because its IR signal is always transmitted and processed as if it contained the unique ID code of its contemporaneously transmitted RF counterpart. (D.I. 123, EX. A, S.F. ¶ 3).

Radianse is also wrong to say that its IPS does not use extended area receivers or limited area receivers, and does not generate extended area detection packets or limited area detection packets. (D.I. 123, EX. A, S.F. ¶ 18, 33 and 34). Radianse is also wrong to say that it does not employ a "data communications controller coupled to the receiver assembly for collecting the extended area and limited area detection packet." The Net50 processor in the Radianse receiver assembly is a data communications controller. (D.I. 123, EX. A, S.F. ¶ 21).

For these reasons, Radianse's motion for summary judgment of non-infringement as to claims 1 and 5 of the '139 patent should be denied.

## V.    CONCLUSION.

For the reasons stated above, Versus respectfully requests that the Court deny Radianse's Motion for Summary Judgment.

**CONNOLLY BOVE LODGE & HUTZ LLP**

/s/ James M. Lennon
George Pazuniak (DE #478)
James M. Lennon (DE #4570)
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
(302) 658-9149

Dated:  December 16, 2005

*Attorneys for Plaintiff*
*Versus Technology, Inc.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2005, I electronically filed the foregoing

**VERSUS'S BRIEF IN OPPOSITION TO RADIANSE'S MOTION FOR**

**SUMMARY JUDGMENT** with the Clerk of the Court using CM/ECF, and served

copies of the same, on this date, on the following individuals in the manner indicated:

**By Hand, CM/ECF Notification and E-mail:**
Josy W. Ingersoll (#1088)
jingersoll@ycst.com
YOUNG CONAWAY STARGATT & TAYLOR  LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
*Counsel for Defendant, Radianse, Inc.*

**By E-mail:**
Sibley P. Reppert
spr@lahive.com
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400
*Co-Counsel for Defendant, Radianse, Inc.*

　　　　　　　　　　　　　　　　　　 /s/ James M. Lennon
　　　　　　　　　　　　　　　　　　George Pazuniak (#478)
　　　　　　　　　　　　　　　　　　James M. Lennon (#4570)
　　　　　　　　　　　　　　　　　　1007 North Orange Street
　　　　　　　　　　　　　　　　　　P.O. Box 2207
　　　　　　　　　　　　　　　　　　Wilmington, DE  19899
　　　　　　　　　　　　　　　　　　(302) 888-6271

DATED:  December 16, 2005　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　*Versus Technology, Inc.*