# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **VERSUS TECHNOLOGY, INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**RADIANSE, INC.,** )<br>)<br>**Defendant.** )<br>) | <br><br><br><br>Civil Action No.  04-1231 (SLR)<br><br>**REDACTED VERSION** |

**EXHIBIT A
TO APPENDIX IN SUPPORT OF VERSUS'S BRIEF
IN OPPOSITION TO RADIANSE'S MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF DISPUTED FACTS.**

The following addresses Radianse's allegedly undisputed statement of facts in the order presented by Radianse:

1. Versus does not dispute that Radianse manufactures and sells the Radianse Indoor Positioning System ("IPS").

2. Versus cannot confirm whether the Radianse IPS is in anyway based on a proprietary technique developed by Radianse.  Versus believes that the Radianse IPS is primarily based on a proprietary technique developed and patented by Versus and/or its exclusive licensor.  Versus is not aware of any patents issued, assigned or exclusively licensed to Radianse regarding its IPS technology.  Versus agrees, that the Radianse IPS is comprised of transmitters, receivers, a network, and software.

3. Versus does not dispute that the Radianse transmitters ("ID tags") transmit unique identification codes and status information by means of, *inter alia*, radio frequency (RF) transmissions.  The fact that Radianse fails to address is that the ID tags

also transmit identification codes by means of infrared (IR) transmissions.  (EX. B, Declaration of Walter S. Leipold ("Leipold Decl.,"), ¶ 3).  Radianse admits, inter alia, in ¶ 12 of its Statement of Material Facts, that its ID tags transmit "a short IR signature."  As is apparent from the description of this signature (D.I. 57, Affidavit Of Paul Tessier, p. 5), the IR signature constitutes an identification code that allows the Radianse system to distinguish this signature from infrared signals transmitted from sources other than Radianse ID tags.  (EX. B, Leipold Decl., ¶ 3).  Additionally, because of the precise temporal associations imposed by the Radianse IPS between its IR and RF signals, each IR transmission from a Radianse ID tag is understood to include the unique identification code sent by its corresponding RF transmission.  *Id*.  The IR and RF signals are received by a plurality of sensors housed in the Radianse receiver assembly.  Information regarding the receipt of a Radianse IR signal that is received immediately following a Radianse RF signal is always packaged together with the corresponding RF signal for identification purposes by the processors within the Radianse IPS.  *Id.*

    4. Versus does not dispute that (i) RF transmissions have different physical properties and characteristics from IR transmissions; (ii) RF transmissions are of a different wavelength than IR transmissions; (iii) RF transmissions are typically not blocked by opaque objects such as walls; and (iv) IR transmissions are typically blocked by opaque objects such as walls.  Versus disagrees with Radianse's attempt to insert the disputed claim term "light based" in its characterization of the above referenced facts.  Additionally, to the extent that any asserted claim requires the transmission of a unique identification code in the form of IR radiation, the Radianse IPS transmission scheme performs the same function, in the same way, to achieve the same result.  Radianse

2

admits that its tags "transmit unique identification codes and status information by means of radio frequency (RF) transmissions." (D.I. 118, p. 4, ¶ 3). Radianse also admits that the RF component of its tag transmission is always associated with an IR component. (EX. C, Donovan Dep., 95:10-13). Thus the Radianse ID tag performs the same function as that claimed, transmitting a signal representative of an identifying code unique to the transmitter. This function is performed in the same way, by a single ID tag transmitter. And the same result is achieved, detection of the unique signal by one or more receivers. EX. B, Leipold Decl., ¶ 4.

   5. Versus disagrees with Radianse's assertion that ID tags using RF transmitters to transmit unique tag identifying codes are less expensive than ID tags using IR transmitters, because they use less energy and consequently cause less drain on batteries. Radianse points to no factual support for this assertion.

REDACTED

nor has Radianse produced any documents on this subject. Additionally, Radianse does not address the cost and diminished utility factors due to regulations and complications associated with RF transmissions that do not exist for IR transmissions.

   6. Versus does not dispute ¶ 6 of Radianse's Statement of Material Facts.

   7. The facts in ¶ 7 of Radianse's Statement of Materials facts, regarding the "algorithm" contained in the Radianse software could not be verified by Radianse

3

deponents. In any event, the operation of the Radianse "algorithm" is irrelevant to Radianse's summary judgment allegations.

8. Versus does not dispute ¶ 8 of Radianse's Statement of Material Facts.

9. Versus disagrees that the RF signal transmitted by the ID tag in the Radianse IPS constitutes the primary information used by the Radianse IPS software to locate the ID tag. Radianse admits that the IR portion of the Radianse ID tag transmission is an important component in determining location.

REDACTED

In any event, the primacy of one signal type over another is not relevant to any of the asserted patent claims.

10. Versus disagrees with Radianse's assertion that the ID tags in the Radianse IPS do not transmit identification information by means of IR. As explained in ¶ 3, the IR signature sent by the ID tags constitute a code that allows the Radianse IPS to recognize and identify the IR transmission as being one from a Radianse ID tag.

11. Versus disagrees with ¶ 11 of Radianse's Statement of Material Facts for the reasons explained in ¶¶ 3 and 10 above.

12. Versus disagrees with ¶ 12 of Radianse's Statement of Material Facts.

The IR transmissions from ID tags in the Radianse IPS transmit a "signature" that is unique to the Radianse system. (EX. B, Leipold Decl., ¶ 12).

REDACTED

The fact that the IR signal can only be received if a valid RF packet is received, only confirms that Radianse must provide an identity to the IR transmission in order for its system to further process that signal.

REDACTED

    13.    Versus disagrees with ¶ 13 of Radianse's Statement of Material Facts for the reasons explained in ¶¶ 3 and 10 above.

    14.    Versus disagrees with ¶ 14 of Radianse's Statement of Material Facts for the reasons explained in ¶ 9 above.

    15.    Versus disagrees with ¶ 15 of Radianse's Statement of Material Facts for the reasons explained in ¶ 9 above.

    16.    Versus disagrees with ¶ 16 of Radianse's Statement of Material Facts. While Radianse may deploy its receivers with overlapping areas of RF signal reception, Radianse does not address the fact that it system is generally set up to avoid receiving overlapping IR transmissions. (EX. B, Leipold Decl., ¶ 16).

REDACTED

REDACTED

17.     Versus disagrees with ¶ 17 of Radianse's Statement of Material Facts. Radianse's receivers are sited so that the IR signal from a tag is received by only one receiver. (EX. B, Leipold Decl., ¶ 17). Radianse therefore uses "area detection" for the IR component of IPS system. In addition, as explained in ¶ 16 above, Radianse receivers do not always rely on overlapping RF signal detection and/or reporting by multiple receivers. (EX. B, Leipold Decl., ¶ 17). In any event, no claims at issue preclude the possibility that receiver reception may be overlapping.

18.     Versus disagrees with ¶ 18 of Radianse's Statement of Material Facts. In general, the reception range for IR signals equals the physical boundaries of the room in which the IR receiver is placed. (EX. E, Declaration of Henry Tenarvitz ("Tenarvtiz Decl."), ¶ 18). In addition, as explained above in ¶¶ 16 and 17, Radianse receivers are configured to allow reporting from non-overlapping RF detection areas. Radianse admits, in its opening claim construction brief, that "limited area" generally corresponds to IR signals and components, and "extended area" generally corresponds to RF signals and components. (D.I. 109, pp. 35-37). The Radianse IPS system uses IR signals and components to cover a limited detection area, and RF signals and components to cover an extended detection area, which includes the limited area. (EX. B, Leipold Decl., ¶ 18;

and EX. E, Tenarvitz Decl., ¶ 18).

19. Versus disagrees with ¶ 19 of Radianse's Statement of Material Facts. The responsive content of the output from a Radianse receiver is determined by whether the receiver received a Radianse ID tag transmission. (EX. B, Leipold Decl., ¶ 19). The scheduling of transmissions from Radianse receivers is irrelevant to any claim at issue.

REDACTED

20. Versus disagrees with ¶ 20 of Radianse's Statement of Material Facts. A person of ordinary skill in the art would consider the "processor" recited in claim 1 of the '314 patent to be a structure that performs the function of (1) recording electrical signals which are representative of unique identifying codes; (2) recording the receiver which determined that such electrical signals are representative of the unique identifying codes associated with said transmitters; and (3) determining in which of said areas said transmitters are located. (EX. B, Leipold Decl., ¶ 20; EX. E, Tenarvitz Decl., ¶ 20). Additionally, the CPU recited in the specification of the '314 patent performs the above reference processing functions. (*Id.*; s*ee also* D.I. 1, EX. B, 2:15-27 (The transmitter…produce[s] a characteristic binary number…for transmission to a fixed sensor…The characteristic binary numbers are sent to the central processing unit through the data processor which formulates the bits *for processing of the information in the CPU*.) (emphasis added)).

21. Versus disagrees with ¶ 21 of Radianse's Statement of Material Facts. Information regarding received signals is collected and scanned by the processors in the Radianse IPS, and Radianse receivers send data packets the content of which is

7

responsive to the receipt of a signal from a Radianse ID tag. (EX. B, Leipold Decl., ¶ 21).

REDACTED

22. Versus disagrees with ¶ 22 of Radianse's Statement of Material Facts. The central processor of the Radianse IPS accumulates with respect to each transmitter those areas in which receivers have determined that an electrical signal is representative of the unique identifying code associated with that particular transmitter. (EX. B, Leipold Decl., ¶ 22; s*ee also* EX. F, R011523-24.)

23. Versus disagrees with ¶ 23 of Radianse's Statement of Material Facts. The central processor of the Radianse IPS accumulates a badge count for each accumulated area. (EX. B, Leipold Decl., ¶ 23).

24. Versus disagrees with ¶ 24 of Radianse's Statement of Material Facts. The Radianse system maintains a count or record of the number of times a receiver receives a signal from an ID tag. (EX. B, Leipold Decl., ¶ 24).

25. Versus disagrees with ¶ 25 of Radianse's Statement of Material Facts. Radianse receivers communicate using a variable based protocol that implements object identifier variables. (EX. B, Leipold Decl., ¶ 25). The Radianse IPS provides for sending variables over the network using object identifiers. (*Id.*). Additionally data packets sent over the network from Radianse receivers vary in length. During a permitted inspection of the Radianse IPS at Radianse's headquarters, the data packets communicated over the network from a Radianse receiver were observed by Versus to vary in length. The data packets were also observed to contain object identifiers. (EX. E, Tenarvitz Decl., ¶ 25). The use of SNMP is irrelevant to the claims at issue.

26. Versus disagrees with ¶ 26 of Radianse's Statement of Material Facts. The Radianse IPS employs external device controllers which activate the channel of an external device, such as a pager or mobile telephone, to communicate information resolved by the Radianse IPS. (EX. B, Leipold Decl., ¶ 26; and EX. E, Tenarvitz Decl., ¶ 26).

27. Versus disagrees with ¶ 27 of Radianse's Statement of Material Facts. Radianse receiver assemblies have converters for converting transmitted light-based signals to electrical signals. (EX. B, Leipold Decl., ¶ 27).

28. Versus disagrees with ¶ 28 of Radianse's Statement of Material Facts. Radianse receiver assemblies have a validation circuit for processing electrical signals to determine whether the electrical signals are representative of the unique identifying code associated with said transmitters. (EX. B, Leipold Decl., ¶ 28).

29. The presence of concentrators is irrelevant to any claim at issue.

30. The presence of collectors is irrelevant to any claim at issue.

31. Versus disagrees with ¶ 31 of Radianse's Statement of Material Facts. The Radianse IPS has interface circuitry. (EX. B, Leipold Decl., ¶ 31).

32. Versus disagrees with ¶ 32 of Radianse's Statement of Material Facts. The Radianse IPS uses area detection packets. (EX. B, Leipold Decl., ¶ 32).

33. Versus disagrees with ¶ 33 of Radianse's Statement of Material Facts. As explained in ¶ 18 above, the Radianse IPS uses limited area and extended area signals and components. Likewise, the Radianse IPS generates limited area and extended area detection packets. (EX. B, Leipold Decl., ¶ 33).

34. Versus disagrees with ¶ 34 of Radianse's Statement of Material Facts. As

9

explained in ¶¶ 18 and 33 above, the Radianse IPS employs the concept of limited and extended area detection. Likewise, the Radianse IPS employs limited area and extended area receivers. (EX. B, Leipold Decl., ¶ 34).

35. Versus disagrees with the comparison of the Radianse System to the asserted claims set forth in Exhibit A to Radianse's opening brief on summary judgment. (D.I. 118, EX. B).

36. Versus agrees that U.S. Patent Number RE 36,791 reissued on July 25, 2000. The '791 patent is a reissue of Patent Number 5,119,104 filed on May 4, 1990.

37. Versus agrees with ¶ 37 of Radianse's Statement of Material Facts.

38. Versus disagrees with ¶ 38 of Radianse's Statement of Material Facts. The filing date of U.S. Patent Number 4,611,198 ("Levinson"), September 19, 1985, only predates the filing date of the '791 patent. (D.I. 118, p.10).

39. Versus disagrees with ¶ 39 of Radianse's Statement of Material Facts. Levinson does not anticipate every element of the asserted claims of the '791 patent. For example, Levinson does not disclose a "data communications controller…for providing a corresponding area detection packet" as claimed in claim 25. (EX. E, Tenarvitz Decl., ¶ 39). Additionally, Levinson does not disclose an object location system that transmits at "selected intervals," as claimed in both claims 25 and 48. Rather, the system disclosed in Levinson requires a separate "user activation" for each and every transmission of a signal from the user's transmitter. (EX. E, Tenarvitz Decl., ¶ 39; s*ee also* D.I. 121, EX. F (part 3 of 3), Levinson patent, 1:24-29, 2:7-8, 3:21-22, 4:26-35).

40. Versus challenges the uncorroborated and unauthenticated assertions of ¶ 40 of Radianse's Statement of Material Facts. Radianse's expert, Dr. Nathaniel Sims

10

has provided no corroboration regarding his alleged research and inventions in the field of indoor positioning technologies, which he claims to have developed by November 10, 1989 in his un-sworn, unverified, and unauthenticated expert report.

41. Versus disagrees with ¶ 41 of Radianse's Statement of Material Facts. The Welch patent (U.S. Patent Number 5,319,363) of which Dr. Sims claims to be a co-inventor, was filed on August 20, 1992. The '791 patent thus predates Welch.[1] Therefore, Welch cannot anticipate any element or claim of the '791 patent.

42. Versus agrees that U.S. Patent Number 5,572,195 issued on November 5, 1996, and that the '195 patent was filed with the U.S. Patent Office on August 1, 1994.

43. Versus disagrees with ¶ 43 of Radianse's Statement of Material Facts to the extent Radianse suggests that "SNMP" should be read into any limitation of claims 1 or 13 of the '195 patent. SNMP is not a part of or otherwise relevant to any asserted claim of the '195 patent. (EX. E, Tenarvitz Decl., ¶ 43).

44. Versus disagrees with ¶ 44 of Radianse's Statement of Material Facts. The filing date of U.S. Patent Number 5,150,310 ("Greenspun") is not September 19, 1989, but rather August 30, 1989. In any event, Greenspun only predates the filing date of the '195 patent. (D.I. 121, EX. F).

45. Versus disagrees with ¶ 45 of Radianse's Statement of Material Facts. Greenspun does not anticipate every element of claims 1 and 13 of the '195 patent. For example, Greenspun does not disclose an object location and tracking system using a variable based protocol that implements object identifier variables. (EX. E, Tenarvitz Decl., ¶ 45).

---

[1] Not only is Dr. Sims' expert report un-sworn, unverified and unauthenticated, but it fails to specify what he allegedly "conceived" prior to the filing of the '791 patent.

11

46. Versus disagrees with ¶ 46 of Radianse's Statement of Material Facts. The filing date of U.S. Patent Number 5,402,469 ("Hopper"), November 9, 1992, only predates the filing date of the '195 patent. (D.I. 121, EX. F).

47. Versus disagrees with ¶ 47 of Radianse's Statement of Material Facts. Hopper does not anticipate every element of claims 1 and 13 of the '195 patent. For example, Hopper does not disclose an object location and tracking system using a variable based protocol that implements object identifier variables. (EX. E, Tenarvitz Decl., ¶ 47).

48. Versus disagrees with ¶ 48 of Radianse's Statement of Material Facts. The filing date of U.S. Patent Number 5,426,425 ("Conrad"), October 7, 1992, only predates the filing date of the '195 patent. (D.I. 121, EX. F).

49. Versus disagrees with ¶ 49 of Radianse's Statement of Material Facts. Conrad does not anticipate every element of claims 1 and 13 of the '195 patent. For example, Conrad does not disclose an object location and tracking system using a variable based protocol that implements object identifier variables. EX. E, Tenarvitz Decl., ¶ 49. Additionally, as is apparent from the face of the '195 patent, Conrad was considered by the U.S. Patent Office during the prosecution of the '195 patent. In fact, the '195 was allowed after the examiner removed a rejection following the applicant's successful argument that "a variable based protocol that implements object identifier variables" was *not* inherent in Conrad. (EX. H, VER009029 and VER009038).

50. Versus disagrees with ¶ 50 of Radianse's Statement of Material Facts. The filing date of U.S. Patent Number 5,455,851 ("Chaco"), July 2, 1993, only predates the filing date of the '195 patent. (D.I. 121, EX. F).

51. Versus disagrees with ¶ 51 of Radianse's Statement of Material Facts. Chaco does not anticipate every element of claims 1 and 13 of the '195 patent. For example, Chaco does not disclose an object location and tracking system using a variable based protocol that implements object identifier variables. (EX. E, Tenarvitz Decl., ¶ 51).

52. Versus disagrees with ¶ 52 of Radianse's Statement of Material Facts. The Promotional Document entitled: "Touch Path: The Low Cost Data Path for Touch Memory: Access Control, Time & Attendance, Personnel Locating, Equipment Locating," ("PTFM draft") attached to Dr. Sims' first expert report (D.I. 121, EX. C) is irrelevant. Notably, neither Radianse nor Dr. Sims allege that this reference discloses the use of a variable based protocol that implements object identifier variables. Additionally, this reference was not produced by Radianse during discovery, has not been unauthenticated, and was never made the subject of any testimony or declaration in this matter, despite the fact that Radianse deposed Mr. Heller, the inventor of the '195 patent and owner of PTFM. In addition, the document is marked "Preproduction Draft Copy," at the bottom corner of the first page, indicating that this document was never disclosed to the public.

53. Versus disagrees with ¶ 53 of Radianse's Statement of Material Facts. This Promotional Material from Ungermann-Bass regarding an "Access/Hub" (the "Access/Hub" document) attached to Dr. Sims' first expert report (D.I. 121, EX. C) was never otherwise produced by Radianse during this litigation. The "Access/Hub" document has not been authenticated or even been made the subject of any testimony or declaration in this matter. In any event, the "Access/Hub" document only discloses an

13

"Access/Hub" device and provides no suggestion as to whether or how this device could be used with an object location and tracking system. (EX. E, Tenarvitz Decl., ¶ 53).

54.    Versus disagrees with ¶ 54 of Radianse's Statement of Material Facts. Even if the "Access/Hub" document inherently discloses the use of a variable based protocol that implements object identifier variables, there is no suggestion or motivation in the "Access/Hub" document to combine such a protocol with the tracking system disclosed in the PTFM draft. (EX. E, Tenarvitz Decl., ¶ 54).

55.    Versus disagrees with ¶ 55 of Radianse's Statement of Material Facts. Dr. Sims has provided no corroborating documentary or testimonial support for his assertion that he had developed the technology of the Welch patent at least as early as November 10, 1989. As explained above in ¶ 40, Dr. Sims' un-sworn, unverified, and unauthenticated expert report alone is insufficient to establish that any of the inventions disclosed in the Welch patent predate the filing the '791 patent.

56.    Versus disagrees with ¶ 56 of Radianse's Statement of Material Facts. The Welch patent does not discloses the use of the standard SNMP networking protocol that implements object identifier variables. Rather, the Welch patent discloses that "[t]he operation of repeater 14 is managed by a repeater CPU (central processing unit) 15 which implements network supervisory functions (NSF) 17, including, for example, simple network management protocol (SNMP) capabilities." (D.I. 121, EX. F, Welch, 5:4-8; EX. E, Tenarvitz Decl., ¶ 56). Welch does not disclose the use of such a protocol by the "links" or "transceivers" (receivers/sensors) as they communicate to their respective "multiport repeaters" (network) in the disclosed system, as is claimed in the '195 patent. (EX. E, Tenarvitz Decl., ¶ 56). In addition, Welch provides no suggestion or motivation

14

to combine the knowledge of *infrared* tracking systems with the disclosures in the Welch patent. (EX. E, Tenarvitz Decl., ¶ 56).

**CONNOLLY BOVE LODGE & HUTZ LLP**

/s/ James M. Lennon
George Pazuniak (DE #478)
James M. Lennon (DE #4570)
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
(302) 658-9149

Dated: December 16, 2005

*Attorneys for Plaintiff
Versus Technology, Inc.*

15