IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERSUS TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 04-1231 (SLR) |
| | ) | |
| RADIANSE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF IN SUPPORT OF RADIANSE'S
## MOTION FOR SUMMARY JUDGMENT

Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT &
   TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6672

OF COUNSEL:

Sibley P. Reppert
William A. Scofield, Jr.
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

Dated: December 30, 2005

## TABLE OF CONTENTS

|   |   |   | PAGE |
|---|---|---|---|
| I. | THE '195 AND '791 PATENTS ARE INVALID | | 1 |
| | A. | The '791 Patent | 1 |
| | B. | The '195 Patent | 3 |
| | | 1. Anticipatory References | 3 |
| | | 2. Obviousness | 6 |
| II. | RADIANSE DOES NOT INFRINGE THE ASSERTED PATENTS | | 8 |
| | A. | The '314 Patent | 8 |
| | B. | The '195 Patent | 11 |
| | C. | The '791 Patent | 13 |
| | D. | The '139 Patent | 14 |
| III. | CONCLUSION | | 14 |

-DB01:1948937.1                                                                 063582.1001

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004) ...................... 10

*Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F. 2d 1560 (Fed. Cir. 1987) .......................... 10

-DB01:1948937.1                                                                                                                    063582.1001

Plaintiff ("Versus") bases its opposition on a tortured and incorrect claim construction and fails to raise a genuine issue of material fact.

## I. THE '195 AND '791 PATENTS ARE INVALID

Versus had the opportunity to depose Radianse's expert, Dr. Nathaniel Sims, whose reports were served on September 30, 2005 (as to invalidity) and October 31, 2005 (as to non-infringement), but failed to do so. Now Versus challenges Dr. Sims' reports on the technicalities that they were not sworn and that the documents attached to them are not authenticated. Regarding the first assertion, Radianse submits herewith the Affidavit of Nathaniel M. Sims, incorporating both of his reports by reference and swearing to the content of both. As to the assertion that the documents attached to the Expert Report of Nathaniel M. Sims in Exhibit C[1] lack authentication, Radianse refers this Court to paragraph 7 of Dr. Sims' report, explaining what those documents are and how he got them. Having failed to take Dr. Sims' deposition, Versus has foreclosed its opportunity to challenge their authenticity. The authenticity of both documents is apparent on their face.

### A. The '791 Patent

Contrary to Versus' assertion[2], U.S. Patent No. 4,611,198 ("Levinson")[3] does disclose a "data communications controller...for providing a corresponding area detection packet," as claimed in Claim 25 of the '791 patent (a term that, according to Versus, does not need construction because "meanings are self-evident"[4]). Levinson discloses portable radio frequency transmitters for sending signals including an individual identification code to identify the portable transmitter, and:

---

[1] Ungermann-Bass, "Access/Hub," and "TouchPath: the Low Cost Data Path for Touch Memory."
[2] Opposition Brief at 8.
[3] Levinson is included in the Expert Report of Nathaniel M. Sims, Exhibit F, following Radianse's invalidity claim charts.
[4] Joint Claim Construction Statement at 18.

> A plurality of radio frequency relays are also provided, each being positioned in a predetermined location, unlike the portable radio frequency transmitter. The radio frequency relays have means for receiving a first signal from any of the portable transmitters. Upon receiving such signal, a relay will immediately transmit a second signal including the first identification code from the first signal and a second identification code to identify the individual relay that is transmitting the second signal.

(Col. 1, ln. 25-49). The signal from the relays goes to a central receiving station, where it is conveyed to a microprocessor via a receiver-decoder. (Col. 4, ln. 52-col. 5, ln. 11).

Levinson's relays are "data communications controllers" under the '791 patent. They process signals from transmitters by decoding them (col. 4, ln. 53), adding "the individual identification code of the specific radio frequency relay which received the signal from the transmitter" (col. 4, ln. 57-60) and sending them along a network to a central computer. This process is identical to the creation of a "corresponding area detection packet" as claimed and disclosed in the '791 patent ("Each receiver includes a data communications controller. The data communications controller is responsive to the receipt of a TAG transmission for providing a corresponding AREA-DETECTION packet including at least the TAG ID from the TAG transmission." ('791, col. 2, ln. 40-44)). The conclusory Declaration of Henry Ternarvitz[5], on which Versus relies, does not raise a genuine issue regarding this indisputable fact.

Versus' only other effort at raising a genuine issue regarding the Levinson prior art is its assertion that "Levinson does not disclose an object location system that transmits at "selected intervals," as claimed in the asserted claims of the '791 patent. Neither party proposed a construction of "selected intervals," but it is apparent from the '791 patent that such term includes irregular intervals, as well as intervals caused by human conduct. Thus, the '791 patent discloses tag transmitters that transmit only when the tag transmitter is in motion. (*See, e.g.*, '791, col. 3, ln. 5-15.) Such a tag transmission schedule is akin to the irregular transmissions of

---

[5] at Paragraph 39.

Levinson, wherein transmissions occur when an individual signals with a portable frequency transmitter. Again, Mr. Tenarvitz' bare assertion does not raise a genuine issue. This Court should grant summary judgment of invalidity of claims 39 and 48 of the '791 patent, because they are anticipated by Levinson.

Regarding the Welch patent, U.S. Patent No. 5,319,363, Versus challenges the statement of Dr. Sims that said invention predates '791 patent. Documentation from the files of Dr. Sims supporting his testimony is attached as Exhibit A to the Affidavit of Nathaniel M. Sims submitted herewith. Such documentation clearly shows that the Welch/Sims invention dates back to 1989. Versus raises no genuine issue regarding the Welch patent as set forth in the claim chart attached to the Expert Report of Nathaniel M. Sims as Exhibit F. Consequently, Welch anticipates claims 39, 48 and 66 of the '791 patent.

### B. The '195 Patent

#### 1. Anticipatory References

Versus asserts that the Greenspun, Hopper, Conrad and Chaco patents do not anticipate claims 1 and 13 of the '195 patent solely because they do not disclose "an object location and tracking system using a variable based protocol that implements object identifier variables." (Opposition Brief at 9). Versus is incorrect as to each of these prior art patents.

Greenspun[6] discloses the use of a "distributed control protocol" (col. 7, ln. 36) that uses "communications channel control elements" including transmitters and receivers. (Col. 7, ln. 45-50). The signal transmitted by the transmitters and received by the receivers can include several components, including a tag portion unique to the transmitter, and the amount of information sent from the transmitter can vary. (Col. 7, ln. 49-59). In addition, the system is configured so that each receiver is at a known, fixed location. (Col. 8, ln. 59-60). The protocol eliminates the

---

[6] U.S. Patent No. 5,150,310.

requirement for a central controller managing access to the shared communications channel by which the output of transmitters is transmitted to receivers. (Col. 10, ln. 30-54). Supplemental data regarding the transmitted signals can be added in addition to the coordinates of a transmitter and the time of transmission. As is well understood, the various components of the signal, as well as the supplemental data, are in essence variables that are used by the distributed control protocol.

Under the constructions proposed by Radianse as well as Versus, Greenspun thus discloses the use of a "variable based protocol" that implements "object identifier variables." Under Versus' proposed construction of these terms, Greenspun discloses a protocol which "conveys variables" and the use of "variables that identify the unique identification of the sensors and transmitters." Under Radianse's proposed construction, Greenspun uses a protocol that "uses variables to provide information about the network being managed, allowing for an expandable, open-ended format for providing data". It also uses variables "that vary in content and length based on the information being conveyed and that are used in a variable based protocol to correspond to objects to be tracked or located."

Hopper[7] discloses recording "the identifying data (obtained from the FIFO buffer memories as they are addressed), with regional data, thereby linking carrier identifying data with positional identifying data relating to the environment." (Col. 2, ln. 66-Col. 3, ln. 2). The transmitters (carriers) of Hopper transmit unique signals. The receiver means of Hopper have a variable, such as an address "uniquely indicating in coded format the location of that receiving means relative to the overall environment." (Col. 4, ln. 14-15). The controller of Hopper can access this data by transmitting an address corresponding to that in the address ROM to the receiving means concerned, causing the receiver to interrogate the associated FIFO memory and

---

[7] U.S. Patent No. 5,402,469.

transmit the decoded carrier signal stored therein, together with the coded data indicating the identity (and therefore the location) of the receiving means. The system of Hopper can further cause a telephone call, having a telephone extension associated with a carrier, to be routed to the location of the carrier.

Under the construction proposed by Radianse as well as Versus, Hopper thus discloses the use of a "variable based protocol" that implement "object identifier variables." Under Versus' proposed construction of these terms, Hopper discloses a protocol which "conveys variables" and the use of "variables that identify the unique identification of the sensors and transmitters."

While it is true that Conrad does not disclose using SNMP as pointed out in the prosecution history cited by Versus, Versus now asserts that SNMP is not relevant to the meaning of "variable based protocol" so Conrad must be analyzed under the proposed construction.

Conrad[8] discloses events that include variables, including the identity of the one receiver of the plurality of receivers, the binary identification code of one transmitter of the plurality of transmitters, and when the pulse burst of such a transmitter was detected or lost. (*See* Col. 2, ln. 64-Col. 3, ln. 5). Conrad further discloses associating "information identifying the level of the person or personnel wearing all badges, *e.g.* RN, LPN, aid, as well as the specific identity of the nurse wearing that badge" (Col. 6, ln. 21-23). Under the construction proposed by Radianse as well as Versus, Conrad thus discloses the use of a "variable based protocol" that implements "object identifier variables." Under Versus' proposed construction of these terms, Conrad discloses a protocol which "conveys variables" and the use of "variables that identify the unique identification of the sensors and transmitters."

---

[8] U.S. Patent No. 5,426,425.

Chaco[9] discloses a badge that transmits "identification information associated with their respective objects or personnel" (Abstract). Chaco also discloses communications from a receiver to the central computer as having a message format of: "Header/receiver location/badge data received" where the receiver provides its related information to the central computer. (*See* Col. 8, ln 53-Col. 9, ln. 36). Chaco also indicates that the "length of ID" can be changed to include other pertinent information. (*See* Col. 6, ln. 34-36).

Under the construction proposed by Radianse as well as Versus, Chaco thus discloses the use of "variable based protocol" that implement "object identifier variables." Under Versus' proposed construction of these terms, Chaco discloses a protocol which "conveys variables" and the use of "variables that identify the unique identification of the sensors and transmitters." Under Radianse's proposed construction, Chaco uses a protocol that "uses variables to provide information about the network being managed, allowing for an expandable, open-ended format for providing data." It also uses variables "that vary in content and length based on the information being conveyed and that are used in a used in a variable based protocol to correspond to objects to be tracked or located."

### 2. Obviousness

The motivation to combine Precision Tracking FM's "TouchPath" infrared locating system with the SNMP "variable based protocol" is evident from the two documents included in Exhibit C to the Expert Report of Nathaniel M. Sims. The first document, from Ungermann-Bass, describes in detail the use of a its Access/Hub, a "low cost, SNMP- Managed Workgroup Concentrator," stating that, "Its architecture provides optimal network management, enabling you to configure your network to minimize costs." Ungermann-Bass includes a document describing "SNMP Concepts," stating that "SNMP is "a standards-based protocol that has

---

[9] U.S. Patent No. 5,455,851.

become the de facto standard for management of TCP/IP networks." It explains that SNMP "standards-based management allows a single console/vend or to control a variety of devices." It explains how SNMP uses "a set of programs running on a management station that allows a network administrator to manage network devices." It also explains the "Management Information Base that defines manageable SNMP attributes or objects." The latter include the object's name, syntax, definition, access, and status. As explained in the Abstract of the '195 patent itself, SNMP is an "object identifier variable-based protocol."

The second document in Exhibit C to the Expert Report of Nathaniel M. Sims is entitled, "TouchPath: The Low Cost Data Path For Touch Memory," and was published by Precision Tracking FM, Inc., the assignee of what later issued as the '195 patent. In the "TouchPath" document, PTFM describes the infrared locating system composed of tags, sensors, collectors and concentrators later described in the '195 patent, and also states that those components are contained in a network.

The motivation to combine these two pieces of prior art (SNMP and TouchPath), is that a variable based protocol such as SNMP that uses object identifier variables provides a solution to the problem of networking the components of an infrared object location system such as TouchPath and, in particular, to the problem of managing the networked devices. PTFM's prior art system required a network to function. The prior art SNMP variable based protocol was a well established standards-based protocol that, at least by 1991 as documented by Ungermann Bass, "ha[d] become the de-facto standard for management of TCP/IP networks."

Finally, Versus dissembles when it asserts that "the Welch patent does not disclose the use of the standard SNMP networking protocol that implements object identifier variables."[10]

---

[10] Opposition Brief at 10.

By the very language that Versus quotes from Welch[11], that patent states that the central processing unit "implements network supervisory functions (NSF) 17, including, for example, simple network management protocol (SNMP) capabilities." As described in the above-discussed Ungermann-Bass prior art, "An SNMP manager is a set of software programs running on a management station that allows a network administrator to manage network devices." By disclosing the use of SNMP by a central processing unit, Welch necessarily disclosed its use in connection with network devices to which the CPU is networked using SNMP. One of ordinary skill would thus have understood, at the time of the '195 patent application, that Welch contemplated the use of a variable based protocol in connection with networked devices.

## II. RADIANSE DOES NOT INFRINGE THE ASSERTED PATENTS

Versus' opposition depends on a tortured and incorrect construction of the asserted claims. Versus fails to raise a genuine issue as to how the Radianse system works, and Radianse is entitled to summary judgment of non-infringement as a matter of law as to each asserted claim.

### A.     The '314 Patent

Versus does not dispute the fact that Radianse's IPS uses transmitters (ID Tags) that transmit identification codes unique to each transmitter by means of RF transmissions. (Radianse Statement of Fact No. 3 ("SF 3"); Exhibit A to Appendix In Support of Versus' Brief In Opposition to Radianse's Motion for Summary Judgment ("Versus Ex. A," ¶3)). Specifically, Versus does not deny that, in the Radianse IPS, ID Tags are identified by signals that are transmitted in the form of RF packets, each of which includes a 32 bit unique identification of the ID Tag. (SF 8; Versus Ex. A, ¶8). Versus does not deny that <u>Radianse's IR transmissions contain no identification code unique to the ID Tag.</u> (SF 10; Versus Ex. A, ¶s 3, 10, 11;

---

[11] U.S. Patent No. 5,319,363, contained in Exhibit C to the Expert Report of Nathaniel Sims.

Declaration of Walter S. Leipold at 2). Versus does not provide any information disputing the fact that the Radianse IPS requires the RF signal to locate and identify ID Tags, but does not require the IR signal either to identify or to locate ID Tags. (SF 15).[12]

Versus' expert, Walter S. Leipold, does not deny that the short IR signals transmitted by Radianse ID Tags following their transmission of RF signals are in standard industry format, are not unique to Radianse, can only be received if a valid RF packet is received, and have no relevance or meaning by themselves. (SF 12; Leipold Declaration, ¶12.)

As with its claim construction argument, Versus seeks to deprive the asserted claims of the '314 patent of their clear meaning by the contorted argument that "*each IR transmission from a Radianse ID Tag is understood to include the unique identification code sent by its corresponding RF transmission,*"[13] even while Versus does not deny that Radianse's IR transmissions <u>do</u> <u>not</u> include the ID Tag's unique identification code. Versus similarly argues that "*The radio frequency (RF) component of its ID Tag transmission may be considered by this Court as part of a "light-based signal,*"[14] and that "*Radianse's ID tag transmission is simply a merger of its RF and IF signals, sequentially.*"[15] Versus' argument is that, because Radianse's ID Tags send an RF signal containing a unique ID code, followed by a separate IR signal that does not contain the unique ID code, the IR signal includes the unique ID code. This is nonsense.

Versus next argues that sending the unique Tag ID by means of RF is equivalent to the claimed use of "a light based signal [*i.e.*, IR] representative of an identifying code unique to that transmitter." ('314 patent, claims 1, 9). This is clearly wrong. RF and IR signals have different

---

[12] Versus states that it disagrees with this statement, but merely refers to its reasons explained in Versus Ex. A, ¶9, which do not provide a basis for any such disagreement.
[13] Versus Ex. A, ¶3.
[14] Opposing Brief at 12
[15] Opposing Brief at 13.

properties (SF 4; admitted by Versus Ex. A, ¶4), and constitute different "ways" of transmission that achieve different "results." In particular, IR signals are blocked by opaque objects such as walls, and RF signals are not. (SF 4). Indeed, the '139 patent, which claims both IR and RF signals containing the unique tag ID, explains important differences between IR and RF:

> The signals in the preferred embodiment are RF and IR. The benefits of IR are two-fold, firstly, the cost of reception and transmission components are low. Secondly, the benefit of IR is its high line-of-sight nature. The use of this feature enables processing software to infer that the signal is highly proximate (line-of-sight or almost line-of-sight) to the transmitter. The ability to make this inference creates a much more precise location fix. The use of RF obviates the requirement that a badge or TAG is line-of-sight when a push button of the TAG applied is pushed. Further the requirement to have a sensor in every room is obviated....

('139 Patent, Col. 3, ln. 56 – col. 4, ln. 9).

The declaration of Versus' expert, Walter S. Leipold, contains unsubstantiated conclusory statements purporting to deny or dispute additional Radianse Statements of Fact regarding the '314 patent, specifically: SF 20 (processor means) (Leipold Declaration, ¶20); SF 22 (accumulation of areas) (Leipold Declaration, ¶22); SF 23 (accumulating a badge count) (Leipold Declaration, ¶23); SF 24 (maintaining a count) (Leipold Declaration, ¶24); and SF 28 (validation circuit) ( Leipold Declaration, ¶28). Mr. Leipold's declaration fails to raise a genuine issue regarding any of these facts. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F. 2d 1560, 1564 (Fed. Cir. 1987) (mere contradictory statements and denials do not take on dignity by placing them in affidavit form to counter a motion for summary judgment). Mr. Leipold fails to set forth any facts showing there is a genuine issue for trial, and provides no foundation whatsoever for his conclusory statements. Therefore, his declaration does not raise a genuine issue. *See Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) ("It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact, and that a party may not

avoid that rule simply by framing the expert's conclusion an assertion that a particular critical claim limitation is found in the accused device.").

Finally, Versus fails to raise a genuine issue as to whether Radianse has the claimed "transmission means" of claim 1, or the claimed "processor means," when those elements of claim 1 are properly construed as means-plus-function elements as set forth in Radianse's proposed construction. There is no genuine issue that Radianse's IPS performs the claimed functions or that it possess identical or equivalent structure. For the reasons set forth above, Versus makes no showing that Radianse's IPS performs the function "transmitting a light based signal representative of an identifying code unique to a transmitter," or that it performs the three specified functions of the claimed "processor means." Indeed, Mr. Leipold agrees with Radianse as to what those three functions are (SF 20; Leipold Declaration, Leipold Declaration, ¶20[16]), and nowhere asserts that Radianse actually performs those functions. Versus provides no evidence that Radianse's IPS has the structure disclosed in the specification of the '314 patent corresponding to the claimed function, or an equivalent structure  Similarly, Versus fails to raise genuine issues regarding the elements of claim 9 when they are properly construed as step-plus-function elements.

**B.    The '195 Patent**

Contrary to Versus' argument, the requirement of claim 1 for "transmitted identifying codes from the infrared transmitters" can only mean the <u>unique</u> codes that identify the particular transmitters. As explained in the Summary of the Invention,

> The object identifier variables identify both the unique identification of the various sensors, touch ports, and external controllers, as well as <u>the unique identities of infrared transmitters</u> that come within the proximity of an infrared sensor, as well as touch memories that are placed within the touch ports.

---

[16] Curiously, the Declaration of Henry Tenarvitz at ¶20 parrots exactly that of Mr. Leipold. Neither declarant provides any factual evidence that Radianse performs the three functions they recite.

('195 patent, col. 2, ln. 2-7). Versus asserts that, even though the Radianse IR signal does not contain the unique ID Tag identification, "*This IR signature constitutes an identification code that allows the Radianse system to distinguish this signature from infrared signals transmitted from sources other than Radianse ID tags.*" (Leipold Declaration, ¶3; Versus Ex. A., ¶3). This argument completely misses the point that the '195 patent is directed to identifying and tracking individual transmitters. In the context of the patent, an "identification code" means a code permitting the identification of a specific transmitter and is thus synonymous with a "unique identification code." As set forth above, Radianse does not use infrared to transmit such identification codes, and Versus does not raise a genuine issue on that subject.

Versus provides no factual information disputing the fact asserted by Radianse that it does not use a variable-based protocol and does not use object identifiers (Exhibit A to Radianse's Opening Brief discussing the '195 patent). The statement by Mr. Tenarvitz that he "disagrees with the comparison of the Radianse System to the asserted claims set forth in Exhibit A to Radianse's opening brief on summary judgment" (Tenarvitz Declaration, ¶35) does not raise a genuine issue, particularly in the absence of any information providing any foundation for any statements of Mr. Tenarvitz in his declaration. Mr. Tenarvitz' statement that the Radianse packets "vary in length" (*Id.* at ¶25) does not establish that Radianse uses a variable based protocol.

The bald statement of Mr. Leipold that "the Radianse IPS has interface circuitry" (*Id.* at ¶31) lacks any evidentiary support and thus fails to raise a genuine issue regarding that element of the asserted claims.

### C. The '791 Patent

As above discussed, it is undisputed that Radianse uses RF signals rather than IR signals to provide the unique Tag ID. Radianse's IR signals do not contain the unique Tag ID.

The '791 patent's "assigned areas of a predetermined size" are areas in which "TAG transmissions that include a unique TAG ID" are received. (Claims, 25, 48, 66). As explained in Radianse's claim construction brief, the assigned areas are intended not to overlap, so that only one receiver receives the signal containing the unique Tag ID.

It is undisputed that Radianse does not "assign" areas for its RF receivers such that the RF signal is received by only one RF signal. Mr. Leipold, Versus' sole authority, makes no such assertion, and does not contradict Radianse's statement that its ID tags' RF transmissions are received by multiple receivers. (SF 16). Leipold's statement that Radianse's receivers are sometimes "tuned" to have the closest receiver report the receipt of the signal actually supports Radianse, because it provides an example of a situation where more than one receiver receives the signal, a situation outside the claims.

Versus tries to wiggle off this hook by asserting that "the *IR* component of the Radianse IPS is set up to avoid receiving overlapping IR transmissions." (Leipold Declaration, ¶s 16, 17). But Versus provides no evidentiary support whatsoever for such assertion. Furthermore, since the IR transmissions do not contain a unique Tag ID, they cannot support an infringement argument under the asserted claims of the '791 patent.

Versus cites no evidence raising a genuine issue as to whether Radianse's receivers provide an output resulting from the receipt of a Tag transmission. Leipold's statement that "the detection of signals and the generating of signal detection packets occur instantaneously in the processors within the Radianse receiver assemblies" (Leipold Declaration, ¶19) lacks

evidentiary support and, even if supported, would not raise a genuine issue regarding the claim for "providing" such packet "responsive to" the receipt of the Tag transmission.

### D.  The '139 Patent

Versus' argument under this patent merely reiterates its argument, discussed above, regarding the '314 patent that improperly conflates separate IR and RF signals. The argument is even weaker in the context of the '139 patent, which expressly requires that the tag transmit an IR signal including the unique Tag ID as well as an RF signal including the unique Tag ID. There is no dispute that Radianse does not do that.

### III.  <u>CONCLUSION</u>

For the reasons set forth above, this Court should enter summary judgment that each of the patents asserted against Radianse by Versus in this action is invalid, and that Radianse does not infringe any asserted claim thereunder.

Respectfully submitted,

RADIANSE, INC.

_____
Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6672

OF COUNSEL:

Sibley P. Reppert
William A. Scofield, Jr.
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

Dated: December 30, 2005

## **CERTIFICATE OF SERVICE**

I, Karen E. Keller, Esquire, hereby certify that on December 30, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> George Pazuniak , Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> PO Box 2207
> Wilmington, DE  19899

I further certify that copies of the foregoing document were served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Radianse, Inc.*

DB01:1593599.1