IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VERSUS TECHNOLOGY, INC.,    )
    )
            Plaintiff,    )
    )
    v.    )    Civil Action No. 04-1231 (SLR)
    )
RADIANSE, INC.    )
    )
          Defendant.    )

## **DEFENDANT RADIANSE'S BRIEF IN OPPOSITION TO VERSUS'**
## **MOTION FOR LEAVE TO JOIN A NECESSARY PARTY**

Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
Monté T. Squire (#4764)
YOUNG CONAWAY STARGATT &
   TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6600

*Attorneys for Defendant Radianse, Inc.*

OF COUNSEL:
Sibley P. Reppert
William A. Scofield, Jr.
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

Dated: January 26, 2006

## TABLE OF CONTENTS

PAGE

TABLE OF CITATIONS ................................................................................... ii

NATURE AND STAGE OF THE PROCEEDING................................................2

SUMMARY OF ARGUMENT ........................................................................2

STATEMENT OF FACTS ............................................................................3

ARGUMENT...............................................................................................5

    A. VERSUS HAD SUFFICIENT OPPORTUNITY TO JOIN
    FRESHLOC AND ELECTED NOT TO DO SO ..........................................5

    B. FRESHLOC DOES NOT SUPPORT VERSUS'
    INFRINGEMENT CLAIMS AGAINST RADIANSE..................................7

CONCLUSION.............................................................................................8

## TABLE OF CITATIONS

PAGE

Cases

*Aspex Eyeware v. Miracle Optics, Inc.,*
    ---F.3d ---, 2006 WL 44185 (Fed. Cir. Jan. 10, 2006) ................................................5, 6

*Brunswick Corp. v. U.S.,*
    22 Cl. Ct. 278, 288 (Cl. Ct. 1991)................................................................................3

*Calgon Corporation v. Nalco Chemical Co.,*
    726 F.Supp. 983 (D. Del. 1989)...................................................................................4

*Cilco, Inc. v. Precision-Cosmet, Inc.,*
    624 F. Supp. 49 (D. Minn. 1985)................................................................................7

*Independent Wireless Telegraph Co. v. Radio Corporation of America,*
    269 U.S. 459, 469 (1926)............................................................................................3

*Philadelphia Brief Case Co. v. Specialty Leather Products,*
    145 F. Supp. 425 (D. N.J. 1956), aff'd, 242 F.2d 511 (3d Cir. 1957) ...........................7

Statutes

Fed. R. Civ. P. 15...............................................................................................................3, 4, 5

Fed. R. Civ. P. 19...............................................................................................................2, 3, 4

Fed. R. Civ. P. 19(a) ...........................................................................................................8

## NATURE AND STAGE OF THE PROCEEDING

Radianse, Inc. ("Radianse") hereby opposes the motion of Versus Technology, Inc. ("Versus") for leave to join Freshloc Technologies, Inc. ("Freshloc") as a plaintiff.

## SUMMARY OF ARGUMENT

As grounds for this opposition, Radianse submits that Versus' motion is "too little, too late." Indeed, Versus filed this motion more than a year after the Court entered its Scheduling Order setting the deadline for amending the complaint and adding additional parties, and almost ten months after that deadline passed. Versus has been well aware of the issue regarding its lack of standing, yet Versus, for its own reasons, deliberately chose not to join Freshloc as a party. Now, long after the close of all discovery, and virtually on the eve of trial, Versus has come forward to seek, in effect, a "mulligan," in what is clearly a blatant attempt to avoid the impact of a recent Federal Circuit ruling confirming exactly what Radianse has consistently maintained over the past year, including several motions to dismiss – that Versus did not have standing bring the complaint or maintain this action in its own name for two of the patents in suit.

Versus alleges no new facts in its motion. Indeed, the facts regarding the limited nature of Versus' license, including its limited 10-year period of "exclusivity," have been well known to Versus from the outset. Versus had every opportunity before now to amend its complaint and join Freshloc as a party, but deliberately elected not to do so. Having intentionally chosen its own course, Versus should not be permitted, at this late date, to come before this Court to seek relief from the consequences of its own actions.

Moreover, this is not a "proper case" in which to invoke the "involuntary plaintiff" doctrine under Fed. R. Civ. P. 19. That rule is limited to naming a party as an involuntary plaintiff where the interests of the patent owner and the licensee are consistent. Here, the patent

owner, Freshloc, openly disputes that Versus' license extends to non-IR based systems such as Radianse's RF-based system, or that Radianse infringes the claims of the asserted patents. Indeed, Freshloc has granted Radianse a separate license under the patents, and does not support this action for infringement brought by Versus alone.

For the reasons stated herein, Radianse submits that Versus' motion should be denied.

## STATEMENT OF FACTS

Versus filed its complaint in this action on September 3, 2004 (D.I. 1). Thereafter, Radianse filed its answer and counterclaims (D.I. 5, 12). On November 29, 2004, the Court entered a Scheduling Order for pretrial proceedings (D.I. 18, attached as Exhibit A). The Scheduling Order provided that the deadline for "[a]ll motions to join other parties and amend the pleadings shall be filed on or before February 11, 2005." On March 3, 2005, the Court granted a stipulated amendment to the Scheduling Order, extending the deadline for joinder of parties and amending the pleadings to March 25, 2005 (D.I. 34, attached as Exhibit B).

On the last possible day, March 25, 2005, Versus filed "Plaintiff's Motion for Leave to File Amended Complaint" (D.I. 39, attached as Exhibit C). In that motion, Versus stated that its purpose was "to add Freshloc Technologies, Inc. ('Freshloc') as an involuntary plaintiff." Citing *Independent Wireless Telegraph Co. v. Radio Corporation of America*, 269 U.S. 459, 469 (1926), and *Brunswick Corp. v. U.S.*, 22 Cl. Ct. 278, 288 (Cl. Ct. 1991), Versus argued that it was the "exclusive licensee of the two patents in suit owned by Freshloc," and that it was "entitled to add Freshloc as an involuntary plaintiff." (Exhibit C, at 1.)

In Radianse's response (D.I. 47, attached as Exhibit D), it pointed out that Versus' motion was improperly filed under Fed. R. Civ. P. 15, rather than Rule 19, and that Versus failed to allege either (1) that Freshloc was subject to the jurisdiction of the Court, or else would appear

voluntarily, or (2) that Freshloc was not subject to the jurisdiction of the Court, but had been apprised of the action, and properly could be joined under Rule 19. Radianse suggested that Versus' motion be conditionally granted for the reasons set forth in *Calgon Corporation v. Nalco Chemical Co.*, 726 F.Supp. 983 (D.Del. 1989), and that if Freshloc failed to appear voluntarily within a period to be set by the Court, then the motion should be denied, and Versus provided with an additional period to move to add Freshloc as an "involuntary plaintiff" under Rule 19. Radianse reserved the right to oppose such a motion.

On April 15, 2005, Versus stipulated to withdraw its pending motion to amend the complaint and join Freshloc (D.I. 49, attached as Exhibit E). That stipulation expressly provided that Versus' motion was withdrawn "with leave to re-file." However, Versus elected not to re-file its motion under either Rule 15 or Rule 19, or otherwise seek relief from the Court to join Freshloc as a party.

On May 12, 2004, after obtaining a copy of Versus' "exclusive license" from Freshloc through discovery, Radianse filed a motion to dismiss for lack of standing as to two of the patents in suit (D.I. 55, attached as Exhibit F). That motion was based on the limited field of exclusivity of Versus' license, and the fact that the suit against Radianse is outside that limited field. Radianse expressly pointed out the additional ground, raised previously before the Court, based on the limited 10-year period of exclusivity of Versus' license. Radianse stated in its motion to dismiss that it understood Versus might revise and re-file its motion to amend, and Radianse reserved its rights with respect to this issue.

On May 26, 2005, Versus filed an answering brief (D.I. 66) opposing Radianse' motion to dismiss, without arguing that it intended to join Freshloc. Then, in an e-mail to Radianse's

counsel dated June 14, 2005 (attached as Exhibit G), counsel for Versus expressly confirmed that Versus did not intend to move under Rule 19 to add Freshloc as an involuntary plaintiff.

Thereafter, on June 21, 2005, Radianse filed a second motion to dismiss for lack of standing (D.I. 74). That motion was based on the limited 10-year term of Versus' period of exclusivity under its license with Freshloc.

On June 24, 2005, in response to the Court's request, Radianse filed a "Consolidated Motion to Dismiss for Lack of Standing" (D.I. 78). That motion, which is still pending before the Court, combined the two previous motions to dismiss for lack of standing, which were subsequently withdrawn. (D.I. 83). Once again, Versus opposed Radianse's consolidated motion, but did not seek leave to join Freshloc as a party. (D.I. 89).

ARGUMENT

The recent Federal Circuit decision in *Aspex Eyeware v. Miracle Optics, Inc.,* ---F.3d ---, 2006 WL 44185 (Fed. Cir. Jan. 10, 2006) (copy attached as Exhibit H), squares exactly with the arguments set forth in Radianse's consolidated motion to dismiss for lack of standing filed in June 2005. Versus now concedes that its opposition to that motion was wrong, and that Versus lacks standing to sue Radianse for infringement of the '195 and '791 patents without joining the patent owner, Freshloc, as a party.

A.    VERSUS HAD SUFFICIENT OPPORTUNITY TO JOIN FRESHLOC AND ELECTED NOT TO DO SO

The time for joining Freshloc has long since passed. Under the amended Scheduling Order, all motions to join other parties and amend the pleadings were to have been filed by March 25, 2005. While Versus initially moved at that time under Rule 15 to amend its complaint and add Freshloc as an involuntary plaintiff, Versus subsequently withdrew that motion, and elected not to re-file it.

Even after Radianse moved to dismiss for lack of standing, Versus confirmed that it still did not intend to seek to add Freshloc as a party. Versus continued to adhere to that position after Radianse filed its second motion to dismiss and its consolidated motion to dismiss for lack of standing. Versus has consistently and intentionally declined every opportunity to seek leave to amend its complaint to join Freshloc as a party.

Discovery was completed under the Scheduling Order on August 23, 2005, and this case is now set for trial in May, 2006. While Radianse took the deposition of Freshloc's president, Alan C. Heller, on limited subject matters, it did not conduct, and did not have the opportunity to conduct, full-fledged discovery with regard to Freshloc.

Versus had more than sufficient opportunity to seek leave to join Freshloc. Moreover, Versus was well aware of the limitations in its own license, and the implications of those limitations for the standing issue. Yet, Versus intentionally elected to withdraw its motion to join Freshloc, and not to later re-file it, even after the standing issue was clearly raised before the Court. Indeed, Versus affirmatively stated that it would not seek to join Freshloc as a party. Versus' intention to go it alone as the sole plaintiff, and not bring Freshloc into the case, could not have been made any more clear. The case has proceeded based on that choice.

Lest Versus argue that it was not fully aware of the implications of its voluntary and intentional choice, they were expressly spelled out in the three (3) subsequent motions to dismiss filed by Radianse, based on existing case law. That case law is the same precedent relied upon by the Federal Circuit in the recent *Aspex Eyeware v. Miracle Optics* decision, confirming that an "exclusive licensee" for a limited term, such as Versus, cannot bring an action for infringement without joining the patent owner.

B.    FRESHLOC DOES NOT SUPPORT VERSUS' INFRINGEMENT CLAIMS
      AGAINST RADIANSE

Moreover, this is not a "proper case" to invoke the "involuntary plaintiff" rule under Fed.

R. Civ. P. 19(a).  The "involuntary plaintiff" rule only applies where the interests of the would-

be involuntary plaintiff and the movant are aligned. *Cilco, Inc. v. Precision-Cosmet, Inc.*, 624

F.Supp. 49 (D. Minn. 1985) (distinguishing *Independent Wireless,* and holding that case is not a

"proper case" to invoke the involuntary plaintiff procedure where parties' positions on validity

are inconsistent); *Philadelphia Brief Case Co. v. Specialty Leather Products*, 145 F.Supp. 425

(D. N.J. 1956), *aff'd*, 242 F.2d 511 (3d Cir. 1957) (court found it would be unjust to make patent

owner an involuntary plaintiff, where the positions of patent owner and plaintiff were adverse).

Here, the patent owner, Freshloc, does not support Versus' infringement claims against

Radianse in this case.  Indeed, as discussed in Radianse's brief in support of its consolidated

motion to dismiss for lack of standing (D.I. 79), Freshloc granted a separate patent license to

Radianse under the patents in suit.  In that agreement, Freshloc states that the prior license to

Versus is limited to "products, articles, or devices which make use of infrared frequencies or

infrared technology (the 'IR Only Field')," and further states that "Radianse's Indoor Positioning

Systems would not presently require a license by Freshloc under the '791 or the '195 Patent for

use of infrared frequencies or infrared technology, assuming that Radianse's infrared

transmissions do not transmit identification information."  Freshloc has, to date, declined to

appear in this action, and does not support Versus' position that Radianse's IPS is within the

scope of the IR Only Field of Versus' exclusive license.  Moreover, having conveyed a separate

license to Radianse outside the IR Only Field (and also within the IR Only Field, after Versus'

10 year period of exclusivity expires), Freshloc's position is that Versus' infringement claims

against Radianse are without basis.

- 7 -

If Freshloc is forced to join this action against its will, the impact will be to compel the action to go forward, which will subject Freshloc's patent to a validity challenge by Radianse. Again, this is clearly not in Freshloc's interest. The litigation will require Freshloc to invest both time and financial resources toward a litigation that it, in fact, opposes. Under these circumstances, Freshloc's and Versus' interests are inconsistent and, therefore, this is not a "proper case" to invoke the involuntary plaintiff procedure under Rule 19(a).

<u>CONCLUSION</u>

Under the facts of this case, where Versus previously elected not to join the patent owner Freshloc, and Freshloc has not voluntarily appeared,[1] there is no reason for this Court to grant Versus' motion to amend at this late date. Rather, Versus' motion should be denied, and the complaint should be dismissed as to the '195 and '791 patents on the ground that Versus lacks standing, as it now concedes.

For the reasons set forth above, Radianse respectfully requests that Versus' Motion to Amend its Complaint to add Freshloc as a party be denied.

Dated: January 26, 2006

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
Monté T. Squire (#4764)
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6672  jingersoll@ycst.com

---

[1] Despite Versus' assertion in the recently filed motion that Freshloc's president, Alan C. Heller, has agreed to accept service of the summons and amended complaint on behalf of Freshloc, Versus still makes no showing that Freshloc will join this action voluntarily, or that this Court has personal jurisdiction over Freshloc, a foreign corporation.

OF COUNSEL:

Sibley P. Reppert
William A. Scofield, Jr.
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

Attorneys for Radianse, Inc.

# EXHIBIT A



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERSUS TECHNOLOGY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 04-1231 (SLR) |
| | ) |
| RADIANSE, INC. | ) |
| | ) |
| Defendant. | ) |

## SCHEDULING ORDER

This 29th day of November 2004, the parties having satisfied their obligations under Fed.

R. Civ. P. 26(f), and the Court having conducted a pretrial scheduling conference pursuant to

Fed. R. Civ. P. 16 and D. Del. LR 16.2(a) and (b),

IT IS ORDERED that:

1.    **Pre-Discovery Disclosures.**  The parties have exchanged information pursuant to

Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

2.    **Discovery.**

(a)   Discovery will be needed on all claims, defenses and counterclaims allowed by

the Court.

(b)   All fact discovery shall be commenced in time to be completed by August 23,

2005.

(1) Document production shall be completed on or before March 18, 2005.

(2) Maximum of 25 interrogatories, inclusive of all subparts, by each party to

any other party.

(3) Maximum of 35 requests for admission by each party to any other party.

(4) In the absence of agreement among the parties or by order of the Court, no deposition (other than those noticed under Fed. R. Civ. P. 30(b)(6)) shall be scheduled prior to the completion of document production.

(5) Maximum of 10 fact depositions by each side. Each fact deposition shall be limited to a maximum of 7 hours unless extended by agreement of the parties. The limits on fact discovery agreed to by the parties above may be modified only by agreement of the parties or by leave of the Court.

(6) Defendant shall advise Plaintiff by May 27, 2005 whether it intends to rely on advice of counsel in defense to Plaintiff's charge of willful infringement. If Defendant intends to rely on the advice of counsel defense, it shall produce all documents within the scope of Defendant's wavier of privilege (as set forth by applicable case law) on or before May 27, 2005.

(7) Defendant's counterclaim for tortious interference with economic relationships is stayed for purposes of discovery and trial until further order of the Court.

(c)    Expert discovery shall be commenced in time to be completed by October 28, 2005.

(1) Expert reports on issues for which the parties have the burden of proof are due August 26, 2005. Rebuttal expert reports are due September 30, 2005.

- 2 -

       (2) Each side shall be entitled to depose each of the other party's testifying

          experts. Each expert deposition is to be limited to 1 day, unless extended

          by agreement of the parties.

       (3) All *Daubert* motions shall be filed on or before the deadline set for

          dispositive motions, in conjunction with the briefing schedule in paragraph

          6 below.

(d)   Supplementations under Rule 26(e) are due in accordance with the Federal Rules

     of Civil Procedure.

(e)   **Discovery Disputes.**

       (1) The Court shall conduct in-person discovery status conferences on April 6,

          2005 at 4:30 p.m., and September 13, 2005 at 5:00 p.m., or at any other

          dates and times convenient to the Court. The time at these conferences

          shall be allocated equally among the parties.

       (2) The Court shall remain available to resolve by telephone conference

          disputes that arise during the course of a deposition and disputes over the

          terms of a protective order.

       (3) Absent express approval of the Court following a discovery conference,

          no motions pursuant to Fed. R. Civ. P. 37 shall be filed.

(f)   **Fact Witnesses to be Called at Trial.** Within one (1) month following the close

     of expert discovery, each party shall serve on the other parties a list of each fact

     witness (including any expert witness who is also expected to give fact

     testimony), who has previously been disclosed during discovery and that it

     intends to call at trial. Within one (1) month of receipt of such fact witness list,

each party shall serve a list of each rebuttal fact witness that it intends to call at trial. The parties shall have the right to depose any such fact witnesses who have not previously been deposed in this case. Such depositions shall be held within one (1) month after service of the list of rebuttal fact witnesses and shall be limited to twenty (20) hours per side in the aggregate unless extended by agreement of the parties or upon order of the Court upon good cause shown.

3.    **Joinder of Other Parties and Amendment of Pleadings.** All motions to join other parties and amend the pleadings shall be filed on or before February 11, 2005.

4.    **Settlement Conference.** Pursuant to 28 U.S.C. § 636, this matter is referred to Magistrate Judge Thynge for the purpose of exploring the possibility of a settlement.

5.    **Claim Construction Issue Identifications.** If the Court does not find that a limited earlier claim construction would be helpful in resolving the case, on June 17, 2005, the parties shall exchange a list of those claim terms that they believe need construction and their proposed claim construction of those terms. This document will not be filed with the Court. Subsequent to exchanging such lists, the parties will meet and confer to prepare a Joint Claim Construction Statement to be submitted in conjunction with the briefing schedule in paragraph 7 below.

6.    **Summary Judgment Motions.** All summary judgment motions shall be served and filed with an opening brief no later than November 23, 2005. Response briefs in opposition to motions for summary judgment shall be filed no later than December 9, 2005. Reply briefs in support of such motions for summary judgment shall be filed no later than December 16, 2005. No summary judgment motion may be filed more than ten (10) days from the above date without

leave of the Court. Oral arguments on summary judgment motions shall be heard on January 27, 2006 at 1 p.m.

7.    **Claim Construction.** Opening briefs on issues of claim construction shall be simultaneously submitted by all parties to the Court, along with the Joint Claim Construction Statement, on November 4, 2005, to be considered by the Court in conjunction with the summary judgment motions. Response briefs on issues of claim construction shall be submitted to the Court no later than November 18, 2005.

8.    **Applications by Motion.** Any application to the Court shall be by written motion filed with the clerk. The Court will not consider applications and requests submitted by letter or in a form other than a motion, absent express approval by the Court.

    (a)  Any non-dispositive motion should contain the statement required by D. Del. LR 7.1.1.

    (b)  No telephone calls shall be made to chambers.

    (c)  Any party with an **emergency** matter requiring the assistance of the Court shall e-mail chambers at: slr_civil@ded.uscourts.gov. The e-mail shall provide a short statement describing the emergency. NO ATTACHMENTS shall be submitted in connection with said e-mails.

9.    **Motions in Limine.** All motions in limine shall be filed on or before March 21, 2006. All responses to said motions shall be filed on or before March 28, 2006.

10.    **Pretrial Conference.** A pretrial conference will be held on April 4, 2006 at 4:30 p.m., in Courtroom 6B, Sixth Floor, Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

11.    **Trial.** This matter is scheduled for a three week jury trial commencing on May 15, 2006 in Courtroom 6B, Sixth Floor, Federal Building, 844 King Street, Wilmington, Delaware. For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of hours in which to present their respective cases.

The Honorable Sue L. Robinson
United States District Judge

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VERSUS TECHNOLOGY, INC.,           )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        Civil Action No. 04-1231 (SLR)
                                   )
RADIANSE, INC.                     )
                                   )
        Defendant.                 )

## STIPULATED AMENDMENT TO SCHEDULING ORDER

IT IS HEREBY STIPULATED AND AGREED by counsel for the parties, subject to the approval of the Court, that the Scheduling Order entered by the Court on November 29, 2004, shall be amended as follows:

1.    Paragraph 2(b)(1) of the Scheduling Order is amended to provide that the parties shall complete document production on or before April 29, 2005.

2.    Paragraph 3 of the Scheduling Order is amended to provide that all motions to join other parties and amend the pleadings shall be filed on or before March 25, 2005.

3.    All discovery requests served prior to the Mediation conference held on February 23, 2005, shall be responded to on or before March 25, 2005.

DATE: March 2, 2005

/s/ James M. Lennon
George Pazuniak (DE #478)
gpazuniak@cblh.com
Gerard M. O'Rourke (DE #3265)
gorourke@cblh.com
James M. Lennon (DE#4570)
jlennon@cblh.com
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building – 8th Floor
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141

*Counsel for Plaintiff,*
*Versus Technology, Inc.*

/s/ John W. Shaw
Josy W. Ingersoll (#1088)
jingersoll@ycst.com
John W. Shaw (#3362)
jshaw@ycst.com
YOUNG CONAWAY STARGATT
& TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Sibley P. Reppert
spr@lahive.com
William A. Scofield, Jr.
was@lahive.com
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

*Counsel for Defendant,*
*Radianse, Inc.*

SO ORDERED this ___ day of _____, 2005.

_____
United States District Court Judge

- 2 -

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2005, I electronically filed this STIPULATED
AMENDMENT TO SCHEDULING ORDER with the Clerk of the Court using CM/ECF which
will send notification of such filing to the following:

Josy W. Ingersoll (#1088)
jingersoll@ycst.com
John W. Shaw (#3362)
jshaw@ycst.com
YOUNG CONAWAY STARGATT
& TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

*Counsel for Defendant, Radianse, Inc.*

I hereby certify that on March 2, 2005, I electronically mailed the documents to the
following non-registered participants:

Sibley P. Reppert
spr@lahive.com
William A. Scofield, Jr.
was@lahive.com
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

*Co-Counsel for Defendant, Radianse, Inc.*

/s/ James M. Lennon
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building – 8th Floor
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
jlennon@cblh.com

383785

-----Original Message-----
From: ded_nefreply@ded.uscourts.gov [mailto:ded_nefreply@ded.uscourts.gov]
Sent: Thursday, March 03, 2005 5:35 PM
To: ded_ecf@ded.uscourts.gov
Subject: Activity in Case 1:04-cv-01231-SLR Versus Technology v. Radianse Inc. "SO ORDERED"


***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To
avoid later charges, download a copy of each document during this first viewing.

U.S. District Court

District of Delaware

Notice of Electronic Filing


The following transaction was received from rld, entered on 3/3/2005 at 5:34 PM EST and filed on
3/3/2005

Case Name:    Versus Technology v. Radianse Inc.
Case Number:    1:04-cv-1231 <https://ecf.ded.uscourts.gov/cgi-bin/DktRpt.pl?8583>
Filer:
Document Number:

Docket Text:
SO ORDERED, re [34] Proposed Order filed by Versus Technology Inc.,, Radianse Inc.,, ORDER,
re-Setting Scheduling Order Deadlines Amended Pleadings due by 3/25/2005. Joinder of Parties due by
3/25/2005.parties shall complete document production by 4/29/05; all discovery requests served prior to
mediation conf. held 2/23/05 shall be responded to by 3/25/05. Signed by Judge Sue L. Robinson on
3/3/05. (rld, )

The following document(s) are associated with this transaction:


1:04-cv-1231 Notice will be electronically mailed to:

Josy W. Ingersoll    jingersoll@ycst.com, corporate@ycst.com

Gerard M. O'Rourke    gorourke@cblh.com, dsciarra@cblh.com

1:04-cv-1231 Notice will be delivered by other means to:

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **VERSUS TECHNOLOGY, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 04-1231 (SLR)** |
| ) | |
| **RADIANSE, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S MOTION FOR
## LEAVE TO FILE AMENDED COMPLAINT

Pursuant to Rule 15, Federal Rules of Civil Procedure, plaintiff Versus Technology, Inc.

("Versus") hereby moves to amend its initial and only Complaint in this matter (D.I. 1) to add

FreshLoc Technologies, Inc. ("FreshLoc") as an involuntary plaintiff. Freshloc, is the owner of

two of the four patents in suit. Versus, as the exclusive licensee of the two patents in suit owned

by Freshloc, is entitled to add Freshloc as an involuntary plaintiff. *Independent Wireless*

*Telegraph Co. v. Radio Corporation of America*, 269 U.S. 459, 469 (1926). ("If the owner

of a patent, being within the jurisdiction, refuses or is unable to join an exclusive licensee as

coplaintiff, the licensee may make him a party defendant by process, and he will be lined up by

the court in the party character which he should assume."); *Brunswick Corp. v. U.S.*, 22 Cl.Ct.

278, 288 (Cl.Ct.1991) (*citing Independent Wireless*) ("where a patent owner outside the

jurisdiction of the court has notice of an infringement suit brought by its exclusive licensee, but

refuses to join, the patent owner should be made an involuntary plaintiff.").

Pursuant to Local Rule 15.1, duplicate copies of the proposed Amended Complaint are attached hereto as Exhibit 1. Pursuant to Local Rule 3.2 copies of the patents in suit are attached hereto as Exhibits A-D to the Amended Complaint. Further pursuant to Local Rule 15.1, a redline version showing the changes from Versus's initial Complaint is attached hereto as Exhibit 2.

Defendant, Radianse, Inc. does not oppose this motion.

Respectfully submitted,

**CONNOLLY BOVE LODGE & HUTZ, LLP**

DATED: March 25, 2005

s/ James M. Lennon
George Pazuniak (#478)
Gerard M. O'Rourke (#3265)
James M. Lennon (#4570)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 888-6271

*Attorneys for plaintiff, Versus Technology, Inc.*

- 2 -

# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2005, I electronically filed this MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT with the Clerk of the Court using CM/ECF
which will send notification of such filing to the following:

> Josy W. Ingersoll (#1088)
> jingersoll@ycst.com
> YOUNG CONAWAY STARGATT
> & TAYLOR LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899-0391
> (302) 571-6600
> *Counsel for Defendant, Radianse, Inc.*

I hereby certify that on March 2, 2005, I electronically mailed the documents to the
following non-registered participants:

> Sibley P. Reppert
> spr@lahive.com
> LAHIVE & COCKFIELD
> 28 State Street
> Boston, MA 02109-1784
> (617) 227-7400
> *Co-Counsel for Defendant, Radianse, Inc.*

> s/ James M. Lennon
> James M. Lennon (#4570)
> **CONNOLLY BOVE LODGE & HUTZ, LLP**
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302) 888-6271
> *Attorney for plaintiff, Versus Technology, Inc.*

388265

**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERSUS TECHNOLOGY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | Civil Action No. 04-1231 (SLR) |
| ) | |
| FRESHLOC TECHNOLOGIES, INC., ) | |
| ) | |
| Involuntary Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RADIANSE, INC., ) | |
| ) | |
| Defendant. ) | |

### AMENDED COMPLAINT

Plaintiff Versus Technology, Inc., for its Complaint against Defendant, Radianse, Inc., alleges as follows:

### Nature of the Action

1.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

### Identification of the Parties

2.      Plaintiff Versus Technology, Inc. ("Versus") is a corporation incorporated under the laws of Delaware. It has its principal place of business at 2600 Miller Creek Road, Traverse City, Michigan 49684.

3.      Radianse, Inc., ("Radianse") is a Delaware Corporation with its principal place of business at 439 South Union Street, Suite 403, Lawrence, Massachusetts 01843.

4.      Involuntary plaintiff, FreshLoc Technologies, Inc. ("FreshLoc") is a Texas Corporation with its principal place of business at 15443 Knoll Trail, Suite #100, Dallas, Texas 75248-3453.

## Jurisdiction and Venue

5.      Jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. §1338(a). Venue is proper in the United States District Court for the District of Delaware pursuant to 28 U.S.C. §1391(b) and (c) and §1400(b).

## General Background

6.      Versus is a leading developer and marketer of products using infrared (IR) and radio frequency (RF) technology for, *inter alia*, the healthcare industry. Versus's primary products are passive infrared locating systems with radio frequency supervision, passive data collection systems, asset locating systems, portal detection systems and location event processing software.

7.      Radianse markets and sells an Indoor Positioning System (IPS) product, known as the Radianse Indoor Positioning Solution (the "Radianse IPS product"), for the healthcare environment which combines radio frequency (RF) and infrared (IR) transmissions with receivers to present real-time location data.

## Count I – Patent Infringement – Radianse IPS

8.      Versus incorporates paragraphs 1 to 7 by reference as if fully set forth herein.

9.      On June 25, 1991, United States Patent 5,027,314 entitled "Apparatus and Method for Position Reporting" (the "314 Patent") was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the 314 Patent is attached as Exhibit A.

2

10.        On November 5, 1996, United States Patent 5,572,195 entitled "Sensory and Control System for Local Area Networks" (the "195 patent") was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the 195 Patent is attached as Exhibit B.

11.        On July 25, 2000, United States Reissue Patent 36,791 entitled "Location System Adapted For Use In Multipath Environments" (the "791 patent") was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the 791 Patent is attached as Exhibit C.

12.        On November 28, 2000, United States Patent 6,154,139 entitled "Method and System for Locating Subjects within a Tracking Environment" (the "139 patent") was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the 139 Patent is attached as Exhibit D.

13.        Versus is the owner of the 314 and 139 Patents.

14.        FreshLoc is the owner of the 195 and 791 Patents. Versus is the exclusive licensee of the 195 and 791 Patents, with the right to bring suit thereon.

15.        Radianse has infringed at least one claim of each of the 314, 195, 791 and 139 Patents by, at least, directly making, using, selling, and/or offering to sell its Radianse IPS product, and/or inducing or contributing to the infringement of the Patent claims.

16.        Upon information and belief, the aforesaid infringement by Radianse has been willful.

17.        Versus has been damaged by the infringement, and will continue to suffer irreparable harm and damage as a result of this infringement, unless such infringement is enjoined by the Court.

**WHEREFORE**, plaintiff Versus prays for the following relief:

(a)        Entry of preliminary and permanent injunctions against Radianse's continued infringement of the 314, 195, 791, and 139 Patents by making, using, selling or

3

offering for sale the Radianse IPS product; an accounting for damages in an amount no less than a reasonable royalty, such damages to be trebled pursuant to 35 USC § 284; an assessment of interest costs and reasonable attorneys fees pursuant to 35 USC § 285;

     (b)     Trial by jury on all issues so triable; and

     (c)     Such other and further relief as the Court may deem appropriate, including an award of prejudgment interest, costs, and attorney fees.

This the 25th day of March, 2005.

                         s/ James M. Lennon
                         George Pazuniak (DE #478)
                         Gerard M. O'Rourke  (DE #3265)
                         James M. Lennon (DE #4570)
                         CONNOLLY BOVE LODGE & HUTZ LLP
                         The Nemours Building
                         1007 North Orange Street
                         Wilmington, DE 19899
                         Telephone: 302-658-9141
                         Facsimile: 302-658-5614

                         *Attorneys for plaintiff, Versus Technologies, Inc.*

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERSUS TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | Civil Action No. 04-1231 (SLR) |
| | ) | |
| FRESHLOC TECHNOLOGIES, INC., | ) | |
| | ) | |
| Involuntary Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RADIANSE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT
(REDLINED VERSION)

Plaintiff Versus Technology, Inc., for its Complaint against Defendant, Radianse, Inc., alleges as follows:

### Nature of the Action

1.        This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

### Identification of the Parties

2.        Plaintiff Versus Technology, Inc. ("Versus") is a corporation incorporated under the laws of Delaware. It has its principal place of business at 2600 Miller Creek Road, Traverse City, Michigan 49684.

3.        Radianse, Inc., ("Radianse") is a Delaware Corporation with its principal place of business at 439 South Union Street, Suite 403, Lawrence, Massachusetts 01843.

4.    Involuntary plaintiff, FreshLoc Technologies, Inc. ("FreshLoc") is a Texas Corporation with its principal place of business at 15443 Knoll Trail, Suite #100, Dallas, Texas 75248-3453.

### Jurisdiction and Venue

5. [4.]    Jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. §1338(a).  Venue is proper in the United States District Court for the District of Delaware pursuant to 28 U.S.C. §1391(b) and (c) and §1400(b).

### General Background

6. [5.]    Versus is a leading developer and marketer of products using infrared (IR) and radio frequency (RF) technology for, *inter alia*, the healthcare industry.  Versus's primary products are passive infrared locating systems with radio frequency supervision, passive data collection systems, asset locating systems, portal detection systems and location event processing software.

7. [6.]    Radianse markets and sells an Indoor Positioning System (IPS) product, known as the Radianse Indoor Positioning Solution (the "Radianse IPS product"), for the healthcare environment which combines radio frequency (RF) and infrared (IR) transmissions with receivers to present real-time location data.

### Count I – Patent Infringement – Radianse IPS

8. [7.]    Versus incorporates paragraphs 1 to 7 [6] by reference as if fully set forth herein.

9. [8.]    On June 25, 1991, United States Patent 5,027,314 entitled "Apparatus and Method for Position Reporting" (the "314 Patent") was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the 314 Patent is attached as Exhibit A.

2

10. [9.]    On November 5, 1996, United States Patent 5,572,195 entitled "Sensory and Control System for Local Area Networks" (the "195 patent") was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the 195 Patent is attached as Exhibit B.

11. [10.]    On July 25, 2000, United States Reissue Patent 36,791 entitled "Location System Adapted For Use In Multipath Environments" (the "791 patent") was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the 791 Patent is attached as Exhibit C.

12. [11.]    On November 28, 2000, United States Patent 6,154,139 entitled "Method and System for Locating Subjects within a Tracking Environment" (the "139 patent") was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the 139 Patent is attached as Exhibit D.

13. [12.]    Versus is the owner of the 314 and 139 Patents.

14. [13.]    FreshLoc is the owner of the 195 and 791 Patents. Versus is the exclusive licensee of the 195 and 791 Patents, with the right to bring suit thereon.

15. [14.]    Radianse has infringed at least one claim of each of the 314, 195, 791 and 139 Patents by, at least, directly making, using, selling, and/or offering to sell its Radianse IPS product, and/or inducing or contributing to the infringement of the Patent claims.

16. [15.]    Upon information and belief, the aforesaid infringement by Radianse has been willful.

17. [16.]    Versus has been damaged by the infringement, and will continue to suffer irreparable harm and damage as a result of this infringement, unless such infringement is enjoined by the Court.

WHEREFORE, plaintiff Versus prays for the following relief:

(a)    Entry of preliminary and permanent injunctions against Radianse's continued infringement of the 314, 195, 791, and 139 Patents by making, using, selling or

3

offering for sale the Radianse IPS product; an accounting for damages in an amount no less than a reasonable royalty, such damages to be trebled pursuant to 35 USC § 284; an assessment of interest costs and reasonable attorneys fees pursuant to 35 USC § 285;

      (b)     Trial by jury on all issues so triable; and

      (c)     Such other and further relief as the Court may deem appropriate, including an award of prejudgment interest, costs, and attorney fees.

This the 25th day of March, 2005.

                           s/ James M. Lennon
                           George Pazuniak (DE #478)
                           Gerard M. O'Rourke  (DE #3265)
                           James M. Lennon (DE #4570)
                           CONNOLLY BOVE LODGE & HUTZ LLP
                           The Nemours Building
                           1007 North Orange Street
                           Wilmington, DE 19899
                           Telephone: 302-658-9141
                           Facsimile: 302-658-5614

                           *Attorneys for plaintiff, Versus Technologies, Inc.*

**EXHIBIT 3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERSUS TECHNOLOGY, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.  04-1231 (SLR) |
| ) | |
| RADIANSE, INC., ) | |
| ) | |
| Defendant. ) | |

### CERTIFICATE PURSUANT TO LOCAL RULE 7.1.1

I, James M. Lennon, Esquire, hereby certify, pursuant to Local Rule 7.1.1, that counsel

for plaintiff, Versus Technology, Inc. reached agreement with counsel for Defendant, Radianse,

Inc. on the matters set forth in the foregoing motion.  Specifically, counsel for both parties have

agreed that the foregoing motion by will not be opposed.

Respectfully submitted,

**CONNOLLY BOVE LODGE & HUTZ, LLP**

DATED:  March 25, 2005           s/ James M. Lennon
                                 George Pazuniak (#478)
                                 Gerard M. O'Rourke (#3265)
                                 James M. Lennon (#4570)
                                 The Nemours Building
                                 1007 North Orange Street
                                 P.O. Box 2207
                                 Wilmington, DE  19899
                                 (302) 888-6271

                                 *Attorneys for plaintiff, Versus Technology, Inc.*

**EXHIBIT 4**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| VERSUS TECHNOLOGY, INC.,      ) | |
|                ) | |
|     **Plaintiffs,**           ) | |
|                ) | |
|     **v.**                 ) | **Civil Action No. 04-1231 (SLR)** |
|                ) | |
| RADIANSE, INC.,          ) | |
|                ) | |
|     **Defendant.**          ) | |

## ORDER GRANTING PLAINTIFF'S MOTION
## FOR LEAVE TO FILE AMENDED COMPLAINT

The Court, having reviewed plaintiff Versus Technology, Inc.'s ("Versus") "Motion For

Leave to File Amended Complaint" (the "Motion"), and being otherwise duly informed, hereby

ORDERS, this _____ day of _____, 2005, that the Motion is GRANTED,

and the Amended Complaint attached to the Motion shall be deemed filed with the Clerk of the

Court as of the date of this Order.


_____
Hon. Sue L. Robinson
Chief Judge, United States District Court
District of Delaware

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERSUS TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1231-SLR |
| | ) | |
| RADIANSE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE
## TO PLAINTIFF'S MOTION
## FOR LEAVE TO FILE AMENDED COMPLAINT

The Defendant, Radianse, Inc. ("Radianse") hereby responds to the motion of Versus

Technology, Inc. ("Versus") to amend its complaint pursuant to Rule 15 of the Federal Rules of

Civil Procedure to add Freshloc Technologies, Inc. ("Freshloc") as an "involuntary plaintiff." [1]

In its motion, Versus makes no showing that this Court possesses personal jurisdiction over

Freshloc, and its proposed Amended Complaint contains no allegation to that effect. In addition,

Versus's motion makes no showing or allegation that Freshloc has been notified about the action

and has refused or is unable to join the action as co-plaintiff. For these reasons, Plaintiff's

motion is improperly brought under Rule 15, and likewise cannot be brought under Rule 19 of

the Federal Rules of Civil Procedure absent additional facts not established in the present motion

papers.

---

[1] While Radianse initially informed Versus that it would not oppose a motion to amend to bring in Freshloc, it was
not provided with a copy of Versus's motion in advance of its filing, and believes that the motion as filed is improper
for the reasons set forth in the present response.

This Court addressed a similar situation in *Calgon Corporation v. Nalco Chemical Co.,* 726 F. Supp. 983 (D. Del. 1989). In *Calgon*, the plaintiff, a patent licensee, moved pursuant to Rule 15(a) to add the patentee as a plaintiff. The court determined that, as the patent licensor, the patentee was a necessary party. It held that, because the licensor retained significant rights in the patent, the licensee could not commence an infringement action in its own name, and that the must be dismissed unless the licensee could amend its complaint to add the licensor as a plaintiff. (*Id.* at 989)

In *Calgon*, the court held that the licensee could not use Rule 15 to add the patentee, Kurita, involuntarily if it refused to join the action voluntarily, because, by Calgon's admission, the court did not have personal jurisdiction over Kurita:

> Assuming that Calgon amends its complaint, it remains to be seen whether Kurita will join this action voluntarily, or, failing Kurita's voluntary appearance, whether Kurita can be joined as an "involuntarily" plaintiff. The proper context for a party to be made "an involuntary" plaintiff is pursuant to a motion under Rule 19, and Calgon has not made a motion under Rule 19.

*Id.* at 990. The Court described Calgon's decision to file its motion under Rule 15(a) as "unfortunate in one respect because the Court has been deprived of briefing and argument on whether this is a "proper case" for Kurita to be joined as an involuntarily plaintiff under Rule 19(a) or whether dismissal is mandatory under the factors noted in Rule 19(b)." It reasoned that, "to decide a motion under Rule 19, it would be useful to know whether Calgon has requested Kurita to join this action voluntarily, *see Independent Wireless [Telegraph Co. v. Radio Corp. of America,* 269 U.S. 459, 70 L. Ed. 357, 46 S. Ct. 166 (1926)], whether Kurita would be subject to the process of some other court with subject matter jurisdiction over this action; and whether Kurita will be bound by a final judgment in this action if not joined." None of those issues was adequately addressed in Calgon's motion to amend.

-2-

The court resolved the issue regarding Calgon's Rule 15 motion, as follows:

> The unusual procedural posture of this case presents a novel question. If the Court denies Calgon's motion for leave to amend its complaint, Calgon will be out of court because it lacks standing. Under *Independent Wireless* Calgon should be given a procedural option to avoid this inequitable result. However, Calgon cannot use Rule 15 to add Kurita involuntarily if Kurita refuses to join this action voluntarily. Guided by the mandate of Rule 1, Fed. R. Civ. P., that the Rules are to be construed to "secure the just, speedy and inexpensive determination of every action," the Court will permit Calgon to amend its complaint pursuant to Rule 15 to add Kurita as a plaintiff. However, because Calgon does not have standing to sue in its own name, and because Rule 15 cannot be used to join involuntary plaintiffs, this action will be dismissed after 30 days if Kurita does not enter a voluntary appearance. We will also give Calgon leave to file a Rule 19 motion to join Kurita as an involuntary plaintiff within 30 days if Calgon should determine that Kurita will not enter a voluntary appearance. In so providing, we are not, however, ruling that a Rule 19 motion will be granted. That decision will require further briefing and consideration.

*Id.*

Radianse submits that the procedure followed in *Calgon* should likewise be applied by this Court to Versus's pending motion to amend under Rule 15 to add its licensor, Freshloc, as an "involuntary plaintiff." By bringing its motion to add Freshloc as an "involuntary plaintiff," Versus has impliedly admitted that, if Freshloc is not added as a party plaintiff, Versus lacks standing to bring this action, although that issue remains to be briefed in the present action. Versus has made no showing, or even any allegation, that this Court possesses personal jurisdiction over Freshloc as required for it to be added as a party plaintiff pursuant to Rule 15. Likewise, it has made no showing that Freshloc constitutes an "involuntary plaintiff" for purposes of Rule 19 or that the joinder of Freshloc as a party would be permitted under Rule 19.

Since Versus's motion is brought improperly under Rule 15, it should be granted conditionally for the reasons set forth in *Calgon*. If Freshloc fails to appear voluntarily

within a period to be set by this Court, the motion to amend should be denied, and Versus

should be provided with an additional period of time to move to add Freshloc as an

involuntary plaintiff under Rule 19.    Radianse reserves the right to oppose such a motion.

Respectfully submitted,

RADIANSE, INC.

By its attorneys,

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6672

Of Counsel:

Sibley P. Reppert
William A. Scofield, Jr.
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

Dated:  April 13, 2005

63582.1001

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll hereby certify that on April 13, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> George Pazuniak, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE 19801, Esquire

I further certify that on April 13, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


Josy W. Ingersoll (No. 1088)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Radianse, Inc.

WP3:1093430.1                                               63582.1001

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERSUS TECHNOLOGY, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>RADIANSE, INC., )<br><br>Defendant. ) | Civil Action No. 04-1231 (SLR) |

## STIPULATION WITHDRAWING MOTION FOR LEAVE AND OPPOSITION
## BRIEF REGARDING PROPOSED AMENDMENT TO COMPLAINT

IT IS HEREBY STIPULATED AND AGREED by counsel for the parties,

subject to the approval of the Court, that:

1.    Plaintiff's Motion For Leave To File Amended Complaint

(D.I. 39) is hereby withdrawn, with leave to re-file; and

2.    Defendant's Response To Plaintiff's Motion For Leave To File

Amended Complaint (D.I. 47) is hereby withdrawn, with leave to re-file.

DATE: April 15, 2005

/s/ James M. Lennon
George Pazuniak (DE #478)
gpazuniak@cblh.com
Gerard M. O'Rourke (DE #3265)
gorourke@cblh.com
James M. Lennon (DE#4570)
jlennon@cblh.com
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building – 8th Floor
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141

*Counsel for Plaintiff,*
*Versus Technology, Inc.*

/s/ Josy W. Ingersoll
Josy W. Ingersoll (#1088)
jingersoll@ycst.com
John W. Shaw (#3362)
jshaw@ycst.com
YOUNG CONAWAY STARGATT
& TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Sibley P. Reppert
spr@lahive.com
William A. Scofield, Jr.
was@lahive.com
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

*Counsel for Defendant,*
*Radianse, Inc.*

SO ORDERED this ___ day of _____, 2005.

_____
United States District Court Judge

- 2 -

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2005, I electronically filed this Stipulation Withdrawing

Motion For Leave And Opposition Brief Regarding Proposed Amendment To Complaint And

Extending Time To Amend Complaint with the Clerk of the Court using CM/ECF and served the

following on this date in the manner so indicated:

**By Hand, Email and CM/ECF notification:**
Josy W. Ingersoll (#1088)
jingersoll@ycst.com
YOUNG CONAWAY STARGATT
& TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
*Counsel for Defendant, Radianse, Inc.*

**By Email:**
Sibley P. Reppert
spr@lahive.com
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400
*Co-Counsel for Defendant, Radianse, Inc.*

/s/ James M. Lennon
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building -- 8th Floor
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
jlennon@cblh.com
*Counsel for Plaintiff, Versus Technology, Inc.*

391516

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERSUS TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 04-1231 (SLR) |
| | ) | |
| RADIANSE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## RADIANSE'S MOTION TO DISMISS FOR LACK OF STANDING AS TO VERSUS' CLAIM OF INFRINGEMENT OF U.S. PATENTS 5,572,195 AND RE36,791 OR, WITH LEAVE OF COURT, FOR PARTIAL SUMMARY JUDGMENT OF DISMISSAL

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Radianse moves to dismiss Versus' claims for infringement of two of the patents in suit, namely, U.S. Patent No. 5,572,195 (the " '195 patent") and U.S. Reissue Patent No. 36,791 (the " '791 Patent"), on the ground that Versus lacks standing to sue. Versus purports to sue for infringement of both the '195 and '791 patents as the exclusive licensee of those patents (Complaint, ¶ 13). To the contrary, the license under which Versus sues is exclusive only as to a defined limited field of use, and Radianse's indoor positioning systems do not fall within that limited field.[1]

To the extent that this Court deems the present motion to constitute a motion for summary judgment, Radianse requests leave to file the present motion pursuant to Section 6 of the Scheduling Order. Radianse submits that prompt resolution of the standing issue is in the interest of judicial economy and that postponement of the resolution of that issue will prejudice

---

[1] Versus also lacks standing to sue for infringement of the '195 and '791 patents, because the license agreement under which Versus sues grants exclusive rights only for a limited ten-year period and, thus, Versus does not possess all substantial rights to those patents and cannot maintain this action in its own name. Radianse previously raised this issue with the Court in response to Versus' motion to amend its complaint under Rule 15. Versus has since withdrawn that motion. Radianse understands that Versus may revise and re-file its motion to amend, and reserves its rights with respect to this issue.

both parties by requiring them to conduct costly and unnecessary discovery and claim construction briefing regarding the '195 and '791 patents.

The grounds for this motion are set forth in Radianse's opening brief and its appendix, and in the Affidavits of Michael Dempsey and Paul Tessier filed herewith.

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Christian Douglas Wright (#3554)
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391
(302) 571-6672
jingersoll@ycst.com

Attorneys for Defendant Radianse, Inc.

OF COUNSEL:

Sibley P. Reppert
William A. Scofield, Jr.
LAHIVE & COCKFIELD
28 State Street
Boston, MA 02109-1784
(617) 227-7400

DATED: May 12, 2005

-2-

## CERTIFICATE OF SERVICE

I, Christian Douglas Wright, hereby certify that on May 12, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> George Pazuniak, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE 19801, Esquire

I further certify that on May 12, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Christian Douglas Wright (No. 3554)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
cwright@ycst.com

Attorneys for Radianse, Inc.

# EXHIBIT G

**From:**     "George Pazuniak" <GPazuniak@cblh.com>
**To:**       "Sibley Reppert" <spr@lahive.com>
**Date:**     6/14/0512:04PM
**Subject:**  RE: Motion to add involuntary plaintiff

Dear Sib,

In view of the current changed circumstances, we will not add Freshloc.

George

—Original Message—
From: Sibley Reppert [mailto:spr@lahive.com]
Sent: Tuesday, June 14, 2005 12:00 PM
To: George Pazuniak; James M. Lennon
Subject: Motion to add involuntary plaintiff

George and Jim:

Please let me know whether you are going to move under Rule 19 to add
Freshloc as an involuntary plaintiff.  I got the impression from your
most recent filing (opposing our motion to dismiss) that you are not
going to do so.

Thanks,

Sib

CC:        "James M. Lennon" <JLennon@cblh.com>

# EXHIBIT H

--- F.3d ----
--- F.3d ----, 2006 WL 44185 (C.A.Fed.)
**(Cite as: --- F.3d ----)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States Court of Appeals,Federal Circuit.
ASPEX EYEWEAR, INC., Manhattan Design
Studio, Inc., Contour Optik, Inc., and Asahi Optical
Co., Ltd., Plaintiffs-Appellants,
v.
MIRACLE OPTICS, INC. and VIVA OPTIQUE,
INC., Defendants-Appellees.
No. 04-1265.

Jan. 10, 2006.

**Background:** Alleged owner of patent for
magnetized eyeglass frames sued competitors for
infringement. The United States District Court for the
Central District of California, Lourdes G. Baird,
Senior Judge, dismissed for lack of standing, and
alleged owner appealed.

5**Holding:** The Court of Appeals, Lourie, Circuit
Judge, held that transfer of patent rights for limited
portion of patent term was license, rather than
assignment, and thus did not deprive transferor of
standing to sue for infringement, regardless of extent
of rights transferred.

Vacated and remanded.

**[1] Federal Courts 170B ⟜776**

170B Federal Courts
  170BVIII Courts of Appeals
    170BVIII(K) Scope, Standards, and Extent
      170BVIII(K)1 In General
        170Bk776 k. Trial De Novo. Most Cited
Cases
Question of standing to sue is jurisdictional one that
is reviewed de novo.

**[2] Patents 291 ⟜286**

291 Patents
  291XII Infringement
    291XII(C) Suits in Equity
      291k286 k. Persons Entitled to Sue. Most
Cited Cases

Patentee may transfer title to patent by assignment,
and assignee may be deemed effective patentee for
purposes of standing to sue another for patent
infringement in its own name. 35 U.S.C.A. § §
100(d), 281.

**[3] Patents 291 ⟜286**

291 Patents
  291XII Infringement
    291XII(C) Suits in Equity
      291k286 k. Persons Entitled to Sue. Most
Cited Cases
While patent licensee normally does not have
standing to sue for infringement without joinder of
patentee, exclusive license may be tantamount to
assignment for purpose of creating standing if it
conveys to licensee all substantial rights to patent at
issue.

**[4] Patents 291 ⟜202(1)**

291 Patents
  291X Title, Conveyances, and Contracts
    291X(B) Assignments and Other Transfers
      291k202 Construction and Operation of
Assignments and Grants
        291k202(1) k. In General. Most Cited
Cases

**Patents 291 ⟜211(1)**

291 Patents
  291X Title, Conveyances, and Contracts
    291X(C) Licenses and Contracts
      291k211 Construction and Operation of
Licenses
        291k211(1) k. In General. Most Cited
Cases
In determining whether agreement to transfer rights
to patent amounts to assignment or mere license,
court ascertains intention of parties and examines
substance of what was granted.

**[5] Patents 291 ⟜202(1)**

291 Patents
  291X Title, Conveyances, and Contracts
    291X(B) Assignments and Other Transfers
      291k202 Construction and Operation of
Assignments and Grants

--- F.3d ----
--- F.3d ----, 2006 WL 44185 (C.A.Fed.)
(Cite as: --- F.3d ----)

291k202(1) k. In General. Most Cited Cases

**Patents 291 ☞286**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k286 k. Persons Entitled to Sue. Most Cited Cases
Transfer of rights to patent for eyeglass frames for limited portion of patent term was license, rather than assignment, and thus did not deprive transferor of standing to sue for infringement, regardless of extent of rights transferred.

**[6] Patents 291 ☞290(1)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k290 Parties
                291k290(1) k. Complainants. Most Cited Cases
For same policy reasons that patentee must be joined in any lawsuit involving his or her patent, there must be joinder of any exclusive licensee.

**Patents 291 ☞328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited Cases

**Patents 291 ☞328(4)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(4) k. Reissue. Most Cited Cases
5,568,207, 6,109,747. Cited.

37,545. Cited.

Appealed from: United States District Court for the Central District of California. Senior Judge Lourdes G. Baird.

Michael A. Nicodema, Greenberg Traurig, LLP, of

New York, New York, argued for plaintiffs-appellants. With him on the brief was Barry J. Schindler.
Jeffrey A. Schwab, Abelman, Frayne & Schwab, of New York, New York, argued for defendants-appellees. With him on the brief were Michael Aschen and Anthony J. DiFilippi. Of counsel were Mark N. Hurvitz and David B. Abel, Squire, Sanders & Dempsey LLP, of Los Angeles, California.

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

LOURIE, Circuit Judge.
Aspex Eyewear, Inc. and Contour Optik, Inc. appeal from the decision of the United States District Court for the Central District of California dismissing their action against Miracle Optics, Inc. and Viva Optique, Inc. on the ground that neither Aspex nor Contour had standing to sue for infringement of U.S. Patent 6,109,747. [FN1] Aspex Eyewear, Inc. v. Miracle Optics, Inc., No. 01-10396 (C.D.Cal. Feb.6, 2004) ("Decision"). Because we conclude that Contour was the owner of the '747 patent when the original complaint was filed, and thus it had standing to sue in this action, we vacate the district court's dismissal. Given this conclusion, we remand for the court to redetermine whether all necessary parties to this action were joined.

BACKGROUND

The primary issue in this appeal is whether the district court correctly determined that appellant Contour transferred all substantial ownership rights to the '747 patent to nonparty Chic Optic, Inc., in which case Contour lacked standing to sue for infringement, or whether it merely granted Chic a license to that patent, in which case Contour was still the owner of the patent and had standing to sue. On August 29, 2000, the '747 patent issued in the name of David Yinkai Chao as inventor and Contour as assignee. The '747 patent claims an eyeglass combination having, *inter alia,* an auxiliary eyeglass frame that houses specialized lenses (*e.g.,* sunglasses) and attaches onto a traditional eyeglass frame. A key feature of the patented combination is the placement of magnetic studs on the traditional eyeglass frame to improve the auxiliary eyeglass frame's attachment onto the traditional eyeglass frame.

On March 20, 2001, Contour and Chic executed an agreement entitled "Distribution and License Agreement" (the "Contour/Chic agreement"). Neither

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                    Page 3
--- F.3d ----, 2006 WL 44185 (C.A.Fed.)
**(Cite as: --- F.3d ----)**

party disputes that under the terms of the agreement, Contour granted Chic certain rights under the '747 patent. Among these were (1) the exclusive right to make, use, and sell in the United States products covered by the patent, (2) the first right to commence legal action against third parties for infringement of the patent and the right to retain any award of damages from actions initiated by Chic, and (3) a virtually unfettered right to sublicense all of its rights to a third party. Under the terms of the agreement, Contour retained the right to commence legal action against third parties for infringement of the patent if Chic refused to do so within 30 days of receiving notice of infringement, and the option to contribute up to 50% of the litigation expenses incurred in any patent infringement action brought by Chic in exchange for the right to receive a *pro rata* share of any subsequent award arising from such an action. Most significantly, for purposes of this appeal, the agreement also contained a clause providing that the agreement would expire on March 6, 2003, and in no event later than March 16, 2006, if Chic exercised its one option to extend, after which all of the rights under the '747 patent that the agreement initially granted to Chic would terminate. <sup>FN2</sup>

On April 5, 2001, Chic and Aspex executed a sublicense agreement entitled "License Agreement" (the "Chic/Aspex agreement"). In that agreement, Chic granted to appellant Aspex all of its rights under the '747 patent, including the exclusive right to make, use, and sell products covered by the patent, and the right to sue for infringement of the patent.

Just prior to the grant of the sublicense, however, on March 28, 2001, Aspex and Contour filed a complaint against appellee Miracle for infringement of the '747 patent. <sup>FN3</sup> Subsequently, the parties each filed motions for partial summary judgment. *Decision,* slip op. at 3. The court denied Miracle's motion for partial summary judgment of invalidity of claim 12 and granted Contour's and Aspex's motion for partial summary judgment of literal infringement of claim 12. *Id.* On February 6, 2004, the court granted Miracle's and Viva's motion to dismiss the action on the ground that neither Contour nor Aspex had standing to sue for infringement of the patent. *Id.,* slip op. at 26.

According to the district court, neither Contour nor Aspex possessed the "rights of the patentee" when the original complaint was filed, and thus each lacked standing to sue. Regarding Aspex's claim of standing, because a party's standing to sue must exist at the time an original complaint is filed, the court

determined that Aspex could not have had standing to sue since its agreement with Chic providing it with certain rights was executed eight days after the original complaint was filed. Moreover, the court concluded that the amended complaint, filed on April 9, 2002, could not cure this defect in standing because an amended complaint must be based on facts existing at the time of the filing of the original complaint. *Id.,* slip op. at 13-14.

In reaching its decision, the court also rejected Aspex's contention that, at the time the original complaint was filed, it possessed the right to sue through a prior, implied contract with Chic. Citing our decision in *Enzo APA & Son v. Geapag A.G.,* 134 F.3d 1090, 1093 (Fed.Cir.1998), the court recognized that although "a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it must be in writing." *Decision,* slip op. at 13. The court concluded that Aspex could not have been a "virtual" assignee of the '747 patent through an implied contract at the time the original complaint was filed, and thus that it did not have standing to bring this action.

The district court finally held that Contour did not have standing to sue because it had already transferred to Chic all substantial ownership interests in the '747 patent at the time the original complaint was filed. The court was persuaded by Chic's possession of "the right to sue [for infringement of the '747 patent], an unfettered right to sublicense [the patent to third parties], and the exclusive right to make, use, and practice the '747 patent in the United States." *Id.,* slip op. at 25. The court also determined that the agreement's term clause, which gave Contour a "reversionary interest,"although a factor weighing in favor of the agreement being a license rather than an assignment, was not dispositive. *Id.,* slip op. at 19. According to the court, "if the agreement transfers the other substantial rights to the patent, the court may not find that a 'hard' transfer [date] alone mandates a finding that the agreement is a license rather than an assignment." *Id.*

The district court entered final judgment on May 4, 2004. Aspex and Contour timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### DISCUSSION

[1] [2] An issue of standing to sue is a jurisdictional one that we review *de novo. See Rite-Hite Corp. v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 44185 (C.A.Fed.)
**(Cite as: --- F.3d ----)**

_Kelley Co.,_ 56 F.3d 1538, 1551 (Fed.Cir.1995) (en banc) (citations omitted). Under 35 U.S.C. § 281, "[a] patentee shall have remedy by civil action for infringement of his patent." The term "patentee" encompasses "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d) (2000). A patentee may transfer title to a patent by assignment, and the assignee may be deemed the effective patentee under 35 U.S.C. § 281 for purposes of holding standing to sue another for patent infringement in its own name. _Prima Tek II, L.L.C. v. A-Roo Co.,_ 222 F.3d 1372, 1377 (Fed.Cir.2000).

[3] [4] While a licensee normally does not have standing to sue without joinder of the patentee, an exclusive license may be tantamount to an assignment for purposes of creating standing if it conveys to the licensee all substantial rights to the patent at issue. _Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,_ 944 F.2d 870, 875 (Fed.Cir.1991); _see also Waterman v. Mackenzie,_ 138 U.S. 252, 256, 11 S.Ct. 334, 34 L.Ed. 923 (1891) ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions."). To determine whether an agreement to transfer rights to a patent at issue amounts to an assignment or a license, we must ascertain the intention of the parties and examine the substance of what was granted. _Vaupel,_ 944 F.2d at 874 (explaining that the court must examine whether the agreements transferred all substantial rights to the patent at issue and whether the surrounding circumstances indicated an intent to do so).

A. _Contour's Standing to Sue_

On appeal, appellants argue that Contour did not transfer to Chic all substantial rights to the '747 patent, and thus that Chic was merely a licensee without standing to sue. As principal support for their position, appellants cite the provision of the Contour/Chic agreement concerning the term of the license, which provides that the agreement will expire on March 6, 2003, and in no event later than March 16, 2006. According to appellants, the existence of a term limit to the license is a dispositive fact in its favor because of its public policy ramifications. That provision creates the risk of multiple lawsuits if Contour were not joined as a necessary party under Federal Rule of Civil Procedure 19 in any infringement action involving

the '747 patent. Appellants further assert that because the potential full term of the Contour/Chic agreement is significantly shorter than the term remaining on the '747 patent once the agreement expires, [FN] the risk of multiple lawsuits is heightened. Finally, appellants distinguish the term provision contained in the Contour/Chic agreement from the reversionary interests that we found to be minor in prior decisions, _viz., Vaupel,_ 944 F.2d at 874, and _Prima Tek II,_ 222 F.3d at 1378-79. According to appellants, the reversionary interests in those agreements did not have a "hard" termination date. Since the "licensees" of the _Vaupel_ and _Prima Tek II_ agreements held the patent rights for an indefinite period of time, appellants argue that the same public policy concern was not implicated in those cases.

Appellants also contend that Contour retained the right to sue for infringement, which undercuts the district court's finding of an assignment. Although the Contour/Chic agreement gives Chic the right to sue for past infringement, appellants assert that it did not transfer Contour's right to sue for present and future infringement. Appellants further argue that Contour could bring its own suit for infringement if Chic did not take action within 30 days of receiving notice of infringement, and Contour's retention of that right weighs in favor of finding the Contour/Chic agreement to be a license, not an assignment.

Finally, appellants contend that the court did not give enough weight to Contour's control over Chic's ability to assign its rights to the '747 patent. Appellants point to paragraph 19.1 in the Contour/Chic agreement, which states: "[no] right or license hereunder may be assigned or otherwise transferred nor any duty or obligation delegated, either in whole or in part, by operation of law or otherwise, by CHIC without CONTOUR's prior written consent, unless the said assignment is made to an Affiliate of CHIC's." Appellants contend that such control and veto power over subsequent assignments by Chic is another important ownership right to the '747 patent that Contour did not transfer to Chic, and hence argues for its retained ownership of the patent.

Appellees respond that Contour had transferred all substantial rights to the '747 patent by the time the complaint was filed. Citing the Supreme Court's _Waterman_ decision, appellees argue that the mere fact that the Contour/Chic agreement contained a reversionary interest does not preclude a finding of assignment. According to appellees, until the reversionary interest is triggered, an exclusive licensee continues to possess all substantial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 44185 (C.A.Fed.)
(Cite as: --- F.3d ----)

Page 5

ownership rights in a patent. Accordingly, appellees argue that until Chic's rights to the '747 patent expire in 2006, Chic, not Contour, is the effective owner of the patent. Appellees also contend that the agreement in *Vaupel* contained a reversionary interest, but we still concluded that the transfer of the patent rights there was an assignment.

Appellees also contest the assertion that the Contour/Chic agreement did not give Chic the right to sue for present or future infringements during the term of the agreement. As support for that argument, appellees cite paragraph 11.2 of the agreement: "CHIC and its authorized exclusive sublicensees may, at its own expense, take and maintain of [sic] all reasonable measures, including litigation and seeking preliminary injunctive and all other available relief, to enforce the '747 Patent against and to abate and/or prevent infringements of its rights under the Agreement." According to appellees, the plain meaning of this language is that Chic can sue for past, present, and future infringement of the '747 patent.

Lastly, appellees contend that paragraph 19.1 of the agreement, which requires Contour's written permission before Chic can assign its rights under the agreement to a third party, is not meaningful to this issue. Appellees argue that the more relevant provision is paragraph 4.4, which gives Chic the virtually unfettered authority to sublicense all of its rights to the '747 patent to any third party of its choosing. According to appellees, this unrestricted sublicense right is precisely the type of ownership interest that this court in *Prima Tek II*, 222 F.3d at 1379-80, found to be consistent with an effective assignment.

[5] We agree with appellants that the Contour/Chic agreement did not constitute a transfer from Contour to Chic of all substantial rights to the '747 patent, and hence it was not an assignment. The essential issue regarding the right to sue on a patent is who owns the patent. The landmark Supreme Court case of *Waterman v. MacKenzie*, 138 U.S. 252, 255, 256, 11 S.Ct. 334, 34 L.Ed. 923 (1891), held that if a transfer of patent rights, regardless whether it is through an agreement entitled a license or an assignment, includes "the exclusive right to make, use, and vend" the patented invention, the assignee has standing to bring suit in its own name. The case law of one of our predecessor courts has followed *Waterman* by articulating the "all substantial rights" standard and requiring a determination whether a particular transfer of rights falls on one side or the other of that

line. *See Bell Intercontinental Corp. v. United States*, 180 Ct.Cl. 1071, 381 F.2d 1004, 1011 (Ct.Cl.1967). Other decisions of this court have continued to draw that line. But, at bottom, the question is "who owns the patent"? Does the transfer or retention of certain rights amount to an assignment of the patent or not? A key factor has often been where the right to sue for infringement lies. *See, e.g., Prima Tek II*, 222 F.3d at 1380.

To be sure, Contour has transferred to Chic certain rights that are often associated with ownership of a patent. As the district court correctly recognized, Chic received (1) the exclusive right to make, use, and sell products covered by the patent; (2) the right to sue for infringement of the patent; and (3) a virtually unrestricted authority to sublicense its rights under the agreement. Those provisions themselves strongly favor a finding of an assignment, not a license.

Moreover, Contour's attempts to detract from those rights are not persuasive. Contour transferred to Chic more than the right to sue only for past infringement. Paragraph 11.2 gave Chic the right to "abate and/or prevent infringements." Such language contemplates the grant of the right at least to sue to enjoin future infringements during the term of the agreement. We also agree with the district court that Contour's right to participate in lawsuits initiated by Chic during the term of the agreement is insignificant since that participation is limited to monetary contributions and receipts; Contour does not have a right to make decisions on litigation strategy. In addition, we agree with the district court that the agreement minimizes the significance of any right to sue that Contour may have had since it retained "no supervisory or veto power over Chic's grant of sublicenses." *Decision,* slip op. at 21. Furthermore, given its virtually unfettered right to sublicense, Chic's limited ability to assign its rights to unaffiliated third parties is not controlling.

However, the dominant factor in the Contour/Chic agreement on which we differ with the district court's otherwise well-reasoned opinion is the provision limiting the term of the license. Chic's rights, however substantial in other respects, are unquestionably valid for only a limited period of time, ending no later than March 16, 2006. *See supra* n. 2. As of March 16, 2006, Contour, absent an amendment of the agreement, will regain all of the rights under the '747 patent that it had previously transferred to Chic. It is thus the unquestioned owner of the patent, and, whatever rights Chic had up until

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 44185 (C.A.Fed.)
**(Cite as: --- F.3d ----)**

2006, it is clear that Chic never had all substantial rights to the patent, *i.e.,* it never was the effective owner of the patent. Barring the '747 patent being found invalid or unenforceable, as of March 16, 2006, Chic will have possessed its rights for approximately five years, in contrast to Contour's sole and exclusive rights for the remainder of the patent term. *See supra* n. 4. Chic never had effective ownership of the '747 patent. It was not a situation in which Chic had an exclusive license with all substantial rights that was only defeasible in the event of a default or bankruptcy, or some other condition subsequent. [FN8] By having rights for only a limited portion of the patent term, it simply did not own the patent. It was merely an exclusive licensee without all substantial rights. The '747 patent was never assigned; it was exclusively licensed for only a fixed period of years, which does not meet the all substantial rights standard. Thus, we hold that the Contour/Chic agreement was a license, not an assignment, and Contour was the owner of the patent when the complaint was filed and entitled to sue.

Our conclusion that the termination provision in the Contour/Chic agreement precludes a finding that the agreement was an assignment is consistent with the policy concerns that we expressed in *Vaupel* . In *Vaupel*, while considering the importance of an agreement's right to sue provision, we noted the public policy in favor of preventing multiple lawsuits on the same patent against the same accused infringer. 944 F.2d at 875-76. That policy favors finding Chic not to be the effective owner of the '747 patent. If we were to consider Chic the assignee of the patent under the Contour/Chic agreement, as appellants recognize, it is possible that Chic could assert that patent against an accused infringer during the term of the agreement without Contour's participation in the lawsuit, and Contour could later assert the patent against the same accused infringer once the agreement expired. After all, the six-year limitation on damages could encompass a period when Chic, according to the district court's holding, and Contour both had rights to sue under the patent.

As we expressed in *Evident Corp. v. Church & Dwight Co., Inc.,* 399 F.3d 1310, 1314 (Fed.Cir.2005), another policy consideration is to prevent a party with lesser rights from bringing a lawsuit that may put the licensed patent at risk of being held invalid or unenforceable in an action that did not involve the patentee. That policy counsels against allowing Chic, who only putatively had rights under the patent for a limited time, to bring a patent infringement action without Contour, who would

own the patent rights for a much longer period of time, and thereby unilaterally jeopardize Contour's future enjoyment of the '747 patent.

The cases cited by appellees in its argument that a reversionary interest alone should not compel us to conclude that the Contour/Chic agreement is a license, and not an assignment, are readily distinguishable. As we have stated, this case involves more than a reversionary clause. Moreover, none of the cases that appellees cite, *Vaupel,* 944 F.2d at 874 (termination provision triggered only in the case of bankruptcy), *Prima Tek II,* 222 F.3d at 1378-79 (agreement provided for one-year renewals, but otherwise, the agreement did not contain a fixed termination date), or *Waterman,* 138 U.S. at 261 (patentee could regain rights to the patent by paying off a mortgage), addressed an agreement with a definite termination date, as is the case here. [FN9] On the contrary, in each of the agreements in appellees' cited cases, the term of the agreement existed potentially for the life of the respective patents, and it was presumable that the transferred patent would never return to the assignor. That is not the case here.

We therefore vacate the district court's decision that Contour lacked standing to bring this action in view of our conclusion that Contour was the owner of the '747 patent when the original complaint was filed.

#### B. *Joinder of Necessary Party*

[6] However, a further inquiry awaits us concerning whether the district court's dismissal was proper. Even though the lawsuit was properly brought in the name of the owner of the patent, we must still determine whether the action as brought by appellants included all necessary parties. For the same policy reasons that a patentee must be joined in any lawsuit involving his or her patent, there must be joinder of any exclusive licensee. *See Independent Wireless Tel. Co. v. Radio Corp.,* 269 U.S. 459, 466, 46 S.Ct. 166, 70 L.Ed. 357 (1926) (stating that both the owner and the exclusive licensee are generally necessary parties in an action in equity). Appellants assert that all of the necessary parties to this action were parties to the original complaint since Contour was the patentee and Aspex was the exclusive licensee of the '747 patent. According to appellants, Aspex obtained an exclusive license through a prior implied or oral sublicense agreement with Chic that matured contemporaneously upon later execution of the written Contour/Chic agreement. Appellants contend that all of the rights that were conveyed to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 44185 (C.A.Fed.)
**(Cite as: --- F.3d ----)**

Page 7

Chic by the Contour/Chic agreement were also passed on to Aspex. Even if Aspex had not acquired its exclusive license before the original complaint was filed, appellants argue that Aspex had acquired sufficient standing through the Chic/Aspex agreement, which was executed before the amended complaint was filed.

In its decision, the district court did not consider whether Aspex was an exclusive licensee with the right to sue, either through an implied license or the later Chic/Aspex agreement. The court determined only that Aspex was not an assignee of the '747 patent when the original complaint was filed. Once the court determined that Contour was not the patentee at the time the complaint was filed, the only way a dismissal could have been avoided was if Chic had transferred to Aspex all of its rights under the patent through a written agreement prior to the filing of the complaint, which the court found had not occurred. However, now that we have concluded that Contour was the effective patentee when the complaint was filed, whether Aspex or Chic was an exclusive licensee at that time is an issue that must be decided. If the license between Chic and Aspex was not effective at the time of the original complaint, then Chic was a necessary party and it has not been joined. If Aspex was an exclusive licensee at the proper time, then Chic was not a necessary party and Aspex was in fact a proper plaintiff.

However, we leave the question of Aspex's status for the district court to decide. As the district court has already recognized, determining whether an assignment or a license was granted involves different analyses. For example, an assignment must be in writing, while a license can be implied. _Enzo, 134 F.3d at 1093_. Determining whether there was an implied license between Chic and Aspex prior to the filing of the complaint may involve a factual determination. As an appellate court, we decline to undertake that inquiry in the first instance. We also leave it for the district court to determine whether Chic, if it was a necessary party to this action, could have been joined. Thus, we remand for the district court to determine whether all necessary parties to this action were joined, or could have been joined.

### CONCLUSION

We vacate the district court's decision dismissing this action on the ground that neither Contour nor Aspex had standing to sue for infringement of the '747 patent, and remand for further proceedings consistent

with this opinion.

### COSTS

No costs.

### VACATED AND REMANDED

FN1. In addition to the '747 patent, the original complaint also asserted infringement of U.S. Patent 5,568,207, which later issued as U.S. Reissue Patent 37,545. The original complaint also named as plaintiffs Manhattan Design Studio, Inc. ("MDS") and Asahi Optical Co., Ltd. After the district court entered final judgment on the '545 patent under Federal Rule of Civil Procedure 54(b), MDS and Asahi ceased to participate in the action involving the '747 patent.

FN2. Paragraph 3.1 of the Contour/Chic agreement, which the district court identified as conferring a "reversionary interest," states: "Unless terminated earlier as hereinafter provided, the Term of this Agreement shall commence on the Effective Date and, shall end on March 6, 2003. CHIC shall have the option to extend the Terms for another three (3) years from March 16, 2003, upon written notice to CONTOUR on or before September 1, 2002."

FN3. The original complaint also included the '207 patent and had as additional plaintiffs MDS and Asahi. _See supra_ n. 1. The court added appellee Viva Optique, Inc. as a defendant on December 4, 2003.

FN4. Contour claims that the '747 patent expires in 2017. The filing date for the application leading to the '747 patent was April 28, 1997. Accordingly, under 35 U.S.C. § 154, absent a patent term extension, the '747 patent will apparently expire 20 years later, subject to any terminal disclaimer.

FN5. We also note that we are not presented with the situation in which a patent was effectively assigned and ownership changed for a period of time, after which by separate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 44185 (C.A.Fed.)
**(Cite as: --- F.3d ----)**

Page 8

agreement it was to be reassigned in the future to the original patentee.

FN6. In *Prima Tek II,* we expressly stated that we were leaving unanswered the question whether an agreement with a "hard" termination date could convey to a licensee standing to sue. 222 F.3d at 1378.

C.A.Fed.,2006.
Aspex Eyewear, Inc. v. Miracle Optics, Inc.
--- F.3d ----, 2006 WL 44185 (C.A.Fed.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 1397773 (Appellate Brief) Reply Brief for Plaintiffs-Appellants (May. 06, 2005) Original Image of this Document (PDF)
• 2005 WL 1843078 (Appellate Brief) Brief for the Defendants-Appellees (Apr. 20, 2005) Original Image of this Document (PDF)
• 2004 WL 3438719 (Appellate Brief) Principal Brief for Plaintiffs-Appellants (May. 17, 2004) Original Image of this Document (PDF)
• 04-1265 (Docket) (Mar. 15, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Montè T. Squire, Esquire hereby certify that on January 26, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> George Pazuniak, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE 19801

I further certify that on January 26, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Montè T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
msquire@ycst.com

Attorneys for Radianse, Inc.

063582.1001